ACCEPTED
13-14-00506-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
4/22/2015 3:39:34 PM
DORIAN RAMIREZ
CLERK

NO. 13-14-00506-CV

---

IN THE THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
4/22/2015 3:39:34 PM
DORIAN E. RAMIREZ
Clerk

---

**Norma Torres**
Appellant
**vs.**
**City of Corpus Christi**
Appellee

---

On appeal from Cause No. 2011-CCV-62438-4
County Court at Law Number 4 of Nueces County, Texas
Honorable James Klager, Presiding Judge

---

**APPELLANT'S BRIEF**

---

LAW OFFICES OF THOMAS J. HENRY
Thomas J. Henry
State Bar No. 09484210
George A. DeVera
State Bar No. 24048431
521 Starr Street
Corpus Christi, Texas, 78401
Telephone: (361) 985-0600
Fax: (361) 985-0601
Email: gadevera-svc@tjhlaw.com
**Counsel for AppellantNorma Torres**

**ORAL ARGUMENT REQUESTED**

**IDENTITY OF PARTIES AND COUNSEL**

The following is a list of all parties to the trial court's order appealed from, and the names and addresses of all trial and appellate counsel:

1. Appellant-Plaintiff is Norma Torres.

2. Trial and appellate counsel for Appellate-Defendant City of Corpus Christi is Corpus Christi City Attorney, Mark DeKoch, P.O. Box 9277, 1201 Leopard Street, Corpus Christi, Texas, 78401.

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL.......................................................... i

TABLE OF CONTENTS ................................................................................. ii

TABLE OF AUTHORITIES .......................................................................... iv

STATEMENT OF THE CASE....................................................................... vii

STATEMENT REGARDING ORAL ARGUMENT ...........................................x

ISSUE PRESENTED ..................................................................................... xi

    **Was sovereign immunity properly waived pursuant to § 101.021 of the TEXAS TORT CLAIMS ACT for the personal injuries proximately caused by the negligence of Officer Walker? ........................................................ xi**

STATEMENT OF FACTS.................................................................................1

SUMMARY OF THE ARGUMENT ................................................................2

ARGUMENT ....................................................................................................3

    I.     STANDARD OF REVIEW .......................................................................3

    II.  NORMA PROPERLY PLED A STATUTORY WAIVER OF SOVEREIGN IMMUNITY.......................................................................6

    III.  THE EMERGENCY SITUATION EXCEPTION DOES NOT APPLY BECAUSE OFFICER WALKER WAS NOT RESPONDING TO AN EMERGENCY. ........................................................................................8

    IV. ASSUMING THE EMERGENCY SITUATION EXCEPTION APPLIES, OFFICER WALKER FAILED TO COMPLY WITH THE LAW AND ORDINANCES APPLICABLE TO EMERGENCY ACTION…….................................................................................11

**A.** **OFFICER WALKER ADMITTED CAUSING THE COLLISION IN HIS DEPOSITION.** ..................................................................................................15

**B.** **OFFICER WALKER RECEIVED A CITATION FOR VIOLATING THE TRANSPORTATION CODE AND PLED GUILTY IN OPEN COURT.** ......................16

**C.** **OFFICER WALKER'S SPEED ENDANGERED THE LIFE AND PROPERTY OF NORMA TORRES.**.....................................................................................17

**D.** **AN INDEPENDENT REVIEW BOARD FOUND OFFICER WALKER AT FAULT FOR CAUSING THE COLLISION.** .................................................................20

**E.** **OFFICER WALKER VIOLATED DEPARTMENTAL ORDINANCES.** ................21

**V. ASSUMING THE EMERGENCY SITUATION EXCEPTION APPLIES AND NO LAWS OR ORDINANCES GOVERN HIS CONDUCT, OFFICER WALKER'S CONDUCT CONSTITUTES CONSCIOUS INDIFFERENCE OR RECKLESS DISREGARD FOR THE SAFETY OF OTHERS**.....................................................................................22

**CONCLUSION/PRAYER**.............................................................................25

iii

# TABLE OF AUTHORITIES

**Cases**

*Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000) ................. 5, 6, 16

*Cantu v. Perales*, 97 S.W.3d 861, 862-63 (Tex. App. – Corpus Christi 2003, no pet.)......................................................................................................................4

*City of Amarillo v. Martin*, 971 S.W.2d 426, 431 (Tex. 1998) ..............................28

*City of Dallas v. Porter*, 2002 WL 1773008 at \*3-4 (Tex. App. – Dallas 2002, no pet.)....................................................................................................................16

*City of Elsa v. Gonzales*, 325 S.W.3d 622, 625 (Tex. 2010).....................................6

*City of Lancaster v. Chambers*, 883 S.W.2d 650, 656-57 (Tex. 1994)...................12

*City of San Antonio v. Hartman*, 201 S.W.3d 667. 672 (Tex. 2006).......................28

*City of San Antonio v. Higle*, 685 S.W.2d 682, 686-87 (Tex. App. – San Antonio 1984, writ ref'd n.r.e.). ......................................................................................26

*Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003)...............8

*Gwynn v. Tobin*, 2003 WL 21554331 (Tex. App. – Austin 2003, no pet.) .............11

*Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2003)......................................4

*Kelly v. Am. Interstate Ins. Co.*, No. 14-07-00083-CV, 2008 WL 5085138, at \*2 (Tex. App. – Houston [14th Dist.] Nov. 25, 2008, pet. filed) (mem. op., not designated for publication) ..................................................................................3

iv

*Mayhew v. Town of Sunnydale*, 964 S.W.2d 922, 928 (Tex. 1998) ..........................3

*Meijia v. City of San Antonio*, 759 S.W.2d 198, 200 (Tex. App. – San Antonio 1988, no writ) ....................................................................................................11

*Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012)........ ................................................................................................ vii, 6, 7

*Nueces County v. Ferguson*, 97 S.W.3d 205, 213 (Tex. App. – Corpus Christi 2003, no pet.) ......................................................................................4

*Rivas v. City of Houston*, 17 S.W.3d 23, 27 (Tex. App. – Houston [14th Dist.] 2000), supp. on reh'g 19 S.W.3d 901 (2000, pet. denied)......................................12

*Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 222 (Tex. 2002) ....................................................................................................3

*Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993)....4

*Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W. 3d 217, 228 (Tex. 2004). ............................................................................................ passim

*Texas Dep't of Public Safety v. Bonilla*, 2014 WL 2451176 at \*4-6 (Tex. App. – El Paso 2014, pet. filed)......................................................................21

*Texas Dep't of Transportation v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999)................7

*University of Tex. v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010) ..............................7

*Wadewitz v. Montgomery*, 951 S.W.2d 464, 467 (Tex. 1997); ..............................11

**Statutes**

TEX. CIV. PRAC. & REM. CODE §101.021(1)...........................................................7

TEX. CIV. PRAC. & REM. CODE §101.021...............................................................7

TEX. CIV. PRAC. & REM. CODE §101.055(2)......................................................8, 14

TEX. TRANSP. CODE ANN. § 546.002(b)..............................................................24

TEX. TRANSP. CODE ANN. § 546.003 ..................................................................24

TEX. TRANSP. CODE ANN. § 546.005 (Vernon 2009)..........................................24

TEX. TRANSP. CODE ANN. § 546.001 ..................................................................24

TEX. TRANSP. CODE ANN. § 546.001(3) (Vernon 2009)......................................19

## STATEMENT OF THE CASE

Appellant Norma Torres ("Norma") was severely injured in a collision with Officer Robert Walker ("Officer Walker") on July 18, 2011, when he lost control of his police vehicle while attempting to assist in a high-speed chase. As a result of her injuries, Norma requires an L4-5laminectomy and discectomy with surgical stabilization and fusion. It is undisputed that Officer Walker was acting in the course and scope of his employment with Appellee the City of Corpus Christi ("City").

The City filed a plea to the jurisdiction asserting that the trial Court lacked subject matter jurisdiction because immunity was not waived under the TEXAS TORT CLAIMS ACT ("Act") because Officer Walker was responding to an emergency call and properly complied with the laws and ordinances applicable to emergency action. Alternatively, the City argued that Officer Walker did not act with conscious indifference or reckless disregard for Norma's safety.

The trial court erroneously held that Norma failed to raise a fact issue establishing subject matter jurisdiction despite the fact that the Texas Supreme Court has held that disputed facts must be resolved at trial by a jury.[1] Moreover, if

---

[1] *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W. 3d 217, 228 (Tex. 2004).

this Court properly takes all evidence favorable to Norma as true and resolves all reasonable inferences and doubts in her favor, then the only proper holding is to allow a jury to determine whether Officer Walkers actions were taken in proper compliance with the laws and ordinances applicable to emergency actions or whether his actions were consciously indifferent to or in reckless disregard of Norma's safety.[2] By this brief, Norma respectfully requests that the Court reverse the trial court's ruling that immunity was not properly waived under the TEXAS TORT CLAIMS ACT.

Appellant filed suit in County Court at Law Number 4 of Nueces County, Texas, on November 23, 2011, alleging that the City was liable to Norma pursuant to § 101.021 of the CIVIL PRACTICE & REMEDIES CODE because Officer Walker committed wrongful acts or omissions while acting in the course and scope of his employment with the City while operating a motor-driven vehicle and would be personally liable to Norma under Texas Law. (1 CR 5-12). On June 18, 2013, the City filed a plea to the jurisdiction asserting that the trial court lacked subject matter jurisdiction over this case. (1 CR 18-23). In response to the City's plea, Norma filed an Amended Petition on July 19, 2013 and a Response with evidence on July 22, 2013. (1 CR 114-122, 1 CR 124-141).

---

[2] *Miranda*, 133 S.W.3d at 227-28.

The first hearing on the Plea was held on July 22, 2013. (1 RR 1-16). At the request of the trial court judge, both parties filed additional briefings with evidence for the court on their positions (1 CR 328-333, 1 CR 424-439). On June 16, 2014, the Court granted the City's plea and rendered a take nothing judgment against Norma. Subsequently, Norma filed a Motion for Reconsideration and Motion for New Trial on July 15, 2014. (1 CR 441-449). The Court heard Norma's Motion for Reconsideration and Motion for New Trial on August 27, 2014 (2 RR 1-35). The trial court denied Norma's Motion for Reconsideration and Motion for New Trial on August 27, 2014. (1 CR 530).

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would give the Court a more complete understanding of the facts and legal issues presented in this appeal. *See* TEX. R. APP. P. 39.1(c). The facts in the instant case require additional explanation in order to fully understand the chronology of events. Therefore, the decisional process would be significantly aided by having counsel present to explain why the facts do or do not support Appellant's contentions. *See* TEX. R. APP. P. 39.1(d). Accordingly, Appellee respectfully requests the Court grant oral argument.

**<u>ISSUE PRESENTED</u>**

There is a single issue to be resolved by the Court in this appeal:

*Was sovereign immunity properly waived pursuant to § 101.021 of the TEXAS TORT CLAIMS ACT for the personal injuries proximately caused by the negligence of Officer Walker?*

# STATEMENT OF FACTS

On July 18, 2011, Officer Walker, an employee of the Corpus Christi Police Department, lost control of his police car while traveling westbound on the 2500 block of Laredo in excess of the posted speed limit and collided with Norma Torres in the eastbound lane of traffic. As a result of the collision, Officer Walker was cited for unsafe change from a direct course. (1 CR 54-56). Additionally, he was cited by the Police Department for violating § 4.04(B)(3) of the General Rules Manual and disciplined by his supervising officer. (1 CR 221-223, 272-277). Norma sustained serious personal injuries as a result of the collision which require a laminectomy and discectomy with surgical stabilization and fusion at L4-5 to address. (1 CR 108).

## SUMMARY OF THE ARGUMENT

The trial court's ruling in its August 27, 2014 order should be reversed because the evidence presented by Norma creates a jurisdictional fact issue that a jury must resolve as to whether the immunity has properly been waived under the TEXAS TORT CLAIMS ACT. Subject Matter Jurisdiction over this case exists for four reasons.

First, Norma properly pled a statutory waiver of sovereign immunity in her live pleading before this Court.

Second, the Emergency Situation Exception ("Exception") to the ACT does not apply because the City failed to prove that Officer Walker was responding to an emergency.

Third, Officer Walker admitted that he failed to act as a reasonably prudent officer while assisting in apprehending a stolen vehicle.

Fourth, assuming the exception applies, whether Officer Walker's conduct during the collision was reckless is a fact question for the jury.

The trial court's August 27, 2014 order should be REVERSED.

**ARGUMENT**

At issue is whether or not the "Emergency Exception" to the TEXAS TORT CLAIMS ACT was applicable to Officer Walker's actions on July 18, 2011, and, assuming that the exception applies, did Walker's conduct constitute a reckless disregard for the safety of all persons. The undisputed evidence creates a disputed fact issue that Officer Walker failed to act as a reasonably prudent officer at the time of the collision and that his actions constitute a finding of reckless conduct.

## I.    STANDARD OF REVIEW

A trial court's ruling on a plea to the jurisdiction is a question of law and reviewed ***de novo***.[3] A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction.[4] ***When a plea to the jurisdiction challenges the pleadings, the court determines if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause rather***

---

[3] *Miranda*, 133 S.W.3d at 226 (emphasis added); see *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 222 (Tex. 2002); *Mayhew v. Town of Sunnydale*, 964 S.W.2d 922, 928 (Tex. 1998); *Kelly v. Am. Interstate Ins. Co.*, No. 14-07-00083-CV, 2008 WL 5085138, at *2 (Tex. App. – Houston [14th Dist.] Nov. 25, 2008, pet. filed) (mem. op., not designated for publication) (citing *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)).

[4] *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2003).

***than looking at the claim's merits.[5] Since the plaintiff bears the burden to allege facts affirmatively demonstrating the trial court's jurisdiction to hear a case, the courts construe the pleadings liberally and in the plaintiff's favor and should look to the pleader's intent.[6]*** The Court assumes the truth of the jurisdictional facts alleged in the pleadings unless the defendant presents evidence to negative their existence.[7]

***However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, the court will consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised.[8]*** The purpose of the plea is not to force a plaintiff to preview her case on the merits, but rather, to establish why the merits of the claims should never be reached.[9] ***Although the issues raised by a plea to the jurisdiction often require hearing evidence, a plea to the jurisdiction does not authorize an inquiry so far into the substance of the claims presented that the plaintiff is required to put on her case simply to***

---

[5] *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993); *Cantu v. Perales*, 97 S.W.3d 861, 862-63 (Tex. App. – Corpus Christi 2003, no pet.) (emphasis added).
[6] *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d at 446; *Nueces County v. Ferguson*, 97 S.W.3d 205, 213 (Tex. App. – Corpus Christi 2003, no pet.) (emphasis added).
[7] *Texas Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004).
[8] *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000) (emphasis added).
[9] *Id*. at 554.

*establish jurisdiction.*[10] Whether a determination of subject matter jurisdiction can be made in a preliminary hearing or should await a fuller development of the merits of the case must be left to the trial court's discretion.[11]

**When jurisdiction involves the merits of the case, the trial court must review the evidence to determine whether there is a fact issue.**[12] This standard mirrors a summary judgment procedure under Tex. R. Civ. P. 166a(c).[13] That is, **the defendant must first present evidence to show that the Court lacks subject-matter jurisdiction**; if the defendant does so, then the plaintiff must then show there is a disputed material fact on the jurisdictional issue.[14] *If the facts are disputed, the court cannot grant the plea to the jurisdiction and the issue must be resolved by the finder-of-fact at trial;* however, if the evidence is undisputed or if there is no fact question on the jurisdictional issue, the trial court will rule on the plea to the jurisdiction as a matter of law.[15] When reviewing a plea to the jurisdiction in which the pleading requirement is met and evidence has been

---

[10] *Id.* (emphasis added).
[11] *Id.*
[12] *Texas Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004); see *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *City of Elsa v. Gonzales*, 325 S.W.3d 622, 625 (Tex. 2010).
[13] *Mission Consol.*, 372 S.W.3d at 635; *Miranda*, 133 S.W.3d at 228.
[14] *Id.* (emphasis added).
[15] *Mission Consol.*, 372 S.W.3d at 635; *University of Tex. v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010) (emphasis added).

5

submitted to support the plea that implicates the merits of the case, ***all evidence favorable to the nonmovant is taken as true and all reasonably inferences and doubts are resolved in favor of the nonmovant.[16]*** **If the evidence submitted creates a fact issue as to jurisdiction, then it is for the fact-finder to decide.[17]**

## II. NORMA PROPERLY PLED A STATUTORY WAIVER OF SOVEREIGN IMMUNITY

Sovereign immunity from suit defeats a trial court's subject matter jurisdiction unless the state specifically consents to suit.[18] In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by **alleging** a valid waiver of immunity.[19] The TEXAS TORT CLAIMS ACT provides a limited waiver of governmental immunity if certain conditions are met. The ACT states:

A governmental unit in the state is liable for:

    (1) Property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
        (A) The property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

---

[16] *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227-28 (Tex. 2004) (emphasis added).

[17] *Miranda*, 133 S.W.3d at 227-28 (emphasis added).

[18] *Texas Dep't of Transportation v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).

[19] *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003).

6

(B)     The employee would be personally liable to the claimant according to Texas law; and

(2) Personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE §101.021. Thus, a governmental unit may be held liable for the wrongful acts or omissions of its employees under the ACT if they are acting within the scope of their employment and when the personal injuries or property damage arises from the operation or use of a motor-driven vehicle or equipment if the same employee could be held liable to the claimant under Texas law.[20]

Norma's Amended Petition specifically alleges that Officer Walker was in the course and scope of his employment and that he was negligent in the operation of his police vehicle at that time of the collision. (1 CR 146-154). Moreover, both Officer Walker and his supervisor, Lieutenant J.C. Hooper ("Lt. Hooper") testified that Officer Walker is in the course and scope of his employment with the City at the time the collision occurred. (1 CR 179, 1 CR 249). Additionally, it is undisputed that the collision arose from Officer Walker's operation or use of a motor driven-vehicle. (1 CR 179).

---

[20] TEX. CIV. PRAC. & REM. CODE §101.021(1).

7

## III. THE EMERGENCY SITUATION EXCEPTION DOES NOT APPLY BECAUSE OFFICER WALKER WAS NOT RESPONDING TO AN EMERGENCY.

The ACT contains exclusions and exceptions to liability that, although a proper waiver of statutory immunity has properly been pled, nonetheless excuses the governmental entity's conduct. Specifically, the ACT excludes claims arising:

> (2) from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others.

TEX. CIV. PRAC. & REM. CODE §101.055(2). The City's plea alleges that Officer Walker's conduct is excusable because he was responding to an emergency call. The evidence, when viewed favorably to Norma, raises a fact issue as to whether Officer Walker was responding to an emergency.

**The existence of an emergency situation is a matter of fact that ordinarily should be determined by the jury.**[21] The City asserts that since Walker was operating with lights and sirens at the time the collision occurred that he was automatically responding to an emergency situation. Simply because

---

[21] *Meijia v. City of San Antonio*, 759 S.W.2d 198, 200 (Tex. App. – San Antonio 1988, no writ) (emphasis added)

8

Walker decided to activate his lights and sirens while travelling toward the intersection where the collision occurred does not automatically mean that he was "responding to an emergency." **In order to succeed on a plea to the jurisdiction, there can be no issue of material fact regarding the existence of any emergency and whether the City complied with relevant laws.[22]**

**In determining whether an emergency situation arises, Courts have employed a reasonably prudent officer standard and examined the need to which an officer responds and the risks of the officer's course of action based on the officer's perception of the facts at the time of the event.[23]** Need is determined by factors such as the seriousness of the situation to which the official responds and what alternative courses of action, if any, are available, to achieve a comparable result.[24] Risk refers to the countervailing public safety concerns; the nature and severity of harm that the official's actions could cause (including injury to bystanders as well as the possibility that an accident would prevent the officials from reaching the scene of the emergency), the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent

---

[22] *Id.* (emphasis added).
[23] *Gwynn v. Tobin*, 2003 WL 21554331 (Tex. App. – Austin 2003, no pet.) quoting *Wadewitz v. Montgomery*, 951 S.W.2d 464, 467 (Tex. 1997); see also *Rivas v. City of Houston*, 17 S.W.3d 23, 27 (Tex. App. – Houston [14th Dist.] 2000), supp. on reh'g 19 S.W.3d 901 (2000, pet. denied).
[24] *Id.*

official.[25] *To counter an emergency vehicle driver's proof that his actions were necessary, the injured bystander must prove that no reasonable person in the driver's position could have thought the facts justified his acts.*[26]

In his deposition, Officer Walker testified that, in light of the results of his actions, he failed to act as a reasonably prudent officer in course of action based on his perception of the events at the time they occurred:

> *Q      Okay. Do you agree that if you were driving your vehicle a little slower that day, that you could have prevented yourself from losing control and striking my client's vehicle?*
>
> *A      I believe if I was driving in a safe and prudent manner that the collision would not have occurred.*
>
> Q      Okay. Do you believe that you could have responded to the call in a safe and prudent manner and still been able to arrive at the location that you were trying to reach?
>
> A      I -- I don't know.
>
> *Q      (By Mr. De Vera) Okay. Looking back at everything, do you think that -- that the best thing for you to have done at the time was to proceed in a safe and prudent manner so that you could safely and efficiently get to the intersection to lay down the strips, the spike strips?*
>
> *A      Yes, sir.*
>
> *Q      Okay. Knowing what you know today, would you do things differently?*
>
> *A      Yes, sir.*

---

[25] *Id.*

[26] *Id.* quoting *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656-57 (Tex. 1994) (emphasis added).

10

> **Q** *Okay. How would you have done things differently?*
>
> **A** *I -- I either wouldn't have tried to get to that intersection or I would have went further to a different location further off so I'd have more time to set up the spike strips.*
>
>      &ast;   &ast;   &ast;
>
> **Q** *Do you believe that as a result of violating the rules manual you were not acting as a reasonably prudent police officer should have acted on the day of the collision?*
>
> **A** *I don't believe I was driving at a reasonable and prudent manner.*

(1 CR 184, 186) (emphasis added). Thus, Officer Walker's own testimony creates a fact issue as to whether he was responding to an emergency at the time of the collision.

## IV. ASSUMING THE EMERGENCY SITUATION EXCEPTION APPLIES, OFFICER WALKER FAILED TO COMPLY WITH THE LAW AND ORDINANCES APPLICABLE TO EMERGENCY ACTION.

The City asserts that sovereign immunity is not waived under the ACT because Officer Walker was responding to an emergency call at the time of the collision and that his actions did not violate any laws or ordinances applicable to an emergency situation. Even if the exception applies, Norma's alleges sufficient jurisdictional facts in her Amended Petition that actively demonstrate that Officer Walker failed to act in compliance with the applicable laws or ordinances

11

applicable to an emergency situation at the time of the collision.  Moreover, the undisputed evidence supports these allegations.

The Texas Supreme Court, in *Bland Independent School District v. Blue*, held that a plea to the jurisdiction cannot be used to have require a plaintiff to prove her entire case in order to establish jurisdiction—**so long as a plaintiff properly pleads that the conduct was reckless, listed the purportedly reckless conduct and specified the laws applicable, granting a plea to the jurisdiction is improper**:

> Whether Porter is required to prove in response to the City's plea to the jurisdiction that Dethloff violated any of the statutes pleaded by Porter is similar to the issue of whether a plaintiff must prove the amount of damages alleged in the petition in order to establish jurisdiction in a trial court.  As the Texas Supreme Court noted in *Bland*, absent a specific allegation that the amount was pleaded merely as a sham for the purpose of wrongfully obtaining jurisdiction, the plaintiff's allegation of damages in excess of the jurisdictional limit suffices to show the amount in controversy and establish jurisdiction to the trial court.  *A plea to the jurisdiction cannot be used to require the plaintiff to try her entire case in order to show entitlement to damages in excess of the trial court's jurisdictional limit.*
>
> **Similarly, absent an allegation by the City that Porter fraudulently alleged violations of sections 546.005 and 546.001(3) by Dethloff in order to obtain jurisdiction in the trial court, Porter cannot be required to prove her entire case to demonstrate the**

12

**statutory violations by Dethloff in order to establish jurisdiction.**

\* \* \*

**However, Porter pleaded Dethloff was reckless in his actions, listed the purportedly reckless conduct, and specified the laws applicable to an emergency response with which she alleges Dethloff failed to comply. Requiring Porter to carry her ultimate burden to prove Dethloff's conduct met either prong of the pleaded allegations in response to the City's plea to the jurisdiction would impermissibly require Porter to prove her case on the merits simply to establish jurisdiction.** *Bland Indep. Sch. Dist.*, 34 S.W.3d at 554. Although the City's entitlement to immunity pursuant to section 101.055 might be established after the case is further developed, Porter is not required to prove her case in order to defeat the plea to the jurisdiction. *Id.*[27]

SECTION 101.055(2) of the ACT specifically excludes claims arising from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others.[28] Like Porter, Norma pled in her Amended Petition that if Officer Walker was responding to an emergency call that his behavior was not in compliance with the laws and ordinances applicable to an emergency action or, in

---

[27] *City of Dallas v. Porter*, 2002 WL 1773008 at \*3-4 (Tex. App. – Dallas 2002, no pet.) citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) (emphasis added).
[28] TEX. CIV. PRAC. & REM. § 101.055(2).

13

the absence of such law or ordinance, with conscious indifference or reckless disregard for the safety of others. (1 CR 115-119).

The undisputed evidence establishes that Officer Walker was in the course and scope of his employment with the City at the time of the collision. (1 CR 179, 1 CR 249). Additionally, Lt. Hopper identified that the applicable laws and ordinances that govern Walker's actions:

> Q      Okay. Fair enough. The uniform division manual, that's the operating manual for the division that you work in and the division that Officer Walker was working in at the time the collision happened. Is that correct?
>
> *A      I think that really applies to the general rules manual. This manual is in place, but I think the general rules manual is more our bible. This document, yes, it does exist and it did exist for us at the time.*
>
> *Q      Okay. Other than the general rules manual and this uniform division manual, would there be any other employee manuals or handbooks that would govern the manner in which Officer Walker was to operate his vehicle?*
>
> *A      There might be elements in the Texas traffic code that would apply, but other than that, no, sir. I can't think of any others.*
>
> *Q      And when you're talking about the Texas traffic code, Lieutenant, just to make sure I'm clear, you're talking about the codified statutes that go over the what the proper rules for operating vehicles for anyone on the Texas roadway?*
>
> *A      Yes, sir.*
>
> Q      Is that fair?
>
> A      Yes, sir.

14

> *Q Okay. And are you talking about specifically the sections of the traffic code that deal with emergency vehicles or are you just speaking more generally about the rules that every vehicle in the roadway has to follow?*
>
> *A Both.*

(1 CR 232). The evidence shows that Walker violated not only the specific portions of the TRANSPORTATION CODE that govern the operation of authorized emergency vehicles, but that he also violated internal rules and regulations of the Police Department and the City of Corpus Christi. (1 CR 287-327).

### A. OFFICER WALKER ADMITTED CAUSING THE COLLISION IN HIS DEPOSITION.

The Emergency Exception to the ACT does not apply because Officer Walker violated laws and ordinances applicable to an emergency situation and expressly admitted liability for causing the collision in his deposition:

> *Q Okay. And so let me just ask you formally for the record, are you assuming responsibility for causing this collision?*
>
> *A Yes, sir.*
>
> Q Okay. Is there anything that my client Ms. Torres did to cause the collision?
>
> A No, sir.
>
> Q Is there anything that my client Ms. Torres didn't do to avoid the collision?
>
> A No, sir.

15

1 (CR 175). Officer Walker's testimony alone is sufficient to raise a fact issue regarding the emergency exception.

>
> **B.  OFFICER WALKER RECEIVED A CITATION FOR VIOLATING THE TRANSPORTATION CODE AND PLED GUILTY IN OPEN COURT.**

The evidence also shows that Officer Walker violated the specific portions of the TRANSPORTATION CODE that govern the operation of authorized emergency vehicles. Specifically, Walker specifically admitted that he received a citation from the investigating officer for unsafe change from a direct course and that he pled guilty to the charge:

> Q      Okay.  And according to -- according to the report for this particular wreck, it says that you received -- you were charged with unsafe change from a direct course.  Is that fair?
>
> A      Yes, sir.
>
> Q      Okay.  And -- and since you were charged as a -- an officer and not as an off duty civilian, is there a different process by which officers resolve these kind of citations or are they resolved as if they were – as if you were in a civilian vehicle?
>
> A      They're resolved the same way.
>
> *Q      Okay.  And so how did you resolve this particular citation?*
>
> *A      I went to the court and pled guilty and requested the deferred adjudication.*

16

(1 CR 165 1 CR 278-280) (emphasis added). The fact that Officer Walker was cited for violating the TRANSPORTATION CODE is sufficient to raise a fact issue regarding the emergency exception.

### C. OFFICER WALKER'S SPEED ENDANGERED THE LIFE AND PROPERTY OF NORMA TORRES.

In addition to receiving a citation for unsafe change from a direct course, the investigating officer's report shows that the collision occurred in Ms. Torres's lane (in the direction of oncoming traffic). (1 CR 278-280). The fact that Officer Walker's speed was so excessive that it caused him to lose control of his vehicle and strike another oncoming vehicle raises a fact issue about whether Officer Walker complied with the laws applicable to emergency situations.

The El Paso Court of Appeals held that sufficient evidence was presented to raise a fact issue concerning whether an officer in pursuit of a suspect violated the laws applicable to an emergency situation.[29] In *Bonilla*, as in this case, the Court of Appeals found that the applicable statues pertaining to the officer's actions were §§ 546.001 and 546.005 of the TRANSPORTATION CODE. The officer is question ran a red light while pursuing a suspect and the Court held that there was sufficient

---

[29] *Texas Dep't of Public Safety v. Bonilla*, 2014 WL 2451176 at *4-6 (Tex. App. – El Paso 2014, pet. filed).

evidence to raise a fact issue as to whether the officer slowed before entering the intersection where the collision occurred.

In this case, SECTION 546.001(3) allows an operator of an authorized emergency vehicle to exceed the maximum speed limit as long as the operator does not endanger life or property.[30] Officer Walker testified that his excessive speed in conjunction with a soft brake caused him to lose control of his vehicle:

> Q    Got it.  Okay.  And so you're coming around the S curve and are you -- are you intending when it gets to the S curve to continue straight on Agnes toward --
> A    Continue westbound.
> Q    Right.  Continue westbound?
> A    Yes, sir.
> Q    Okay.  And so when you come around the curve, you're hitting your brakes because of your speed?
> A    Yes, sir.
> *Q    Okay.  Is it fair to say that -- that the reason that you had to hit your brakes coming around that curve is because you were operating your vehicle over the posted speed limit because of the emergency?*
> *A    Yes, sir.*
>
> *         \*    \*    \**
>
> *Q    Okay.  So basically you're -- you're going through the S curve, you're going to intend on proceeding westbound towards the intersection of Agnes and Port, you hit your brake to reduce your speed, because of the speed you're going*

---

[30] TEX. TRANSP. CODE ANN. §§ 546.001(3) (Vernon 2009) (emphasis added).

18

> *around the curve. The brake is soft and so -- as a result of that your speed does not decrease and that causes you to lose control of the vehicle. Is that fair?*
>
> *A    Yeah.*

(1 CR 170-171). Norma Torres testified that the impact occurred in her lane and caused property damage to her vehicle and bruising to her body:

> *Q    Okay. Tell me in your own words as much detail as you can recall how the accident happened.*
>
> *A    I just know that he did the curve and he was going really fast and I did a turn to the right and we still end up hitting.*
>
> *Q    Okay. How would you describe the impact?*
>
> *A    It was awful. It was awful. I was -- it was awful. It was his car was completely out of control.*
>
> *Q    Was there property damage to your vehicle?*
>
> *A    Yes, sir.*
>
>       \*      \*      \*
>
> *Q    Okay. Did you have any cuts?*
>
> *A    I don't -- just bruises.*
>
> Q    Okay. Where were you bruised?
>
> A    In my leg and I don't remember where else. I just remember my leg.
>
> Q    Okay. Which leg?
>
> A    I think it was the right.[31]

The fact that Officer Walker operated his vehicle at such an excessive speed as to endanger both the life AND property of Norma Torres is sufficient to raise a fact issue regarding the emergency exception.

---

[31] Deposition of Norma Torres, page:line 22:17 – 28:18.

19

**D. AN INDEPENDENT REVIEW BOARD FOUND OFFICER WALKER AT FAULT FOR CAUSING THE COLLISION.**

Additionally, Officer Walker's actions were reviewed by the City Vehicle Accident Review Board (VARB) and the collision was found to be a preventable event and the Board assessed points against his operating record. (1 CR 281-291). As a result of these findings, the VARB required Officer Walker to attend counseling sessions and a remedial driver training program. *Id.*

Officer Walker testified that he had the ability to appeal the Board's decision but elected not to because he accepted responsibility for causing the wreck:

> Q   Okay. And -- and you know that the accident review board allows an appeal from the decision of the board, correct?
> A   Yes, sir.
> *Q   Okay. And did you -- did you elect to appeal?*
> *A   No, sir.*
> *Q   Okay. Is the reason that you elected not to appeal because you accepted responsibility that the collision was your fault?*
> *A   Yes, sir.*

(1 CR 182). The fact that the City found the collision to be preventable an assessed a penalty to Officer Walker is sufficient to raise a fact issue regarding the emergency exception.

**E. OFFICER WALKER VIOLATED DEPARTMENTAL ORDINANCES.**

As a result of the collision, Officer Walker was cited at the scene for violating Rule 4.04(B)(3) of the Police Department's General Rules Manual for failing to operate his vehicle in a safe and prudent manner. (1 CR 287-291). Officer Walker admitted being internally disciplined by the Police Department for failing to operate his vehicle in a safe and prudent manner:

> Q     And can you read for the ladies and gentlemen of the jury what violation 4.04 B3 is?
>
> A     Yes, sir. "Employees shall operate police vehicles in a safe and prudent manner at all times and will be held accountable for the carelessness or negligence. Improper use or operation of a police vehicle may contribute grounds for disciplinary action."
>
> *Q     Okay. And do you admit that the way that you operated the vehicle on July 18th of 2011 was in violation of 4.04 B3?*
>
> *A     Yes, sir.*
>                    *      *      *
> *Q     What disciplinary action was instituted against you as a result of this violation?*
>
> *A     I was written a letter of counsel.*

(1 CR 182). The San Antonio Court of Appeals, in *City of San Antonio v. Higle*, held that acting in violation of prescribed governmental procedures would prevent

21

the City from raising an immunity defense.[32]   Lt. Hopper testified that the City's

General Rules Manual would govern Officer Walker's conduct at the time of the

collision.  (1 CR 232).   The fact that Officer Walker was cited for violating

departmental procedures alone is sufficient to raise a fact issue regarding the

emergency exception.

## V.     ASSUMING THE EMERGENCY SITUATION EXCEPTION APPLIES AND NO LAWS OR ORDINANCES GOVERN HIS CONDUCT, OFFICER WALKER'S CONDUCT CONSTITUTES CONSCIOUS INDIFFERENCE OR RECKLESS DISREGARD FOR THE SAFETY OF OTHERS.

The City asserts immunity has not been waived because no pleadings

establish that the City acted with conscious disregard and no evidence exists that

Officer Walker acted with conscious indifference or reckless disregard for the

safety of others.   CHAPTER 546 of the TRANSPORTATION CODE governs the

operation of authorized emergency vehicles.  It condones conduct by operators of

authorized emergency vehicles which would normally violate the CODE when

responding to an emergency call or pursuing an actual or suspected violator of the

law.[33]   Additionally, the statute requires the use of audio or visual signals when

_____

[32] *City of San Antonio v. Higle*, 685 S.W.2d 682, 686-87 (Tex. App. – San Antonio 1984, writ ref'd n.r.e.) (emphasis added).
[33] TEX. TRANSP. CODE ANN. §§ 546.001; TEX. TRANSP. CODE ANN.  546.002(b) (Vernon 2009).

*proceeding past a red light or stop sign, after slowing for safe operation*.[34] **There is no specific statute which authorizes an officer to exceed the maximum speed to such a degree that they lose control of their vehicle and strike oncoming traffic.**[35] Despite condoning normally illegal conduct, the TRANSPORTATION CODE requires that the operator of an authorized emergency vehicle responding to an emergency operate the vehicle with appropriate regard for the safety of all persons and without reckless disregard for the safety of others.[36]

The Texas Supreme Court requires a finding of reckless conduct before liability may be premised upon the conduct of an operator of an emergency vehicle in an emergency situation.[37] To recover damages resulting from the emergency operation of an emergency vehicle, a plaintiff must show that the operator has committed an act that the operator knew or should have known posed a high degree of risk of serious injury.[38] There is no requirement that the officer *specifically testify* that he knew the relevant facts but did not care about the

---

[34] TEX. TRANSP. CODE ANN. § 546.003 (Vernon 2009) (emphasis added).

[35] While TEX. TRANSP. CODE ANN. § 546.001(3) does allow an authorized emergency vehicle to exceed a maximum speed limit, it must not endanger life or property. In this case, Walker testified that his excessive speed caused him to lose control of his vehicle and strike Ms. Torres in her lane of travel.

[36] TEX. TRANSP. CODE ANN. § 546.005 (Vernon 2009).

[37] *City of Amarillo v. Martin*, 971 S.W.2d 426, 431 (Tex. 1998) (emphasis added).

[38] *Id*. at 430 (emphasis added).

result.[39]  The evidence shows that Walker's actions at the time of the collision violated CHAPTER 546 of the TRANSPORTATION CODE:

> Q  Hold on.  Let me just finish my question.  That collision itself was one hundred percent completely and totally your fault?
>
> A  Yes, sir.
>
> *Q  Okay.  Now, even though you're operating your vehicle with lights and sirens, you acknowledge that the internal regulations of the department as well as the laws of the state of Texas require that you operate your vehicle with due regard to other people on the roadway, correct?*
>
> *A  Yes, sir.*
>
> *Q  Based on what happened in the collision and how the collision occurred, do you believe that you operated your vehicle with due care and due regard on the day of the collision?*
>
> *A  No, sir.*
>
> *Q  Okay.  And that's because you lost control of the vehicle coming around the curve, correct?*
>
> *A  Yes, sir.*

(1 CR 175).  The evidence shows that Officer Walker failed to operate his vehicle with due regard for the safety of Norma Torres and is sufficient to raise a fact issue that his conduct violated § 546.005 of the TRANSPORTATION CODE.  Accordingly, the trial court's ruling on the City's plea should be REVERSED.

---

[39] *City of San Antonio v. Hartman*, 201 S.W.3d 667. 672 (Tex. 2006).

# CONCLUSION/PRAYER

Norma Torres has properly pled a waiver of sovereign immunity under the TEXAS TORT CLAIMS ACT. Moreover, the evidence presented, when view in the light most favorable to Norma, establishes fact issues as to whether the emergency exception applies. Further, the evidence raises fact issues as to whether Officer Walker properly complied with the laws and ordinances applicable to emergency actions when he operated his vehicle at an excessive speed and lost control coming around a curb causing him to collide with oncoming traffic. The evidence also raises a fact issue as to whether, in the absence of applicable laws or ordinances governing emergency situations, Officer Walker's conduct constituted conscious indifference or reckless disregard for the safety of Norma Torres and the general public.

Because a trial court cannot properly grant a plea to the jurisdiction if the jurisdictional facts are disputed, Appellant respectfully requests that this Court REVERSE the trial court's judgment and allow a jury to decide the issue.

Respectfully submitted,

LAW OFFICES OF THOMAS J. HENRY
521 Starr Street
Corpus Christi, Texas 78401
Telephone: (361) 985-0600
Facsimile: (361) 985-0601


By: /s/George A. DeVera
        Thomas J. Henry
        State Bar No. 09484210
        George A. DeVera
        State Bar No. 24048431
        ATTORNEYS FOR APPELLANT
        NORMA TORRES

26

## CERTIFICATE OF COMPLIANCE WITH WORD LIMITATION

I certify that I have reviewed the Appellee's Brief and have concluded that every factual statement made herein is supported by competent evidence included in the appendix or the record.

Pursuant to Texas Rules of Appellate Procedure 9.4(i)(3), I hereby certify that the foregoing brief contains 6,449 words (excluding the caption, table of contents, table of authorities, signature, proof of service, certification, and certificate of compliance). This is a computer generated document created in Microsoft Word, using 14-point typeface for all text, except for the footnotes, which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare this document.

 /S/ George A. DeVera
GEORGE A. DEVERA
STATE BAR NO. 24048431

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing document has been forwarded to all counsel of record in the manner indicated below on the 20th day of April, 2015:

**VIA E-SERVICE**
Mark DeKoch
City of Corpus Christi
Legal Department
1201 Leopard Street
P.O. Box 9277
Corpus Christi, Texas 78401
Telephone: (361) 826-3372
Facsimile: (361) 826-3239

/s/George A. DeVera
GEORGE A. DEVERA

# **APPENDIX**

In compliance with TEX. R. APP. P. 38.1(k), copies of the following documents are included:

TAB 1……………………………………………Order Granting Plea to the Jurisdiction

TAB 2……………………………………………………TEX. TRANSP. CODE § 546

TAB 3……………………………………………………*Mejia v. City of San Antonio,*
89 S.W.3d 611 (Tex. 2002)

TAB 4…………………………………*City of Dallas v. Porter*, 2002 WL 1773008
(Tex. App. – Dallas 2002, no writ.)

TAB 5……………………………….....................*Bland Indep. Sch. Dist. v. Blue*,
34 S.W.3d 547 (Tex. 2000)

TAB 6……………………………….……*Tex. Dep't of Parks & Wildlife v. Miranda*
133 S.W.3d 217 (Tex. 2004)

TAB 7…………………………………………..*City of San Antonio v. Higle*,
685 S.W.2d 682 (Tex. App. – San Antonio 1985, writ ref'd n.r.e.)

TAB 8…………………………………….Texas Dep't of Public Safety v. Bonilla,
2014 WL 2451176 (Tex. App. – El Paso, pet. filed)

## CAUSE NO. 2011-CCV-62438-4

| | | |
|---|---|---|
| NORMA TORRES | § | IN THE COUNTY COURT |
| | § | |
| | § | |
| | § | |
| VS. | § | AT LAW NO. 4 |
| | § | |
| | § | |
| CITY OF CORPUS CHRISTI | § | NUECES COUNTY, TEXAS |

### ORDER ON DEFENDANT, CITY OF CORPUS CHRISTI'S PLEA TO THE JURISDICTION

On _____, 2014, the Court considered Defendant's Plea to the Jurisdiction filed in this cause by Defendant, City of Corpus Christi. The Court, after examining the pleadings and the Plea to the Jurisdiction is of the opinion and finds that Defendant, City of Corpus Christi's Plea to the Jurisdiction should be granted as follows:

**IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED** that Plaintiff take nothing against Defendant, City of Corpus Christi and that Defendant recover all costs on its behalf expended of and from Plaintiff, for which let execution issue.

**SIGNED** this _____ day of _____, 2014.

_____
JUDGE PRESIDING

SCANNED

JUN 1 7 2014

PATSY PEREZ DISTRICT CLERK
NUECES COUNTY

# FILED

JUN 1 7 2014

PATSY PEREZ CLERK
COUNTY & DISTRICT COURT NUECES CO. TEXAS
BY_____

440

ool crossing
r    other
ph.....e with

1 emergency
:ation device
; or
by the Fed-
1 while oper-
ther than a

on (b-2), this
es, rules, or
with specific
)y a political
the use of a
1e operator of

ch. 357 (S.B.
)05; am. Acts
§ 1, effective
)2nd Leg., ch.
)eptember 1,

**School**

(    bus if:
s   _n; or
on the bus is
design capac-

hile operating
from:

r
us that is not

)les necessary
ion.
ch. 923 (H.B.
2007.)

**Vehicle
iage Clear-**

on or cross a
: vehicle being
age clearance.
)n is a misde-
: less than $50

(Enacted by Acts 2007, 80th Leg., ch. 424 (S.B. 1372), § 12, effective January 1, 2008; am. Acts 2009, 81st Leg., ch. 87 (S.B. 1969), § 27.001(108), effective September 1, 2009 (renumbered from Sec. 545.426).)

# CHAPTER 546
# OPERATION OF AUTHORIZED EMERGENCY VEHICLES AND CERTAIN OTHER VEHICLES

### Subchapter A. Authorized Emergency Vehicles

Section
546.001.  Permissible Conduct.
546.002.  When Conduct Permissible.
546.003.  Audible or Visual Signals Required.
546.004.  Exceptions to Signal Requirement.
546.005.  Duty of Care.
546.006.  Designated Emergency Vehicle During Declared Disasters.
546.007.  Closure of Road or Highway by Firefighter.

### Subchapter B. Operation of Certain Fire-Fighting Equipment

546.021.  Mutual Aid Organizations.

# SUBCHAPTER A
# AUTHORIZED EMERGENCY VEHICLES

## Sec. 546.001.  Permissible Conduct.

In operating an authorized emergency vehicle the operator may:

(1) park or stand, irrespective of another provision of this subtitle;

(2) proceed past a red or stop signal or stop sign, after slowing as necessary for safe operation;

(3) exceed a maximum speed limit, except as provided by an ordinance adopted under Section 545.365, as long as the operator does not endanger life or property; and

(4) disregard a regulation governing the direction of movement or turning in specified directions.

(Enacted by Acts 1995, 74th Leg., ch. 165 (S.B. 971), § 1, effective September 1, 1995.)

## Sec. 546.002.  When Conduct Permissible.

(a) In this section, "police escort" means facilitating the movement of a funeral, oversized or hazardous load, or other traffic disruption for public safety purposes by a peace officer described by Articles 2.12(1)—(4), (8), and (22), Code of Criminal Procedure.

(b) Section 546.001 applies only when the operator is:

(1) responding to an emergency call;

(2) pursuing an actual or suspected violator of the law;

(3) responding to but not returning from a fire alarm;

(4) directing or diverting traffic for public safety purposes; or

(5) conducting a police escort.

(Enacted by Acts 1995, 74th Leg., ch. 165 (S.B. 971), § 1, effective September 1, 1995; am. Acts 2003, 78th Leg., ch. 66 (S.B. 461), § 1, effective May 16, 2003; am. Acts 2005, 79th Leg., ch. 834 (S.B. 866), § 1, effective June 17, 2005.)

## Sec. 546.003.  Audible or Visual Signals Required.

Except as provided by Section 546.004, the operator of an authorized emergency vehicle engaging in conduct permitted by Section 546.001 shall use, at the discretion of the operator in accordance with policies of the department or the local government that employs the operator, audible or visual signals that meet the pertinent requirements of Sections 547.305 and 547.702.

(Enacted by Acts 1995, 74th Leg., ch. 165 (S.B. 971), § 1, effective September 1, 1995.)

## Sec. 546.004.  Exceptions to Signal Requirement.

(a) A volunteer fire fighter who operates a private vehicle as an authorized emergency vehicle may engage in conduct permitted by Section 546.001 only when the fire fighter is using visual signals meeting the pertinent requirements of Sections 547.305 and 547.702.

(b) An authorized emergency vehicle that is operated as a police vehicle is not required to be equipped with or display a red light visible from the front of the vehicle.

(c) A police officer may operate an authorized emergency vehicle for a law enforcement purpose without using the audible or visual signals required by Section 546.003 if the officer is:

(1) responding to an emergency call or pursuing a suspected violator of the law with probable cause to believe that:

(A) knowledge of the presence of the officer will cause the suspect to:

(i) destroy or lose evidence of a suspected felony;

(ii) end a suspected continuing felony before the officer has obtained sufficient evidence to establish grounds for arrest; or

**Transportation**

(iii) evade apprehension or identification of the suspect or the suspect's vehicle; or

(B) because of traffic conditions on a multilaned roadway, vehicles moving in response to the audible or visual signals may:

(i) increase the potential for a collision; or

(ii) unreasonably extend the duration of the pursuit; or

(2) complying with a written regulation relating to the use of audible or visible signals adopted by the local government that employs the officer or by the department.

(Enacted by Acts 1995, 74th Leg., ch. 165 (S.B. 971), § 1, effective September 1, 1995.)

## Sec. 546.005. Duty of Care.

This chapter does not relieve the operator of an authorized emergency vehicle from:

(1) the duty to operate the vehicle with appropriate regard for the safety of all persons; or

(2) the consequences of reckless disregard for the safety of others.

(Enacted by Acts 1995, 74th Leg., ch. 165 (S.B. 971), § 1, effective September 1, 1995.)

## Sec. 546.006. Designated Emergency Vehicle During Declared Disasters.

(a) From recommendations made under Section 418.013(c), Government Code, the department shall designate which vehicles may be operated by which designated organizations as emergency vehicles during declared disasters.

(b) A vehicle designated under Subsection (a) may be operated by a designated organization as if the vehicle were an authorized emergency vehicle under this subtitle if:

(1) the governor declares a state of disaster under Section 418.014, Government Code;

(2) the department requests assistance from the designated organization; and

(3) the vehicle is operated by the designated organization or a member of the designated organization in response to the state of disaster.

(c) The department shall adopt rules as necessary to implement this section.

(Enacted by Acts 2007, 80th Leg., ch. 258 (S.B. 11), § 5.02, effective September 1, 2007.)

## Sec. 546.007. Closure of Road or Highway by Firefighter.

(a) This section applies only to a firefighter who is employed by or a member of:

(1) a fire department operated by an emergency services district;

(2) a volunteer fire department; or

(3) a fire department of a general-law municipality.

(b) A firefighter, when performing the firefighter's official duties, may close one or more lanes of a road or highway to protect the safety of persons or property.

(c) The closure shall be limited to the affected lane or lanes and one additional lane unless the safety of emergency personnel operating on the road or highway requires more lanes to be closed.

(d) In making a closure under this section, the firefighter shall deploy one or more authorized emergency vehicles with audible and visual signals that meet the requirements of Sections 547.305 and 547.702.

(Enacted by Acts 2011, 82nd Leg., ch. 490 (H.B. 993), § 1, effective September 1, 2011.)

## Secs. 546.008 to 546.020. [Reserved for expansion].

## SUBCHAPTER B
## OPERATION OF CERTAIN FIRE-FIGHTING EQUIPMENT

## Sec. 546.021. Mutual Aid Organizations.

(a) Two or more businesses whose activities require the maintenance of fire-fighting equipment may form a mutual aid organization in which the member businesses agree to assist each other during an emergency by supplying fire-fighting equipment or services.

(b) The presiding officer or director of an organization formed under this section shall deliver a list to the county fire marshal, or to the commissioners court of a county if the county does not have a fire marshal, in each county in which a member business is located. The list must contain the name of the registered owner and license plate number of each motor vehicle that each member intends to use in supplying fire-fighting equipment or services.

(c) If the county fire marshal or commissioners court determines that the operation of the vehicles on the list is in the public interest and not a threat to public safety, the marshal or court shall approve the list.

(d) On approval of the list by the county fire marshal or commissioners court, a person operating a listed motor vehicle in response to a call

for emergenc
member has t
this subtitle
emergency ve

(e) A coun
person or prc
by the count
motor vehicl
tance.
(Enacted by
971), § 1, eff

VI

Subc

Section
547.001.  De
547.002.  Ap
547.003.  Eq
547.004.  Ge
547.005.  Of

Subchaptei

547.101.  R
547.102.  S
547.103.  A
547.104.  S
547.105.  N

Subchapt
Distribu

547.201.  C

547.202.  I

547.203.

547.204.

547.205.
547.206.
547.207.
547.208.

Subcha

547.301.

547.302.
547.303.
547.304.
547.305.

Subcha

547.321
547.321
547.322.

759 S.W.2d 198
**(Cite as: 759 S.W.2d 198)**

▷

Court of Appeals of Texas,
San Antonio.

Dolores MEJIA, Individually and as Personal Representative of the Estate of Carlos Mejia, Deceased,
Appellant,
v.
The CITY OF SAN ANTONIO, Appellee.

No. 04–88–00042–CV.
Oct. 26, 1988.

Mother of deceased son brought wrongful death and survival action against city, alleging that city emergency medical service technicians who treated son after he was injured in an automobile collision were negligent. The 57th District Court, Bexar County, David Peeples, J., entered summary judgment in favor of city, and plaintiff appealed. The Court of Appeals, Butts, J., held that: (1) evidence raised genuine issue of material fact whether actions of EMS technicians were in compliance with applicable laws and ordinances, precluding summary judgment, and (2) evidence also gave rise to genuine issue of material fact whether death of son "arose from" use or operation of an EMS vehicle within meaning of a Texas Tort Claims Act, precluding summary judgment.

Reversed and remanded.

West Headnotes

**[1] Municipal Corporations 268 ⬇️745.5**

268 Municipal Corporations
    268XII Torts
        268XII(B) Acts or Omissions of Officers or Agents
            268k745.5 k. Performance of Governmental or Corporate Functions in General. Most Cited Cases
                (Formerly 268k7451/2, 268k74.160)

Provision of emergency medical service by city is a governmental, and not a proprietary function; thus, municipality is not liable for damages due to the negligence of its employees in the performance of such function unless such negligence falls within the limited statutory waiver of the Texas Tort Claims Act. V.T.C.A., Civil Practice & Remedies Code § 101.021.

**[2] Judgment 228 ⬇️185.3(21)**

228 Judgment
    228V On Motion or Summary Proceeding
        228k182 Motion or Other Application
            228k185.3 Evidence and Affidavits in Particular Cases
                228k185.3(21) k. Torts. Most Cited Cases

Evidence in wrongful death and survival action against city arising out of provision of emergency medical services to decedent injured in an automobile collision raised genuine issue of material fact whether actions of EMS technicians were in compliance with applicable laws and ordinances, precluding summary judgment. V.T.C.A., Civil Practice & Remedies Code § 101.055.

**[3] Judgment 228 ⬇️185.3(21)**

228 Judgment
    228V On Motion or Summary Proceeding
        228k182 Motion or Other Application
            228k185.3 Evidence and Affidavits in Particular Cases

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

759 S.W.2d 198
(Cite as: 759 S.W.2d 198)

228k185.3(21) k. Torts. Most Cited Cases

Evidence in wrongful death and survival action against city based on provision of emergency medical services to decedent injured in an automobile collision raised genuine issue of material fact whether death "arose from" the use or operation of an EMS vehicle within meaning of the Texas Tort Claims Act, precluding summary judgment. V.T.C.A., Civil Practice & Remedies Code § 101.055.

*199 David McQuade Leibowitz, Edward Schweninger, Law Offices of David McQuade Leibowitz, San Antonio, for appellant.

Sharon E. Calloway, Groce, Locke & Hebdon, San Antonio, for appellee.

Before BUTTS, CANTU, and CHAPA, JJ.

OPINION

BUTTS, Justice.

The mother of Carlos Mejia, deceased, appeals from a take nothing summary judgment granted in a wrongful death and survival action against the City of San Antonio. The trial court found that "all the acts of Defendant complained of by Plaintiff in her petition, are actions for which there exists no exception under the Texas Tort Claims Act." Appellant attacks the granting of the summary judgment in three points of error. We sustain the second point: that the summary judgment evidence was insufficient to establish as a matter of law that the claim was barred by the doctrine of governmental immunity.

Mejia was injured in an automobile collision on November 24, 1983. City of San Antonio Emergency Medical Service (EMS) technicians arrived at the scene of the collision and transported Mejia to his home, but not to a hospital. On the same day, Mejia checked himself into a hospital and died shortly thereafter.

Appellant answered written interrogatories propounded by the City of San Antonio. Appellant thereafter amended her petition. The City responded to appellant's requests for production, which responses included an autopsy report, police traffic accident report, EMS report, and the Standard Operating Procedure Manual for San Antonio/Bexar County EMS. Also included were copies of a City Ordinance and a City Resolution concerning EMS, Rules established by the Texas State Board of Medical Examiners, and the Emergency Medical Services Act, TEX.REV.CIV.STAT.ANN. art. 4447o (Vernon 1983). The City then moved for summary judgment stating that there is no exception to governmental immunity under the Texas Torts Claims Act for the actions complained of by the plaintiff, citing TEX.CIV.PRAC. & REM.CODE ANN. § 101.055 and *Brantley v. City of Dallas*, 545 S.W.2d 284 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.).[FN1]

FN1. *Brantley* stands for two propositions relevant to this case: (1) that an emergency ambulance service is a governmental function, and (2) that refusal of an emergency service technician to transport an individual does not constitute a "use" or "operation" of a motor vehicle within the meaning of the Texas Tort Claims Act.

Within days of filing its summary judgment motion the City filed its Second Amended Original Answer in which it pleaded that no exception existed under the Texas Tort Claims Act to the City's governmental immunity. Appellant then filed her Second Amended Original Petition which alleged failure "to properly use the emergency medical equipment available" in the EMS vehicle, and failure "to properly use the EMS vehicle ...," and also filed a response to the City's motion for summary judgment seeking to distinguish *Brantley, supra,* from the instant case. Approximately five weeks later, the court entered its

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

759 S.W.2d 198
(Cite as: 759 S.W.2d 198)

order of summary judgment.

Appellant in her first two points of error claims she did not fail to allege a cause of action within the provisions of the Tort *200 Claims Act and that the City's summary judgment evidence was insufficient.

[1] One of the arguments in appellant's response to the City's summary judgment motion was that the City's EMS constitutes a proprietary rather than a governmental function, and, therefore, the City is not entitled to immunity for the actions of its EMS employees. It has been held, and we agree, that provision of emergency medical service by a city is a governmental, and not a proprietary function. *Brantley v. City of Dallas,* 545 S.W.2d at 285. A municipality is not liable for damages due to the negligence of its employees in the performance of governmental functions unless such negligence falls within the limited statutory waiver of the Texas Tort Claims Act, TEX.CIV.PRAC. & REM.CODE ANN. §§ 101.001–.109. *Id.* The waiver provision states:

A governmental unit in the state is liable for: (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.021.

[2] Section 101.055 of the Texas Tort Claims Act, upon which the City further based its motion for summary judgment, states:

This chapter does not apply to a claim arising:

(2) from the action of an employee while responding to an emergency call or reacting to an emergency situation *if the action is in compliance with the laws and ordinances applicable to emergency action,* ... (emphasis added.)[FN2]

> FN2. When the cause of action accrued in 1983, the statute was Tort Claims Act, ch. 292, § 14(8), 1969 Tex.Gen.Laws 1, 878, *repealed* and *revised* by Act of June 16, 1985 eff. Sept. 1, 1985 ch. 959, § 1, 1985 Tex.Gen.Laws vol. 3, p. 3304, *amended* by Act of June 16, 1987 eff. Sept. 2, 1987 ch. 2, § 3.05, 1st C.S., 1987 Tex.Gen.Laws vol. 4, p. 49. The language material to this case has for all practical purposes, remained unchanged.

At trial, if the evidence raised the issue, it would be for the jury to determine whether the elements of § 101.055, such as the existence of an emergency, and compliance with ordinances or statutes, were satisfied. *See City of San Antonio v. Higle,* 685 S.W.2d 682, 689 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). Since appellant's petition challenged the actions of City EMS technicians in an emergency situation, and the summary judgment evidence includes various requirements of statutes and regulations concerning supervision and training of EMS technicians, as well as other matters concerning delivery of EMS care, there emerges a palpable fact issue: whether the EMS technicians' actions were in compliance with applica-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

759 S.W.2d 198
(Cite as: 759 S.W.2d 198)

ble laws and ordinances.

A defendant who moves for summary judgment has the burden to show as a matter of law that no material issue of fact exists as to the plaintiff's cause of action and movant is entitled to judgment as a matter of law. *Griffin v. Rowden,* 654 S.W.2d 435, 436 (Tex.1983). The question on appeal is not whether the summary judgment proof raises a fact issue, but whether the summary judgment proof establishes as a matter of law that there is no genuine fact issue. *Gibbs v. General Motors Corporation,* 450 S.W.2d 827, 828 (Tex.1970). Thus, in fulfilling its burden to show a lack of a material or genuine fact issue, the City must show that the actions of the EMS technicians were in compliance with any applicable laws or ordinances so as to leave no genuine question of fact *201 about such compliance. We hold the City has not made that showing in the required specific sense in order to establish as a matter of law that no genuine issue of material fact exists.

[3] In addition, the City failed to show that there was no "use" or "operation" of the EMS vehicle within the meaning of the Texas Tort Claims Act so as to leave no genuine issue of fact as to that matter. On the contrary, the summary judgment evidence indicates that Mejia was transported to his home in the EMS vehicle. This gives rise to the fact issue whether Mejia's death "arose from" the use or operation of the EMS vehicle within the meaning of the Act. We hold the City did not sustain its burden to demonstrate conclusively the lack of a genuine fact issue on that question.

It is not necessary that this Court address the third point of error (whether special exceptions addressed to failure to state a cause of action should have been heard before summary judgment was granted) in view of the disposition of the case.

The judgment is reversed and the cause remanded for trial.

Tex.App.–San Antonio,1988.
Mejia v. City of San Antonio
759 S.W.2d 198

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in S.W.3d, 2002 WL 1773008 (Tex.App.-Dallas)
**(Cite as: 2002 WL 1773008 (Tex.App.-Dallas))**

**c**

Only the Westlaw citation is currently available.

NOTICE: NOT DESIGNATED FOR PUBLICA-
TION. UNDER TX R RAP RULE 47.7, UN-
PUBLISHED OPINIONS HAVE NO PRECEDEN-
TIAL VALUE BUT MAY BE CITED WITH THE
NOTATION "(not designated for publication)."

Court of Appeals of Texas,
Dallas.
CITY OF DALLAS, Appellant,
v.
Kelly Anne PORTER, Appellee.

No. 05-02-00364-CV.
Aug. 2, 2002.

Motorist sued city for negligence in connection
with collision with police officer who was responding
to emergency call. The County Court at Law No. 3,
Dallas County, denied city's plea to the jurisdiction
that was premised on sovereign immunity. City filed
interlocutory appeal. The Court of Appeals, Farris, J.,
held that: (1) absent an allegation by city that motorist
fraudulently alleged violations of transportation code
by police officer, motorist was not required to prove
those violations to defeat plea to jurisdiction; (2)
exemption to waiver of sovereign immunity, for gov-
ernmental decisions as to how to provide police or fire
protection, was not applicable; (3) motorist was not
required, for purposes of defeating plea to jurisdiction,
to prove recklessness of officer's conduct as alleged in
complaint; (4) "discretionary function" exception to
waiver of sovereign immunity did not apply; and (5)
refusal to consider evidence offered by city in support
of plea to jurisdiction was not abuse of discretion.

Affirmed.

West Headnotes

**[1] Pleading 302 €➞104(1)**

302 Pleading
    302III Responses or Responsive Pleadings in
General
        302III(B) Dilatory Pleas and Matter in
Abatement
           302k104 Plea to the Jurisdiction
                302k104(1) k. In General. Most Cited
Cases

Absent an allegation by city that motorist fraud-
ulently alleged violations of transportation code by
police officer whose vehicle collided with motorist's
as officer was responding to 9-1-1 call, motorist was
not required to prove those violations in response to
city's plea to the jurisdiction in negligence action
involving an alleged waiver of sovereign immunity,
but only to plead the specific conduct by officer that
purportedly violated specified provisions of trans-
portation code. V.T.C.A., Civil Practice & Remedies
Code §§ 101.021(1), 101.062(b).

**[2] Automobiles 48A €➞187(2)**

48A Automobiles
    48AV Injuries from Operation, or Use of Highway
        48AV(A) Nature and Grounds of Liability
           48Ak183 Persons Liable
              48Ak187 Government; Immunity and
Waiver Thereof
                48Ak187(2) k. Municipal Corpora-
tions; Districts. Most Cited Cases

Exception to waiver of sovereign immunity, ap-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2002 WL 1773008 (Tex.App.-Dallas)
**(Cite as: 2002 WL 1773008 (Tex.App.-Dallas))**

plicable to governmental decisions as to how to provide police or fire protection, did not provide immunity to city against negligence claim by motorist injured in collision with vehicle driven by police officer who was responding to a 9-1-1 call; motorist did not allege negligent formation of policy relating to police protection, but negligence of officer in carrying out that policy. V.T.C.A., Civil Practice & Remedies Code §§ 101.021(1), 101.055(3).

**[3] Automobiles 48A ☜187(2)**

48A Automobiles
    48AV Injuries from Operation, or Use of Highway
        48AV(A) Nature and Grounds of Liability
            48Ak183 Persons Liable
                48Ak187 Government; Immunity and Waiver Thereof
                    48Ak187(2) k. Municipal Corporations; Districts. Most Cited Cases

Motorist who sued city for negligence following collision with vehicle driven by police officer who was responding to an emergency call was not required, for purposes of defeating city's plea to the jurisdiction based on a claim of sovereign immunity, to prove that officer acted with reckless disregard for safety of others or violated specified transportation laws, but merely to list the purportedly reckless conduct in her pleadings and to specify the laws applicable to an emergency response with which officer allegedly failed to comply. V.T.C.A., Civil Practice & Remedies Code §§ 101.021(1), 101.055(2).

**[4] Automobiles 48A ☜187(2)**

48A Automobiles
    48AV Injuries from Operation, or Use of Highway
        48AV(A) Nature and Grounds of Liability
            48Ak183 Persons Liable
                48Ak187 Government; Immunity and Waiver Thereof

                    48Ak187(2) k. Municipal Corporations; Districts. Most Cited Cases

"Discretionary function" exception to waiver of sovereign immunity did not apply so as to confer immunity on city against negligence action brought by motorist following collision with vehicle driven by police officer who was responding to an emergency call; motorist's allegations were based on officer's implementation of policy established for responding to emergency calls, not on the formulation of that policy. V.T.C.A., Civil Practice & Remedies Code §§ 101.021(1), 101.056.

**[5] Pleading 302 ☜104(1)**

302 Pleading
    302III Responses or Responsive Pleadings in General
        302III(B) Dilatory Pleas and Matter in Abatement
            302k104 Plea to the Jurisdiction
                302k104(1) k. In General. Most Cited Cases

Trial court's refusal, in ruling on city's plea to the jurisdiction in negligence action brought by motorist following collision with vehicle driven by police officer, to consider evidence offered by city to show sovereign immunity was not abuse of discretion.

**[6] Pleading 302 ☜171**

302 Pleading
    302IV Replication or Reply and Subsequent Pleadings
        302k171 k. Right to Plead in Reply and Leave of Court. Most Cited Cases

By overruling city's objection to sur-response filed by motorist in negligence action against city, trial court implicitly gave leave to motorist to file that

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2002 WL 1773008 (Tex.App.-Dallas)
**(Cite as: 2002 WL 1773008 (Tex.App.-Dallas))**

pleading.

On Appeal from the County Court at Law No. 3, Dallas County, Texas, Trial Court Cause No. cc-00-00874-c.

Before Justices WRIGHT, FARRIS,[FN1] and ROSENBERG.[FN2]

> FN1. The Honorable David F. Farris, Retired Justice, Second District Court of Appeals, Fort Worth, Texas, sitting by assignment.

> FN2. The Honorable Barbara Rosenberg, Former Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

## OPINION

Opinion by Justice FARRIS.

*1 In this interlocutory appeal, the City of Dallas (the City) challenges the trial court's denial of its plea to the jurisdiction, contending in four issues the trial court erred in (1) denying the plea to the jurisdiction because the City has sovereign immunity from Kelly Anne Porter's claims; (2) failing to consider evidence submitted by the City in support of the plea to the jurisdiction; (3) refusing to rule on the City's objections to the evidence submitted by Porter in opposition to the plea to the jurisdiction; and (4) overruling the City's objection to Porter's sur-response. We resolve the City's issues against it and affirm the trial court's denial of the plea to the jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 3, 1999, Raymond Dethloff, a police officer employed by the City, was responding to an emergency call when he was involved in an automobile accident with Porter. Porter sued the City for damages she suffered due to the accident and subsequently amended her petition to add Dethloff as a party. The City filed a plea to the jurisdiction, claiming it had sovereign immunity from Porter's claims, and a motion for summary judgment, arguing Dethloff had official immunity and, accordingly, the City was also immune from suit.

Porter nonsuited her claims against Dethloff and responded to the plea to the jurisdiction, contending sovereign immunity was waived under section 101.021(1) of the Texas Civil Practice and Remedies Code, there was no exception to this waiver, Dethloff's actions and omissions were taken with conscious indifference or reckless disregard for the safety of others, and Dethloff's actions and omissions were not in compliance with laws applicable to emergency action, including sections 546.001(3) and 546.005 of the Texas Transportation Code. Both the City and Porter attached evidence to their relevant pleadings. Both parties objected to the other party's evidence.

On February 14, 2002, the trial court denied the City's plea to the jurisdiction, found the City's motion for summary judgment was moot due to the non-suit of Dethloff, refused to consider the evidence submitted by either the City or Porter pertaining to the plea to the jurisdiction, and overruled the City's objections to Porter's sur-response. The City timely filed this interlocutory appeal pursuant to section 51.014(a)(8) of the Texas Civil Practice and Remedies Code. See TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2002).

## STANDARD OF REVIEW AND APPLICABLE LAW

A plea to the jurisdiction contests the trial court's authority to determine the subject matter of the cause of action. *Bland Ind. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000). Because the question of subject matter jurisdiction is a legal question, we review a trial court's ruling on a plea to the jurisdiction *de novo. Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2002 WL 1773008 (Tex.App.-Dallas)
**(Cite as: 2002 WL 1773008 (Tex.App.-Dallas))**

The purpose of a plea to the jurisdiction is to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist.,* 34 S.W.3d at 554. In determining a plea to the jurisdiction, the trial court should consider the pleadings and, if necessary, any evidence relevant to the jurisdictional issue. *County of Cameron v. Brown,* 45 Tex. Sup.Ct. J. 680, 2001 WL 1869986, at *3, (May 23, 2002); *Bland Indep. Sch. Dist.,* 34 S.W.3d at 554. We construe the pleadings liberally in favor of conferring jurisdiction, *Tex. Dep't of Transp. v. Ramirez,* 74 S.W.3d 864, 867 (Tex.2002) (per curiam), and take all factual allegations pleaded as true, unless the defendant pleads and proves the allegations were fraudulently made in order to confer jurisdiction. *Cont'l Coffee Prods. Co. v. Casarez,* 937 S.W.2d 444, 449 (Tex.1996).

*2 The plea should be decided without delving into the merits of the case. *Brown,* 2001 WL 1869986, at *3; *Bland Indep. Sch. Dist.,* 34 S.W.3d at 554. The purpose of the plea is not to force a plaintiff to preview her case on the merits, but rather, to establish why the merits of the claims should never be reached. *Bland Indep. Sch. Dist.,* 34 S.W.3d at 554. Although the issues raised by a plea to the jurisdiction often require hearing evidence, a plea to the jurisdiction does not authorize an inquiry so far into the substance of the claims presented that the plaintiff is required to put on her case simply to establish jurisdiction. *Id.* Whether a determination of subject matter jurisdiction can be made in a preliminary hearing or should await a fuller development of the merits of the case must be left to the trial court's discretion. *Id.*

**SOVEREIGN IMMUNITY**

In its first point of error, the City argues the trial court erred in denying its plea to the jurisdiction because the City has sovereign immunity from Porter's claims. The issue before us is whether Porter's claims fall within the Texas Tort Claims Act (the Act) [FN3] so that the City's sovereign immunity is waived. *City of*

*Amarillo v. Martin,* 971 S.W.2d 426, 427 (Tex.1998); *City of El Paso v. Hernandez,* 16 S.W.3d 409, 414 (Tex.App.-El Paso 2000, pet. denied) (municipality is immune from liability for its governmental functions unless that immunity is specifically waived). Porter alleges the City waived sovereign immunity pursuant to section 101.021(1) of the Act.

> FN3. TEX. CIV. PRAC. & REM.CODE ANN. § 101.001-101.109 (Vernon 1997 & Supp.2002)

Section 101.021(1) subjects the City to liability for personal injury and property damage caused by the conduct of a City employee while operating a motor vehicle in the course and scope of his duties when the employee would be personally liable to the claimant under Texas law. TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(1) (Vernon 1997). Porter alleges her injuries were caused by the acts or omissions of Dethloff, an employee of the City, while driving an automobile in the course and scope of his duties, bringing her claims within section 101.021(1). The City argues it still retains sovereign immunity due to exemptions from the waiver of sovereign immunity found in sections 101.062, 101.055, 101.056, and 101.024 of the Act.

*A. Section 101.062*

The City first contends it retains immunity pursuant to section 101.062 of the Act which gives the City immunity from suit for Dethloff's actions in connection with responding to a 9-1-1 emergency call, unless the action "violate[d] a statute or ordinance applicable to the action." TEX. CIV. PRAC. & REM.CODE ANN. § 101.062(b) (Vernon 1997). Porter pleaded Dethloff acted recklessly [FN4] and violated sections 546.005 [FN5] and 546.001(3) [FN6] of the transportation code. Thus, she argues, section 101.062's exemption from the waiver of sovereign immunity does not apply. The City essentially contends the trial court was required in ruling on the City's plea to the jurisdiction to determine whether Dethloff

© 2013 Thomson Reuters. No Claim to Orig. US Gov Works.

Not Reported in S.W.3d, 2002 WL 1773008 (Tex.App.-Dallas)
**(Cite as: 2002 WL 1773008 (Tex.App.-Dallas))**

acted recklessly or violated either of the statutes pleaded by Porter.

> FN4. Porter alleged Dethloff acted in reckless disregard or with conscious indifference to the safety of others by (1) failing to control his vehicle; (2) failing to control the speed of the vehicle; (3) driving his vehicle at too great a rate of speed; (4) failing to keep a proper lookout for other vehicles and drivers; (5) failing to timely apply the brakes to his vehicle in order to avoid the collision; (6) failing to apply the brakes to his vehicle in order to avoid the collision (7) failing to turn his vehicle in an effort to avoid the collision; and (8) failing to drive with due regard for the safety of all persons as required by sections 546.005 and 546.001(30).

> FN5. Section 546.005 of the transportation code provides the operator of an emergency vehicle is not relieved from his duty to operate the vehicle with appropriate regard for the safety of all persons or from the consequences of his reckless disregard for the safety of others. TEX. TRANSP. CODE ANN. § 546.005 (Vernon 1999); *see Pruett v. City of Amarillo,* 947 S.W.2d 718, 721 (Tex.App.-Amarillo 1997, writ denied).

> FN6. Section 546.001(3) of the transportation code permits the operator of an emergency vehicle to exceed the maximum speed limit so long as the operator does not endanger life or property. TEX. TRANSP. CODE ANN. § 546.001(3) (Vernon 1997).

*3 Whether Porter was required to prove in response to the City's plea to the jurisdiction that Dethloff violated either of the statutes pleaded by Porter is similar to the issue of whether a plaintiff must prove the amount of damages alleged in the petition in order to establish jurisdiction in the trial court. As the Texas Supreme Court noted in *Bland,* absent a specific allegation by the defendant that the amount was pleaded merely as a sham for the purpose of wrongfully obtaining jurisdiction, the plaintiff's allegation of damages in excess of the jurisdictional limit suffices to show the amount in controversy and establish jurisdiction in the trial court. *Bland Indep. Sch. Dist.,* 34 S.W.3d at 554. A plea to the jurisdiction cannot be used to require the plaintiff to try her entire case in order to show entitlement to damages in excess of the trial court's jurisdictional limit. *Id.*

[1] Similarly, absent an allegation by the City that Porter fraudulently alleged violations of sections 546.005 and 546.001(3) by Dethloff in order to obtain jurisdiction in the trial court, Porter cannot be required to prove her entire case to demonstrate the statutory violations by Dethloff in order to establish jurisdiction. *Id.* at 554. Porter's pleading of the specific conduct by Dethloff that purportedly constitutes recklessness and the specific statutes she alleges the conduct violated is sufficient to establish jurisdiction. Although the City could ultimately be entitled to immunity under section 101.062, this determination must wait until the case has been more fully developed on the merits. *See Bland Indep. Sch. Dist.,* 34 S.W.3d at 554; *City of Amarillo v. Pruett,* 44 S.W.3d 702, 704 (Tex.App.-Amarillo 2001, pet. denied) (trial court properly denied city's motion for directed verdict because jury could have determined officer responding to emergency call acted in reckless disregard).

*B. Section 101.055(3)*

[2] The City next argues it is immune from Porter's claims because the accident arose from the method of providing police protection. TEX. CIV. PRAC. & REM.CODE ANN. § 101.055(3) (Vernon 1997). This exemption from the waiver of immunity applies only to "governmental decisions as to how to provide police or fire protection." *State v. Terrell,* 588 S.W.2d 784, 787 (Tex.1979); *see City of San Augustine v. Parrish,* 10 S.W.3d 734, 740 (Tex.App.-Tyler

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2002 WL 1773008 (Tex.App.-Dallas)
**(Cite as: 2002 WL 1773008 (Tex.App.-Dallas))**

1999, pet. dism'd w.o.j.). Its purpose is to preclude "judicial review of policy decisions made by a governmental unit in charge of providing police or fire protection." *Terrell,* 588 S.W.2d at 787. Accordingly, "only those acts or omissions which constitute the execution of or the actual making of those policy decisions" are excluded from the Act. *Id.* at 787. Governmental liability may still exist for an officer's negligence in carrying out the policy. *Id.; Orozco v. Dallas Morning News, Inc.,* 975 S.W.2d 392, 397 (Tex.App.-Dallas 1998, no pet.). The City, therefore, could be liable for injuries resulting from an officer's negligence that leads to an automobile accident while the officer is carrying out a law enforcement policy. *Terrell,* 588 S.W.2d at 787.

*4 Porter did not plead the City was negligent in the formulation of policy relating to police protection. Rather, her allegations pertain only to Dethloff's actions in carrying out that policy. Thus, section 101.055(3) is inapplicable. *Id.* at 787; *Bridges v. Robinson,* 20 S.W.3d 104, 114 (Tex.App.-Houston [14th Dist.] 2000, no pet.), *disapproved on other grounds, Telthorster v. Tennell,* 45 Tex. Sup.Ct. J. 948, 2001 WL 1898483 (Tex. June 27, 2002).

### C. *Section 101.055(2)*

Section 101.055(2) retains the City's sovereign immunity for the actions of an employee responding to an emergency call, if the employee's actions are in compliance with the applicable laws and ordinance or if the actions are not taken with conscious indifference or reckless disregard of the safety of others. Therefore, while the operator of the emergency vehicle has a duty to drive with appropriate regard for others by avoiding negligent behavior, liability is only imposed for reckless conduct. *Martin,* 971 S.W.2d at 431.

[3] As with the City's claim of immunity pursuant to section 101.062 of the Act, the City contends Dethloff was not reckless and did not violate either section 546.005 or 546.001(3) of the transportation code. However, Porter pleaded Dethloff was reckless

in his actions, listed the purportedly reckless conduct, and specified the laws applicable to an emergency response with which she alleges Dethloff failed to comply. Requiring Porter to carry her ultimate burden to prove Dethloff's conduct met either prong of the pleaded allegations in response to the City's plea to the jurisdiction would impermissibly require Porter to prove her case on the merits simply to establish jurisdiction. *Bland Indep. Sch. Dist.,* 34 S.W.3d at 554. Although the City's entitlement to immunity pursuant to section 101.055 might be established after the case is further developed, Porter is not required to prove her case in order to defeat the plea to the jurisdiction. *Id.*[FN7]

> FN7. *See Pruett,* 44 S.W.3d at 709 (if jury had found officer's conduct to be reckless within purview of section 101.055, city would not have been entitled to sovereign immunity); *City of Arlington v. Whitaker,* 977 S.W.2d 742, 746 (Tex.App.-Fort Worth 1998, pet. denied) (once jury determined fire chief responding to an emergency, city entitled to sovereign immunity under 101.055.)

### D. *Section 101.056*

[4] The City next contends it is entitled to immunity pursuant to section 101.056(1) and (2) of the Act because immunity is not waived for claims which arise from (1) the failure of the City to perform an act the City is not required by law to perform or (2) the City's decision not to perform an act or its failure to make a decision on the performance or nonperformance of an act if the performance or nonperformance of the act is within the City's discretion. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.056(1), (2) (Vernon 2000). The City argues this exemption is broad enough to encompass the method of providing police protection.

As with the exemption found in section 101.055(3), the "discretionary function exception to the waiver of governmental immunity is designed to

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

avoid judicial review of governmental policy decisions." *Bridges, 20 S.W.3d at 114; see Terrell, 588 S.W.2d at 787.* Although the City is immune from liability if the injury results from the formulation of a policy regarding the method of providing police protection, it is not immune if the injury is caused by the negligent implementation of the policy. *Bridges, 20 S.W.3d at 114.* Because Porter's allegations are based on Dethloff's implementation of the policy established for responding to emergency calls, not the formulation of the policy, section 101.056 is inapplicable. *Id.*

*E. Section 101.024*

*5 In their final argument in support of its first point of error, the City argues the Act does not waive immunity for claims based on gross negligence or for exemplary damages. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.024 (Vernon 1997). Section 101.024 simply states the Act "does not authorize exemplary damages." *Id.* Porter has not requested exemplary damages, and section 101.024 does not apply.

Section 101.021 of the Act waives the City's sovereign immunity for injuries suffered by Porter due to Dethloff's conduct while operating a motor-driven vehicle during the course and scope of his employment that caused the accident. While, after the merits of the case are developed more fully, the City could be entitled to immunity from Porter's claims due to the exemptions in sections 101.062 and 101.055(3) of the Act, Porter is not required to prove her entire case in order to establish jurisdiction. Finally, the exemptions in sections 101.055(2), 101.056, and 101.024 are not applicable to Porter's claims and do not entitle the City to sovereign immunity. We overrule the City's first point of error.

**CONSIDERATION OF EVIDENCE**

In its second point of error, the City contends the trial court erred in refusing to consider the evidence submitted by the City in support of the plea to the jurisdiction. "The trial court abuses its discretion if it acts in an arbitrary or unreasonable manner, without reference to any guiding rules or principles." *In re Nitla S.A. de C.V., 45 Tex. Sup.Ct. J. 751, 2002 WL 534089, at *2 (April 4, 2002).* The trial court should consider evidence, if necessary, to determine whether it has subject matter jurisdiction. *Bland Indep. Sch. Dist., 34 S.W.3d at 554.* However, the trial court should not delve into the merits of the case in considering a plea to the jurisdiction and should limit its review of any evidence solely to the issue of jurisdiction. *Id. at 554, 555.*

[5] The City relied on the evidence in support of its plea to the jurisdiction to argue Dethloff's conduct was not reckless and did not violate any applicable statute. This argument required the trial court to delve into the merits of the case, and it was within the trial court's discretion to determine these issues should be resolved after a fuller development of the merits of the case. *Id . at 554.* Accordingly, the trial court did not abuse its discretion in refusing to consider the City's evidence. We overrule point of error two.

**OBJECTIONS TO EVIDENCE**

In its third point of error, the City contends the trial court erred in refusing to rule on the City's objections to Porter's evidence offered in opposition to the plea to the jurisdiction. Because the trial court did not consider the offered evidence in ruling on the plea to the jurisdiction, it did not err in refusing to rule on objections to the evidence. We overrule the City's third point of error.

**PORTER'S SUR-RESPONSE**

[6] In its fourth point of error, the City contends the trial court erred in overruling the City's objection to Porter's sur-response because Porter was not entitled to file a sur-response without seeking leave of the trial court. The only authority cited by the City for this proposition is an unpublished case that notes the appellate rules of procedure do not allow the filing of a sur-reply without leave of the appellate court. We find no authority under the rules of civil procedure that a

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2002 WL 1773008 (Tex.App.-Dallas)
**(Cite as: 2002 WL 1773008 (Tex.App.-Dallas))**

sur-response may not be filed with the trial court. In any event, by overruling the City's objection to the sur-response, the trial implicitly gave leave to Porter to file the pleading. TEX.R.APP. P. 33.1(a)(2)(A). We overrule point of error four.

*6 We affirm the trial court's judgment.

Tex.App.-Dallas,2002.
City of Dallas v. Porter
Not Reported in S.W.3d, 2002 WL 1773008 (Tex.App.-Dallas)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

34 S.W.3d 547, 150 Ed. Law Rep. 518, 44 Tex. Sup. Ct. J. 125
**(Cite as: 34 S.W.3d 547)**

▷

Supreme Court of Texas.
The BLAND INDEPENDENT SCHOOL DISTRICT,
et al., Petitioners,
v.
Douglas BLUE and Carolyn Blue, Respondents.

No. 99–0231.
Argued Jan. 5, 2000.
Decided Dec. 7, 2000.

Taxpayers filed action seeking permanent injunction against payments by school district under lease-purchase agreement for new high school. The 196th Judicial District Court, Hunt County, Joe M. Leonard, J., denied plea to the jurisdiction. District, board of trustees of district, and superintendent appealed. The Court of Appeals, Moseley, J., 989 S.W.2d 441, affirmed. Review was granted, the Supreme Court, Hecht, J., held that: (1) the Supreme Court had jurisdiction over the interlocutory appeal; (2) the trial court was not required to look solely to the pleadings, but could consider evidence on standing, disapproving *Firemen's Insurance Co. v. Board of Regents*, 909 S.W.2d 540; and (3) taxpayers lacked standing to challenge legality of the agreement after the building was completed and occupied and the district owed a duty to repay the loan.

Reversed and rendered.

Phillips, C.J., dissented and filed opinion joined by Enoch and Hankinson, JJ.

West Headnotes

**[1] Courts 106 ⟜247(1)**

106 Courts
106VI Courts of Appellate Jurisdiction
106VI(B) Courts of Particular States
106k247 Texas
106k247(1) k. Appellate jurisdiction of Supreme Court in general. Most Cited Cases

Supreme Court's jurisdiction did not extend to a school district's interlocutory appeal on taxpayers' standing unless there was a dissent in the court of appeals or the court of appeals' holding conflicted with that of another court of appeals or the Supreme Court.

**[2] Courts 106 ⟜247(7)**

106 Courts
106VI Courts of Appellate Jurisdiction
106VI(B) Courts of Particular States
106k247 Texas
106k247(7) k. Review by or certificate to Supreme Court by Court of Civil Appeals of questions where its decision conflicts with or overrules that of another Court of Civil Appeals or that of the Supreme Court. Most Cited Cases

Supreme Court lacks jurisdiction on the ground of conflict among court cases unless it appears that the rulings in the two cases are so far upon the same facts that the decision of one case is necessarily conclusive of the decision in the other.

**[3] Courts 106 ⟜247(7)**

106 Courts
106VI Courts of Appellate Jurisdiction
106VI(B) Courts of Particular States
106k247 Texas
106k247(7) k. Review by or certificate to Supreme Court by Court of Civil Appeals of ques-

34 S.W.3d 547, 150 Ed. Law Rep. 518, 44 Tex. Sup. Ct. J. 125
**(Cite as: 34 S.W.3d 547)**

tions where its decision conflicts with or overrules that of another Court of Civil Appeals or that of the Supreme Court. Most Cited Cases

To confer jurisdiction upon the Supreme Court over an interlocutory appeal, a conflict among court cases must be on the very questions of law actually involved and determined in respect of an issue in both cases; the test is whether one would operate to overrule the other in case they were both rendered by the same court, and it is also essential that such conflict appear on the face of the opinions themselves.

**[4] Courts 106 €══247(7)**

106 Courts
    106VI Courts of Appellate Jurisdiction
        106VI(B) Courts of Particular States
            106k247 Texas
                106k247(7) k. Review by or certificate to Supreme Court by Court of Civil Appeals of questions where its decision conflicts with or overrules that of another Court of Civil Appeals or that of the Supreme Court. Most Cited Cases

Supreme Court had jurisdiction over school district's interlocutory appeal on taxpayers' standing, since the Court of Appeals' decision that the trial court could only consider the allegations in the pleadings conflicted with the Supreme Court's decision in *F/R Cattle Co. v. State* requiring an examination of the sufficiency of the evidence to sustain a plea to jurisdiction; even though the factual circumstances in the two cases were very different, factual similarity was not a prerequisite to jurisdiction.

**[5] Courts 106 €══247(7)**

106 Courts
    106VI Courts of Appellate Jurisdiction
        106VI(B) Courts of Particular States
            106k247 Texas

                106k247(7) k. Review by or certificate to Supreme Court by Court of Civil Appeals of questions where its decision conflicts with or overrules that of another Court of Civil Appeals or that of the Supreme Court. Most Cited Cases

Factual similarity between two appellate court cases is not a prerequisite for the Supreme Court's jurisdiction over an interlocutory appeal, if the factual differences do not serve to legitimately distinguish the holdings of the two cases.

**[6] Courts 106 €══247(7)**

106 Courts
    106VI Courts of Appellate Jurisdiction
        106VI(B) Courts of Particular States
            106k247 Texas
                106k247(7) k. Review by or certificate to Supreme Court by Court of Civil Appeals of questions where its decision conflicts with or overrules that of another Court of Civil Appeals or that of the Supreme Court. Most Cited Cases

If a rule of decision in one case requires a different result when applied in another case, the conflict between the two cases is sufficient to invoke the Supreme Court's jurisdiction over an interlocutory appeal.

**[7] Action 13 €══13**

13 Action
    13I Grounds and Conditions Precedent
        13k13 k. Persons entitled to sue. Most Cited Cases

Standing is a prerequisite to subject-matter jurisdiction.

**[8] Courts 106 €══4**

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

34 S.W.3d 547, 150 Ed. Law Rep. 518, 44 Tex. Sup. Ct. J. 125
**(Cite as: 34 S.W.3d 547)**

106 Courts
 106I Nature, Extent, and Exercise of Jurisdiction in General
   106I(A) In General
    106k3 Jurisdiction of Cause of Action
     106k4 k. In general. Most Cited Cases

Subject-matter jurisdiction is essential to a court's power to decide a case.

**[9] Judgment 228 &#128273;183**

228 Judgment
 228V On Motion or Summary Proceeding
   228k182 Motion or Other Application
   228k183 k. In general. Most Cited Cases

**Pleading 302 &#128273;104(1)**

302 Pleading
 302III Responses or Responsive Pleadings in General
   302III(B) Dilatory Pleas and Matter in Abatement
    302k104 Plea to the Jurisdiction
     302k104(1) k. In general. Most Cited Cases

The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction, as well as by other procedural vehicles, such as a motion for summary judgment.

**[10] Pleading 302 &#128273;104(1)**

302 Pleading
 302III Responses or Responsive Pleadings in General
   302III(B) Dilatory Pleas and Matter in Abatement

    302k104 Plea to the Jurisdiction
     302k104(1) k. In general. Most Cited Cases

A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit.

**[11] Courts 106 &#128273;39**

106 Courts
 106I Nature, Extent, and Exercise of Jurisdiction in General
   106I(A) In General
    106k39 k. Determination of questions of jurisdiction in general. Most Cited Cases

Because a court must not act without determining that it has subject-matter jurisdiction to do so, it should hear evidence as necessary to determine the issue before proceeding with the case.

**[12] Courts 106 &#128273;39**

106 Courts
 106I Nature, Extent, and Exercise of Jurisdiction in General
   106I(A) In General
    106k39 k. Determination of questions of jurisdiction in general. Most Cited Cases

Whether a determination of subject-matter jurisdiction can be made in a preliminary hearing or should await a fuller development of the merits of the case must be left largely to the trial court's sound exercise of discretion.

**[13] Courts 106 &#128273;122**

106 Courts
 106III Courts of General Original Jurisdiction

34 S.W.3d 547, 150 Ed. Law Rep. 518, 44 Tex. Sup. Ct. J. 125
**(Cite as: 34 S.W.3d 547)**

106III(A) Grounds of Jurisdiction in General
106k119 Amount or Value in Controversy
106k122 k. Allegations and prayers in pleadings. Most Cited Cases

When a defendant asserts that the amount in controversy is below the court's jurisdictional limit, the plaintiff's pleadings are determinative unless the defendant specifically alleges that the amount was pleaded merely as a sham for the purpose of wrongfully obtaining jurisdiction or the defendant can readily establish that the amount in controversy is insufficient, as for example when the issue in dispute is a license or right rather than damages.

**[14] Pleading 302 ☞104(1)**

302 Pleading
302III Responses or Responsive Pleadings in General
302III(B) Dilatory Pleas and Matter in Abatement
302k104 Plea to the Jurisdiction
302k104(1) k. In general. Most Cited Cases

A plea to the jurisdiction cannot be used to require the plaintiff to prove the damages to which he is entitled in order to show that they exceed the court's jurisdictional limits.

**[15] Courts 106 ☞122**

106 Courts
106III Courts of General Original Jurisdiction
106III(A) Grounds of Jurisdiction in General
106k119 Amount or Value in Controversy
106k122 k. Allegations and prayers in pleadings. Most Cited Cases

The plaintiff's allegation of damages in excess of jurisdictional limits suffices to show the amount in

controversy, even if damages cannot ultimately be proved at all.

**[16] Pleading 302 ☞104(1)**

302 Pleading
302III Responses or Responsive Pleadings in General
302III(B) Dilatory Pleas and Matter in Abatement
302k104 Plea to the Jurisdiction
302k104(1) k. In general. Most Cited Cases

A court deciding a plea to the jurisdiction is not required to look solely to the pleadings, but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised; disapproving *Firemen's Insurance Co. v. Board of Regents*, 909 S.W.2d 540.

**[17] Pleading 302 ☞104(1)**

302 Pleading
302III Responses or Responsive Pleadings in General
302III(B) Dilatory Pleas and Matter in Abatement
302k104 Plea to the Jurisdiction
302k104(1) k. In general. Most Cited Cases

If a court must consider evidence when deciding a plea to jurisdiction, it should confine itself to the evidence relevant to the jurisdictional issue.

**[18] Pleading 302 ☞104(1)**

302 Pleading
302III Responses or Responsive Pleadings in General

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

34 S.W.3d 547, 150 Ed. Law Rep. 518, 44 Tex. Sup. Ct. J. 125
(Cite as: 34 S.W.3d 547)

302III(B) Dilatory Pleas and Matter in Abatement

302k104 Plea to the Jurisdiction

302k104(1) k. In general. Most Cited Cases

Trial court properly considered school district's evidence in deciding its plea to jurisdiction based on the lack of taxpayer standing and was not required to decide jurisdiction based solely on the pleadings, even though the district did not allege that the taxpayers fabricated allegations to create standing to challenge legality of lease-purchase agreement for a school building.

[19] Education 141E ☜401

141E Education
   141EII Public Primary and Secondary Schools
      141EII(B) Taxpayers' Suits and Other Remedies
         141Ek399 Actions
            141Ek401 k. Time to sue and limitations. Most Cited Cases
   (Formerly 345k111 Schools)

Taxpayers lacked standing to challenge legality of school district's lease-purchase agreement after the building was completed and occupied and the district owed a duty to repay the loan; the exception permitting taxpayer standing to sue in equity to enjoin the illegal expenditure of public funds, even without showing a distinct injury, did not apply, since the potential for disruption of government operations was too great to allow taxpayers to sue to prohibit the government from paying for goods and services it has already received and placed in permanent use.

[20] Municipal Corporations 268 ☜987

268 Municipal Corporations
   268XIV Taxpayers' Suits and Other Remedies

268k987 k. Nature and scope in general. Most Cited Cases

In general, taxpayers do not have a right to bring suit to contest government decision-making; governments cannot operate if every citizen who concludes that a public official has abused his discretion is granted the right to come into court and bring such official's public acts under judicial review.

[21] Municipal Corporations 268 ☜987

268 Municipal Corporations
   268XIV Taxpayers' Suits and Other Remedies
      268k987 k. Nature and scope in general. Most Cited Cases

Unless standing is conferred by statute, taxpayers must show as a rule that they have suffered a particularized injury distinct from that suffered by the general public in order to have standing to challenge a government action or assert a public right.

[22] Municipal Corporations 268 ☜994

268 Municipal Corporations
   268XIV Taxpayers' Suits and Other Remedies
      268k991 Restraining Action by Municipality or Officers
         268k994 k. Incurring indebtedness or expenditure. Most Cited Cases

A taxpayer has standing to sue in equity to enjoin the illegal expenditure of public funds, even without showing a distinct injury.

*549 Robert L. Scott, Greenville, James B. Harris, G. Luke Ashley, John A. Mackintosh, Jr., Anna Marple Duboise, Thompson & Knight, Dallas, for petitioners.

Mark Heidenheimer, McKinney, for respondents.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

34 S.W.3d 547, 150 Ed. Law Rep. 518, 44 Tex. Sup. Ct. J. 125
**(Cite as: 34 S.W.3d 547)**

Justice HECHT delivered the opinion of the Court, in which Justice OWEN, Justice BAKER, Justice ABBOTT, Justice O'NEILL, and Justice GONZALES joined.

Two taxpayers sued their school district to prohibit it from paying future installments due on a lease-purchase financing agreement they claim is illegal. The district filed a plea to the jurisdiction, challenging the taxpayers' standing to sue. The trial court heard evidence on the plea and sustained it in part but overruled it in part. On the district's interlocutory appeal, the court of appeals held that a ruling on a plea to the jurisdiction must be based solely on allegations in the plaintiff's pleadings unless the defendant asserts that those allegations have been fabricated in an attempt to confer jurisdiction where none exists.[FN1] Based on the pleadings, the court held that the taxpayers have standing to sue.[FN2] We disagree with both holdings, reverse the court of appeals' judgment, and dismiss the plaintiffs' action against the district for want of jusrisdiction.

FN1. 989 S.W.2d 441, 447 (Tex.App.—Dallas 1999).

FN2. *Id.*

**I**

In August 1996, the Bland Independent School District contracted for the construction of a new high school using what it describes as a pre-engineered metal building. BISD financed $1,050,000 of the project's total cost of $1,390,000 through a lease-purchase agreement with Citicorp, Inc. that covered the building, finish-out work, and furnishings. The agreement obligated BISD to make semiannual payments of $53,917 to Citicorp from 1997 through 2011. The new school building opened for classes in August 1997, and by the following November BISD had paid the contractor in full using the Citicorp proceeds, state funds, and local tax revenues. To date,

BISD has paid Citicorp the installments that have become due under their agreement.

In March 1998, Douglas and Carolyn Blue brought suit as BISD taxpayers to enjoin BISD from making future payments to Citicorp. The Blues allege that the lease-purchase agreement is illegal because BISD entered into it without complying with two provisions of the Public Property Finance Act.[FN3] Specifically, the Blues allege that BISD failed to give 60 *550 days' public notice of its intention to enter into an agreement with Citicorp [FN4] and did not submit the agreement to the attorney general to review its validity.[FN5] BISD does not dispute that it did not comply with the Act but contends that it was not required to do so because the lease-purchase agreement is not one "for the use or purchase or other acquisition of real property or an improvement to real property" to which the Act applies.[FN6] Rather, BISD argues, its agreement with Citicorp covers only personal property (furnishings and the like) and a transportable building. The Act excludes transportable buildings from its definition of "improvement".[FN7]

FN3. TEX.LOC. GOV'T CODE §§ 271.001–.009.

FN4. *See id.* § 271.004(a) ("The board of trustees of a school district may execute, perform, and make payments under a contract under this Act for the use or purchase or other acquisition of real property or an improvement to real property. If the board proposes to enter into such a contract, the board shall publish notice of intent to enter into the contract not less than 60 days before the date set to approve execution of the contract in a newspaper with general circulation in the district. The notice must summarize the major provisions of the proposed contract. The notice shall estimate the construction and other costs, but the board shall not publish the first advertisement for bids for con-

34 S.W.3d 547, 150 Ed. Law Rep. 518, 44 Tex. Sup. Ct. J. 125
**(Cite as: 34 S.W.3d 547)**

struction of improvements until 60 days has expired from the publication of the notice of intent to enter into the contract.").

FN5. *See id.* § 271.004(g) ("A lease-purchase contract entered into by the district under this section and the records relating to its execution must be submitted to the attorney general for examination as to their validity.").

FN6. *Id.* § 271.004(a).

FN7. *Id.* § 271.003(10) (" 'Improvement' means a permanent building, structure, fixture, or fence that is erected on or affixed to land but does not include a transportable building or structure whether or not it is affixed to land.").

BISD filed a plea to the jurisdiction, asserting that the Blues had no standing to sue and therefore the trial court lacked subject-matter jurisdiction over the action. BISD argued that the Blues had not suffered any injury separate and apart from the general public that would give them standing to sue. The Blues conceded that they could not show any particularized injury to themselves, but they contended that such injury was unnecessary in a suit to enjoin a governmental entity from making future payments under an illegal contract. BISD acknowledged that such suits are an exception to the particularized-injury rule, but it argued that the Blues' action does not fall within the exception because the transaction they challenge has been completed and all that remains is repayment of Citicorp's loan. BISD also argued that it used only state funds to repay Citicorp, and that the Blues had no standing as district taxpayers to challenge the expenditure of state funds. (The record does not reflect why the Blues did not attempt to assert standing as state taxpayers.)

At BISD's request, the district court conducted an evidentiary hearing on the plea to the jurisdiction, at which BISD's superintendent described the nature of the project and testified that BISD has used only state funds to repay Citicorp. The Blues did not cross-examine BISD's witness or offer evidence of their own, contending instead that the court could not consider BISD's evidence in ruling on the plea to the jurisdiction but was required to rule on the plea based solely on the Blues' pleadings. The district court appears to have agreed with the Blues on this issue. It sustained BISD's plea in part and overruled it in part, holding that the Blues had standing to challenge the Citicorp agreement but only insofar as it provided financing for the building itself and work done on it, which might arguably be improvements to real property within the meaning of the statute, and not as to financing for furnishings in the building that were clearly personal property. Thus, the court based its ruling on the agreement itself as described in the pleadings, rather than on BISD's evidence showing the status of the project and the source of funds used to repay Citicorp.

*551 Only BISD appealed.[FN8] The court of appeals held that the trial court was not permitted to look past the Blues' pleadings in ruling on BISD's plea to the jurisdiction.[FN9] The court observed that the Blues had alleged that they were district taxpayers, that the Citicorp lease-purchase agreement was illegal, and that BISD had not made all the payments due under that agreement.[FN10] The court held that these assertions, if true, were sufficient to give the Blues standing to sue.[FN11] Since BISD did not contend that the Blues fabricated these allegations to create standing, the court concluded that the trial court had properly overruled BISD's plea to the jurisdiction.[FN12]

FN8. TEX.CIV.PRAC. & REM.CODE § 51.014(a)(8) ("A person may appeal from an interlocutory order of a district court ... that ... grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001.").

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

34 S.W.3d 547, 150 Ed. Law Rep. 518, 44 Tex. Sup. Ct. J. 125
**(Cite as: 34 S.W.3d 547)**

FN9. 989 S.W.2d at 447.

FN10. *Id.* at 448.

FN11. *Id.*

FN12. *Id.*

We granted BISD's petition for review.[FN13]

FN13. 42 Tex.Sup.Ct.J. 40 (Oct. 21, 1999).

## II

[1][2][3] Our jurisdiction does not extend to an interlocutory appeal like this unless there was a dissent in the court of appeals—and here there was not—or unless the court of appeals' holding conflicts with that of another court of appeals or this Court.[FN14] We must therefore determine at the outset whether such a conflict exists. We have previously established that "[f]or this Court to have jurisdiction on the ground of conflict it must appear that the rulings in the two cases are 'so far upon the same facts that the decision of one case is necessarily conclusive of the decision in the other.' " [FN15] "The conflict must be on the very questions of law actually involved and determined, in respect of an issue in both cases, the test being whether one would operate to overrule the other in case they were both rendered by the same court." [FN16] It is also "essential that such conflict appear on the face of the opinions themselves".[FN17]

FN14. TEX.GOV'T CODE § 22.225.

FN15. *Gonzalez v. Avalos,* 907 S.W.2d 443, 444 (Tex.1995) (quoting *Christy v. Williams,* 156 Tex. 555, 298 S.W.2d 565, 567 (1957)); *accord, Coastal Corp. v. Garza,* 979 S.W.2d 318, 319 (Tex.1998).

FN16. *Christy,* 298 S.W.2d at 568–569.

FN17. *State v. Wynn,* 157 Tex. 200, 301 S.W.2d 76, 79 (1957); *accord, John Farrell Lumber Co. v. Wood,* 400 S.W.2d 307, 309 (Tex.1966); *Torrez v. Maryland Cas. Co.,* 363 S.W.2d 235, 236 (Tex.1962); *Employers Cas. Co. v. National Bank of Commerce,* 140 Tex. 113, 166 S.W.2d 691, 693 (1942); *Dockum v. Mercury Ins. Co.,* 134 Tex. 437, 135 S.W.2d 700, 701 (1940).

As we have just explained, the court of appeals held that a plea to the jurisdiction must be decided solely on the basis of the plaintiffs' pleadings and not on evidence, absent an assertion that an allegation in the pleadings is false and made only to confer jurisdiction that would otherwise not exist. [FN18] In reaching this conclusion, the court of appeals noted its disagreement with contrary statements by other courts of appeals as follows:

FN18. 989 S.W.2d at 447.

We acknowledge some of our sister courts of appeals have indicated, without specifically holding, that evidence may be considered when deciding a plea to the jurisdiction. However, to the extent these cases stand for this proposition, we decline to follow them.[FN19]

FN19. *Id.* (footnote omitted).

The court of appeals cited four cases, none of which, we agree, actually holds that evidence may be considered in deciding a plea to the jurisdiction. In one, *Dolenz v. Texas State Board of Medical Examiners,* *552 the court observed that "[a] plea to the jurisdiction can ... challenge the accuracy or truth of jurisdictional facts pleaded by the plaintiff, in which case evidence of such facts must be presented." [FN20] The court added, however, that no such challenge had been made in the case.[FN21] In the second case, *Rodri-*

© 2014 Thomson Reuters No Claim to Orig. US Gov. Works.

34 S.W.3d 547, 150 Ed. Law Rep. 518, 44 Tex. Sup. Ct. J. 125
**(Cite as: 34 S.W.3d 547)**

*guez v. American General Fire & Casualty Co.,* the court concluded that the pleadings as well as the extrinsic evidence offered in support of a plea to the jurisdiction showed that jurisdiction was lacking.[FN22] In the third, *Harkness v. Harkness,* lack of jurisdiction was demonstrated by the plaintiff's responses to requests for admissions and answers to interrogatories, but it is not clear whether the plaintiff's pleadings would have required the same result.[FN23] In the fourth case, *Laurito v. McVey,* the court merely noted that the plea to the jurisdiction had referred to extrinsic evidence that was not in the record and concluded that jurisdiction was shown by the pleadings.[FN24] None of these cases so conflicts with the court of appeals' opinion in the present case as to invoke this Court's jurisdiction.

FN20. 899 S.W.2d 809, 811 n. 3 (Tex.App.—Austin 1995, no writ).

FN21. *Id.*

FN22. 788 S.W.2d 583, 585–586 (Tex.App.—El Paso 1990, writ denied).

FN23. 709 S.W.2d 376, 378 (Tex.App.—Beaumont 1986, writ dism'd).

FN24. 496 S.W.2d 656, 659 (Tex.Civ.App.—Austin 1973, no writ).

BISD has cited another case in conflict with the decision in the present case: *Law Offices of Yarborough & Pope, Inc. v. National Automobile & Casualty Insurance Co.*[FN25] There, the court of civil appeals assumed that evidence offered by the defendant showed a lack of jurisdiction because no record of the hearing was presented on appeal; the court did not consider whether the pleadings also showed a lack of jurisdiction.[FN26] We are also aware of two other intermediate court decisions that suggest that a plea to the jurisdiction need not be based solely on the

pleadings. In one, *St. Paul Fire & Marine Insurance Co. v. Meador,* the court concluded that extrinsic evidence was properly considered but did not show a lack of jurisdiction. [FN27] In the other, *Hernandez v. Texas Department of Insurance,* the court held that a request for findings following an evidentiary hearing on a plea to the jurisdiction extended the time for perfecting appeal, but the court does not appear to have considered the evidence in concluding that the plea was correctly sustained.[FN28] Finally, in *Speer v. Stover,* we held that the trial court had correctly dismissed the case for want of jurisdiction after hearing evidence offered on a plea in abatement, concluding that the plea could be treated as a plea to the jurisdiction.[FN29] But we did not indicate whether the case could have been dismissed on the pleadings alone. Thus, in none of these cases was the propriety of extrinsic evidence essential to the result.

FN25. 548 S.W.2d 462, 463–464 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.).

FN26. *Id.*

FN27. 990 S.W.2d 362, 365–366 (Tex.App.—Fort Worth 1999, no pet.).

FN28. 923 S.W.2d 192, 194–195 (Tex.App.—Austin 1996, no writ).

FN29. 685 S.W.2d 22 (Tex.1985) (per curiam).

[4] BISD argues that the court of appeals' opinion conflicts with our decision in *F/R Cattle Co. v. State.*[FN30] The court of appeals attempted to distinguish *F/R Cattle Co.,* but BISD argues that the attempt was unsuccessful. We agree.

FN30. 866 S.W.2d 200 (Tex.1993).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

34 S.W.3d 547, 150 Ed. Law Rep. 518, 44 Tex. Sup. Ct. J. 125
**(Cite as: 34 S.W.3d 547)**

The court of appeals correctly recited the circumstances presented in *F/R Cattle Co.* There, the State sued under the Texas Clean Air Act to enjoin the emission of odors from a large commercial calf-raising *553 operation. [FN31] The defendant filed a plea to the jurisdiction, arguing that the Act did not afford jurisdiction for the State's suit because the odors complained of were produced by natural processes and the Act expressly did not apply to such odors.[FN32] The trial court sustained the plea after hearing evidence and making findings.[FN33] The court of appeals reversed, holding that as a matter of law the odors from the calf-raising operation were not produced by natural processes.[FN34] We concluded that the issue could not be determined as a matter of law. We reversed and remanded the case to the court of appeals to determine whether the evidence was factually sufficient to support the trial court's ruling.[FN35]

FN31. *Id.* at 201.

FN32. *Id.*

FN33. *Id.* at 201–202.

FN34. *State v. F/R Cattle Co.,* 828 S.W.2d 303, 306–307 (Tex.App.—Eastland 1992), *rev'd,* 866 S.W.2d 200 (Tex.1993).

FN35. 866 S.W.2d at 205.

In the case before us, the court of appeals correctly observed that the State in *F/R Cattle Co.* did not object to the consideration of evidence, but the court erred in concluding that we merely "addressed the appeal in the procedural posture in which it was presented." [FN36] If the jurisdictional issue should have been governed solely by the State's pleadings, we would have been obliged to decide the issue. If the pleadings showed jurisdiction, we would have affirmed the court of appeals, and if they did not, we would have dismissed the case. If evidence could not be considered in deciding the jurisdictional issue, we would no more have remanded the case to the court of appeals to assess the factual sufficiency of the evidence merely because the State did not object than we would remand a summary judgment for a factual sufficiency review merely because no one objected. Although we did not discuss in *F/R Cattle Co.* whether evidence could be considered in deciding a plea to the jurisdiction, the propriety of such evidence was essential to our ruling on the face of the opinion. Our judgment would have been different if consideration of such evidence had been improper. The State could not, simply by waiving an objection to the consideration of evidence, require the courts to take such evidence into account if such evidence were impermissible.

FN36. 989 S.W.2d at 447.

[5][6] The conflict between the court of appeals' holding in the present case and our decision in *F/R Cattle Co.,* is such that if the court of appeals were correct, then *F/R Cattle Co.* was wrongly decided. While the factual circumstances presented in the two cases are very different, factual similarity is not a prerequisite for our jurisdiction over an interlocutory appeal if the factual differences do not serve to legitimately distinguish the holdings of the two cases.[FN37] If the rule stated by the court of appeals in this case were correct, then *F/R Cattle Co.* should have been decided differently. If a rule of decision in one case would require a different result were it applied in another case, the conflict between the two cases is sufficient to invoke our jurisdiction over an interlocutory appeal.

FN37. *Coastal Corp. v. Garza,* 979 S.W.2d 318, 320 (Tex.1998).

**III**

We next consider *when* evidence can be considered in deciding a plea to the jurisdiction, and whether

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

34 S.W.3d 547, 150 Ed. Law Rep. 518, 44 Tex. Sup. Ct. J. 125
**(Cite as: 34 S.W.3d 547)**

the trial court should have considered BISD's evidence showing the structure of the transaction and the state source of funds to pay Citicorp.

[7][8][9] Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's *554 power to decide a case.[FN38] The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction,[FN39] as well as by other procedural vehicles, such as a motion for summary judgment.[FN40] BISD has raised its challenge by a plea to the jurisdiction.

> FN38. *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex.1993).

> FN39. *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 637 (Tex.1999) (per curiam).

> FN40. *See, e.g., NME Hospitals, Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex.1999).

[10][11][12] A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit.[FN41] The claims may form the context in which a dilatory plea is raised, but the plea should be decided without delving into the merits of the case.[FN42] The purpose of a dilatory plea is not to force the plaintiffs to preview their case on the merits but to establish a reason why the merits of the plaintiffs' claims should never be reached. This does not mean that evidence cannot be offered on a dilatory plea; on the contrary, the issues raised by a dilatory plea are often such that they cannot be resolved without hearing evidence.[FN43] And because a court must not act without determining that it has subject-matter jurisdiction to do so, it should hear evidence as necessary to determine the issue before proceeding with the case. But the proper function of a dilatory plea does not authorize an inquiry so far into the substance of the

claims presented that plaintiffs are required to put on their case simply to establish jurisdiction. Whether a determination of subject-matter jurisdiction can be made in a preliminary hearing or should await a fuller development of the merits of the case must be left largely to the trial court's sound exercise of discretion.

> FN41. *See* 5 WILLIAM V. DORSANEO III, TEXAS LITIGATION GUIDE § 70.03 [1] (2000).

> FN42. *See Jud v. City of San Antonio*, 143 Tex. 303, 184 S.W.2d 821, 823 (1945).

> FN43. *See* 5 DORSANEO, *supra* note 41, § 70.03[1].

[13][14][15] Thus, for example, when a defendant asserts that the amount in controversy is below the court's jurisdictional limit, the plaintiff's pleadings are determinative unless the defendant specifically alleges that the amount was pleaded merely as a sham for the purpose of wrongfully obtaining jurisdiction,[FN44] or the defendant can readily establish that the amount in controversy is insufficient, as for example when the issue in dispute is a license or right rather than damages.[FN45] A plea to the jurisdiction cannot be used to require the plaintiff to prove the damages to which he is entitled in order to show that they exceed the court's jurisdictional limits. The plaintiff's allegation of damages in excess of jurisdictional limits suffices to show the amount in controversy, even if damages cannot ultimately be proved at all. Were it otherwise, the plaintiff would be required to try his entire case to show an entitlement to damages in excess of the court's jurisdictional limits.

> FN44. *Hoffman v. Cleburne Bldg. & Loan Ass'n*, 85 Tex. 409, 22 S.W. 154, 155 (1893).

> FN45. *Cf. Tune v. Texas Dept. of Public Safety*, 23 S.W.3d 358 (Tex.2000) (holding

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

34 S.W.3d 547, 150 Ed. Law Rep. 518, 44 Tex. Sup. Ct. J. 125
**(Cite as: 34 S.W.3d 547)**

as a matter of law that the amount in controversy in a case involving the denial of a license to carry a concealed handgun exceeds $100).

On the other hand, there are situations in which a plaintiff is required to prove facts that might be characterized as "primarily jurisdictional". For example, when a defendant asserts that a plaintiff organization does not have standing to assert claims on behalf of its members, an evidentiary inquiry into the nature and purpose of the organization sufficient to determine standing does not involve a significant inquiry into the substance of the claims. [FN46] Rather, a determination of associational*555 standing is a prerequisite to the plaintiff's presentation of its substantive claims. Similarly, a challenge to personal jurisdiction by special appearance, which is a dilatory plea, almost always requires consideration of evidence, and the rules of procedure set out the process for adducing such evidence.[FN47] While that evidence may touch on the merits of the case, it focuses on the defendant's contacts with the forum, not whether the defendant may be liable as alleged.

FN46. *Cf. Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440 (Tex.1993) (setting out requirements for associational standing and illustrating how determination of those requirements may be made apart from the merits of the case).

FN47. TEX.R.CIV.P. 120a.

The court of appeals cited *Firemen's Insurance Co. v. Board of Regents*[FN48] as authority for its conclusion that a plea to the jurisdiction must ordinarily be decided solely on the pleadings.[FN49] *Firemen's,* in turn, relied on our decision in *Brannon v. Pacific Employers Insurance Co.*[FN50] But the jurisdictional challenge in *Brannon* was based on the amount in controversy, an issue which, as we have explained,

must ordinarily be decided solely on the pleadings. The court in *Firemen's* cited this limitation in the context of determining a plea to the jurisdiction based on sovereign immunity. To this extent we disapprove the language of *Firemen's.*

FN48. 909 S.W.2d 540, 541 (Tex.App.—Austin 1995, writ denied).

FN49. 989 S.W.2d at 446.

FN50. 909 S.W.2d at 541 (citing *Brannon v. Pacific Employers Ins. Co.,* 148 Tex. 289, 224 S.W.2d 466, 469 (1949)).

[16][17][18] In sum, a court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. The court should, of course, confine itself to the evidence relevant to the jurisdictional issue. The evidence BISD offered here showed the basic nature of the finance arrangement for construction of the school building and the source of funds used to repay Citicorp. This evidence went not to the merits of the Blues' claims—whether the Public Property Finance Act was violated—but only to whether the Blues had standing to assert their claims. Accordingly, the trial court should have considered BISD's evidence in deciding its plea to the jurisdiction, and apparently did so.

[19] In reliance on the trial court's decision not to consider extrinsic evidence, the Blues offered none of their own and did not cross-examine BISD's witness. They now argue that if such evidence is to be considered, they should be given an opportunity on remand to have a full evidentiary hearing. If the Blues' standing were dependent on the source of the funds BISD uses to repay Citicorp, we would agree, since the Blues dispute the evidence BISD offered and argue that it is not conclusive. But the Blues do not dispute

34 S.W.3d 547, 150 Ed. Law Rep. 518, 44 Tex. Sup. Ct. J. 125
**(Cite as: 34 S.W.3d 547)**

BISD's evidence that construction of the school building is complete, that the building is occupied, and that neither the contractor nor Citicorp owe BISD any further performance under their respective agreements. Accordingly, we consider whether this undisputed evidence concerning the status of the project defeats the Blues' claim of standing.

[20][21][22] In general, taxpayers do not have a right to bring suit to contest government decision-making because, as we observed more than half a century ago in *Osborne v. Keith,* "[g]overnments cannot operate if every citizen who concludes that a public official has abused his discretion is granted the right to come into court and bring such official's public acts under judicial review." [FN51] Unless standing is conferred by statute, [FN52] taxpayers must show as a rule that they have suffered a particularized injury distinct from that suffered *556 by the general public in order to have standing to challenge a government action or assert a public right.[FN53] But in Texas law there is a long-established exception to this general rule: a taxpayer has standing to sue in equity to enjoin the illegal expenditure of public funds, even without showing a distinct injury. [FN54] We have explained the justification for this broader grant of standing to challenge future expenditures as follows:

FN51. 142 Tex. 262, 177 S.W.2d 198, 200 (1944).

FN52. *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984); *Scott v. Board of Adjustment,* 405 S.W.2d 55 (Tex.1966).

FN53. *Pierce v. Southern Pac. Co.,* 410 S.W.2d 801, 802 (Tex.Civ.App.—Waco 1967, writ ref'd); *San Antonio Conservation Soc. v. City of San Antonio,* 250 S.W.2d 259, 263 (Tex.Civ.App.—Austin 1952, writ ref'd); *Yett v. Cook,* 115 Tex. 205, 281 S.W. 837, 840 (1926); *City of San Antonio v.*

*Stumburg,* 70 Tex. 366, 7 S.W. 754, 755 (1888).

FN54. *Osborne,* 177 S.W.2d at 200; *Hoffman v. Davis,* 128 Tex. 503, 100 S.W.2d 94, 95 (1937); *City of Austin v. McCall,* 95 Tex. 565, 68 S.W. 791, 793 (1902).

When a taxpayer brings an action to restrain the illegal expenditure ... of tax money he sues for himself, and it is held that his interest in the subject-matter is sufficient to support the action; but when the money has already been spent, an action for its recovery is for the [taxing entity]. The cause of action belongs to it alone.[FN55]

FN55. *Hoffman,* 100 S.W.2d at 96.

The exception unquestionably impinges on the policies for restricting taxpayer lawsuits, but strictly limited, it provides important protection to the public from the illegal expenditure of public funds without hampering too severely the workings of the government.

BISD argues that this Court abolished the exception in *Hunt v. Bass,* where we wrote that the general rule "is applied in all cases absent a statutory exception to the contrary." [FN56] But *Hunt* did not involve an alleged illegal expenditure; rather, the plaintiffs there claimed that their lawsuits were being delayed because of the commissioners' court's failure to appropriate sufficient funds to operate the local courts. We had no reason in that case to refer to the law governing illegal expenditures, and the sentence to which BISD points cannot fairly be read to tacitly overrule the cases that had permitted taxpayer suits challenging such expenditures.

FN56. *Hunt,* 664 S.W.2d at 324.

The Blues argue that their claim fits within the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

34 S.W.3d 547, 150 Ed. Law Rep. 518, 44 Tex. Sup. Ct. J. 125
**(Cite as: 34 S.W.3d 547)**

exception: they are taxpayers suing to enjoin future payments to Citicorp under its finance agreement with BISD. BISD argues that the financing arrangement must be viewed as only a part of the construction project, which has long since been completed. Because all the work has been done and BISD's obligation to pay for it has been fully incurred, BISD argues that the Blues' challenge is really to past expenditures, even though payments are due in future installments. In essence, BISD's argument is that taxpayer suits to enjoin future payments under an illegal contract should be restricted to instances in which the governmental entity has not yet received full performance under the contract. Here, construction of the BISD high school is complete, and the building is occupied. Citicorp has performed its obligations to BISD under their agreement, and it remains for BISD to repay the loan.

We have never extended the exception far enough to include the Blues' action against BISD. In *City of Austin v. McCall,* a taxpayer obtained an injunction prohibiting the City of Austin from consummating a proposed contract to purchase a water and power utility.[FN57] In affirming the injunction, we said that " 'it would seem eminently proper for courts of equity to interfere upon the application of the taxpayers of a county to prevent the consummation of a wrong, when the officers of those corporations assume, in excess of their powers, to create burdens upon property holders.' "[FN58] In *Hoffman v. Davis,* *557 taxpayers sued the sureties on county officials' bonds for payment on the bonds due to the officials' misconduct.[FN59] Although we reaffirmed "[t]he right of a taxpaying citizen to go into a court of equity and enjoin public officials from the expenditure of public funds under an illegal contract",[FN60] we concluded that the action did not fit within this rule but was rather a suit for debt which properly belonged to the county. In *Osborne v. Keith,* a taxpayer sued to enjoin the county from paying for dirt it had purchased from its agent to be used in road construction.[FN61] It appears that the county had already taken and used some materials and may have had the

right to take more.[FN62] We held that the county's agreement with its fiduciary to purchase such materials was not illegal but merely voidable.[FN63] Hence, we did not consider whether it was important that the county had already taken possession of some of the dirt it had purchased. Finally, in *Hulett v. West Lamar Rural High School District,*[FN64] taxpayers sued to enjoin their school district from constructing school buildings out of wood when the bonds authorized for financing of the construction called for buildings "of material other than wood".[FN65] The district court denied the plaintiffs' request for a temporary injunction, and the court of appeals dismissed the appeal as moot because construction was "90 to 95 per cent complete".[FN66] We agreed to hear the appeal because "substantial sums remained to be paid under the contract and therefore ... the question involved was not moot."[FN67] At oral argument, however, respondent showed "that the contract had been fully performed, that the buildings had been accepted by the school authorities, and that the contract price had been fully paid by the school district to the contractor."[FN68] We therefore concluded that the case was moot.[FN69] Although *Hulett* did not involve future loan payments as the present case does, our opinion nevertheless suggests that once construction is complete the agreement for it can no longer be challenged in a taxpayer suit.

FN57. 68 S.W. at 792.

FN58. *Id.* at 794 (quoting *Crampton v. Zabriskie,* 101 U.S. 601, 609, 25 L.Ed. 1070 (1879)).

FN59. 100 S.W.2d at 94.

FN60. *Id.* at 95.

FN61. 177 S.W.2d at 199.

FN62. *Id.*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

34 S.W.3d 547, 150 Ed. Law Rep. 518, 44 Tex. Sup. Ct. J. 125
(Cite as: 34 S.W.3d 547)

FN63. *Id.* at 201.

FN64. 149 Tex. 289, 232 S.W.2d 669 (1950).

FN65. *Id.* at 669.

FN66. *Id.*

FN67. *Id.* at 670.

FN68. *Id.*

FN69. *Id.*

The Blues rely on a court of civil appeals' opinion, *Kordus v. City of Garland*,[FN70] but that case is consistent with our own precedents. There, taxpayers sued to recover money donated and dues paid by the City of Garland to the local chamber of commerce, and to prohibit the City from performing its agreement with the chamber to donate more money in the future. The trial court dismissed the case because the plaintiffs had failed to show any interest distinct from the general public's, but the court of appeals concluded that the taxpayers were entitled to sue to prohibit future payments by the City to the chamber. Although the City had already agreed to make $40,000 in future payments, the chamber had not yet rendered any service for such payments, and therefore the agreement remained, in that important respect, executory. In the present case, by contrast, nothing remains to be performed of the agreements for construction of BISD's high school but repayment of funds already advanced for work fully completed.

FN70. 561 S.W.2d 260 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.).

We are not inclined to extend the exception to taxpayer standing to include the Blues' suit. The ju-risprudential justification*558 for taxpayer suits to enjoin performance of illegal agreements is that the interference such suits pose to government activities is slight in comparison to the protection afforded taxpayers from preventing the culmination of illegal agreements made by public officials. But the balance in costs and benefits shifts significantly once the governmental entity has received all that it bargained for and must simply pay for it. We need not decide here whether a governmental entity's receipt of something less than full performance under an allegedly illegal agreement is enough to preclude a taxpayer suit to prohibit future performance. When all that remains is a school district's repayment of a loan for work completed, allowance of a taxpayer action to prohibit such repayment threatens a substantial interference with governmental actions. The Blues' action not only threatens BISD's already substantial investment in its high school, and what by now are the settled expectations of other taxpayers in the district who are also served by the high school, but should the action succeed on the merits, it would signal increased risks to lenders and others in dealing with governmental entities. The potential for disruption of government operations is too great to allow a taxpayer with no special injury distinct from the general public's to sue to prohibit the government from paying for goods and services it has already received and placed in permanent use.

For these reasons we conclude that the Blues lack standing to sue and therefore that the trial court lacked subject matter jurisdiction over the action.

* * * * *

Accordingly, the judgment of the court of appeals is reversed and the Blues' action is dismissed for want of jurisdiction.

Chief Justice PHILLIPS filed a dissenting opinion, in which Justice ENOCH and Justice HANKINSON joined.

34 S.W.3d 547, 150 Ed. Law Rep. 518, 44 Tex. Sup. Ct. J. 125
(Cite as: 34 S.W.3d 547)

PHILLIPS, Chief Justice, dissenting, in which Justice ENOCH and Justice HANKINSON join.

Our jurisdiction to consider this interlocutory appeal depends on the existence of a conflict between the court of appeals' opinion below and some prior decision from another court of appeals or this Court. TEX.GOV'T CODE § 22.225. Such a conflict must be well-defined "upon a question of law involved and determined and such that one decision would overrule the other if both were rendered by the same court." *Garcia v. American Nat'l Ins. Co.,* 124 Tex. 466, 78 S.W.2d 170, 170 (1935); *see also Christy v. Williams,* 156 Tex. 555, 298 S.W.2d 565, 567 (1957) (rulings in the two cases must be so far upon the same state of facts that decision in one is necessarily conclusive in the other). Because the Court mistakenly concludes that the decision of the court below conflicts with our opinion in *F/R Cattle Company, Inc. v. State,* 866 S.W.2d 200 (Tex.1993), I respectfully dissent.

The court of appeals in this case holds that the trial court should determine its subject matter jurisdiction solely from the allegations in the plaintiffs' pleadings. The Blues' took this position in the trial court, and they objected when BISD attempted to use extrinsic evidence to show that the trial court lacked subject matter jurisdiction. In contrast, the plaintiff in *F/R Cattle* did not object when the defendant used extrinsic evidence to contest the plaintiff's allegations of subject matter jurisdiction. The court of appeals distinguished *F/R Cattle* on this basis, noting that we decided the case only "in the procedural posture in which it was presented." 989 S.W.2d 441, 447. Because no one objected to the extrinsic evidence, we never considered whether it was proper or not. But this distinction does not necessarily foreclose conflicts jurisdiction. We recently explained that the conflicts standard does not require factual identity between the two opinions, so that factual distinctions that are immaterial to the respective *559 holdings may be ignored. *See Coastal Corp. v. Garza,* 979 S.W.2d 318, 320 (Tex.1998).

The Court apparently considers the plaintiff State's failure to object to extrinsic evidence in *F/R Cattle* to be an immaterial factual distinction, irrelevant to the deciding legal pronouncements. In part, the Court reaches this conclusion by explaining that "[t]he State could not, simply by waiving an objection to the consideration of evidence, require the courts to take such evidence into account if such evidence were impermissible." 34 S.W.3d at 553. But the failure to object to "impermissible" evidence can have just that effect. For example, if the State failed to object to impermissible, hearsay testimony would we not "take such evidence into account"? Our rules say that we would. *See* TEX.R.EVID. 802. In a summary judgment appeal, on the other hand, we do not consider oral testimony on appeal, even if admitted without objection, because our summary judgment rule expressly forbids its use. TEX.R.CIV.P. 166a(c) ("No oral testimony shall be received at the hearing."); *see also Richards v. Allen,* 402 S.W.2d 158, 161 (Tex.1966) (supplementation of summary judgment evidence should be by affidavit or deposition rather than oral testimony). I am not sure which situation is closer to this case, but I would prefer some analysis to decision by fiat.

The Court also suggests today that *F/R Cattle* conflicts because "our judgment would have been different if consideration of such evidence had been improper." 34 S.W.3d at 553. Even if this were true, a judgment alone cannot create a conflict with another opinion or another judgment. We have never gone behind the opinions to determine whether a conflict exists; instead we have considered only the facts and law actually set out in the respective opinions. *See Boxwell v. Ladehoff,* 400 S.W.2d 303, 304 (Tex.1966); *Employers Cas. Co. v. National Bank of Commerce,* 140 Tex. 113, 166 S.W.2d 691, 693 (1942); *Dockum v. Mercury Ins. Co.,* 134 Tex. 437, 135 S.W.2d 700, 701 (1940). The Court here concedes that "we did not discuss in *F/R Cattle Co.* whether evidence could be considered in deciding a plea to the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

34 S.W.3d 547, 150 Ed. Law Rep. 518, 44 Tex. Sup. Ct. J. 125
**(Cite as: 34 S.W.3d 547)**

jurisdiction". 34 S.W.3d at 553. If we did not discuss this in *F/R,* how can there be a conflict apparent on the face of the two opinions? *See John Farrell Lumber Co. v. Wood,* 400 S.W.2d 307, 309 (Tex.1966); *Torrez v. Maryland Cas. Co.,* 363 S.W.2d 235, 236 (Tex.1962); *State v. Wynn,* 301 S.W.2d at 76, 79 (Tex.1957).

Whether or not we agree with the court of appeals' limited evidentiary view, its opinion does not necessarily conflict with *F/R Cattle,* and therefore we lack jurisdiction to consider the issue. I realize that it is difficult to resist "the desire to remedy significant errors" arising in interlocutory appeals. *Southwestern Refining Co. v. Bernal,* 22 S.W.3d 425, 441 (Tex.2000)(Enoch, J. dissenting). But as a Court of limited appellate jurisdiction, we must wait until issues are properly before us before we address them by judicial decision.

Because we do not have general appellate jurisdiction over interlocutory appeals of this nature and because any alternative basis for our jurisdiction has not been demonstrated, I would dismiss the petition for want of jurisdiction. For these reasons, I dissent.

Tex.,2000.
Bland Independent School Dist. v. Blue
34 S.W.3d 547, 150 Ed. Law Rep. 518, 44 Tex. Sup. Ct. J. 125

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.



133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**



Supreme Court of Texas.
TEXAS DEPARTMENT OF PARKS AND WILD-
LIFE, Petitioner,
v.
Maria MIRANDA and Ray Miranda, Respondents.

No. 01–0619.
Argued Oct. 30, 2002.
April 2, 2004.

**Background:** Visitor to state park and her husband sued the Parks and Wildlife Department for personal injuries visitor sustained when a tree limb fell on her head. The 38th Judicial District Court, Uvalde County, Mickey R. Pennington, J., denied Department's plea to the jurisdiction. Department appealed. The San Antonio Court of Appeals, 55 S.W.3d 648, affirmed. Review was granted.

**Holdings:** The Supreme Court, J. Dale Wainwright, J., held that:
(1) in ruling on the plea to the jurisdiction, the trial court could consider evidence beyond the allegations in the pleadings, disapproving of *Sullivan v. Wilmer Hutchins Indep. Sch. Dist.*, 47 S.W.3d 529, *Denton County v. Howard*, 22 S.W.3d 113, *Tex. Dep't of Mental Health & Mental Retardation v. Pearce*, 16 S.W.3d 456, *Tex. State Employees Union/CWA Local 6184 v. Tex. Workforce Comm'n*, 16 S.W.3d 61, *DalMac Constr. Co. v. Tex. A & M Univ.*, 35 S.W.3d 654, *Univ. of Houston v. Elthon*, 9 S.W.3d 351, *Curbo v. State, Office of the Governor*, 998 S.W.2d 337, *City of Saginaw v. Carter*, 996 S.W.2d 1, and *Bland Indep. Sch. Dist. v. Blue*, 989 S.W.2d 441, and
(2) Parks and Wildlife Department did not act with gross negligence, and thus, Department had sovereign immunity under Texas Tort Claims Act and recrea-

tional use statute.

Reversed and rendered.

Phillips, C.J., and Hecht, Owen, and Smith, JJ., joined parts I, II, III.A, III.B, III.C.2, III.C.3, III.D, and IV of Justice Wainwright's opinion.

Phillips, C.J., and Hecht and Smith, JJ., joined part III.C.1 of Justice Wainwright's opinion.

Wallace B. Jefferson, J., filed a dissenting opinion.

Scott Brister, J., filed a dissenting opinion in which O'Neill and Schneider, J., joined.

West Headnotes

**[1] Courts 106 247(7)**

106 Courts
 106VI Courts of Appellate Jurisdiction
  106VI(B) Courts of Particular States
   106k247 Texas
    106k247(7) k. Review by or certificate to Supreme Court by Court of Civil Appeals of questions where its decision conflicts with or overrules that of another Court of Civil Appeals or that of the Supreme Court. Most Cited Cases

A new decision of a court of appeals "conflicts" with a prior decision of another court of appeals or prior decision of the Supreme Court, as basis for Supreme Court's jurisdiction over interlocutory appeal from the new decision, when the prior and new cases are so similar that the decision in one case is necessarily conclusive of the decision in the other. V.T.C.A., Government Code § 22.001(a)(2).

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

**[2] Pleading 302** ☞111.36

302 Pleading
    302III Responses or Responsive Pleadings in General
        302III(B) Dilatory Pleas and Matter in Abatement
            302k111 Decision of Issue, and Proceedings Thereon
                302k111.36 k. Scope of inquiry and matters considered in general. Most Cited Cases
    (Formerly 106k122)

The plaintiff's allegations, in the petition, of the amount in controversy control for subject matter jurisdiction purposes, unless the party challenging jurisdiction pleads and proves that the plaintiff's allegations of the amount in controversy were made fraudulently for the purpose of obtaining jurisdiction.

**[3] Pleading 302** ☞111.36

302 Pleading
    302III Responses or Responsive Pleadings in General
        302III(B) Dilatory Pleas and Matter in Abatement
            302k111 Decision of Issue, and Proceedings Thereon
                302k111.36 k. Scope of inquiry and matters considered in general. Most Cited Cases
    (Formerly 106k39)

If the alleged defect in subject matter jurisdiction does not involve the amount in controversy, the party alleging the defect by a plea to the jurisdiction is not required to further allege the pleadings are fraudulent, in order for the trial court to have authority to consider evidence outside of allegations in pleadings if consideration of such additional evidence is necessary for trial court to determine whether it has subject matter jurisdiction; disapproving of *Sullivan v. Wilmer Hutchins Indep. Sch. Dist.*, 47 S.W.3d 529, *Denton County v. Howard*, 22 S.W.3d 113, *Tex. Dep't of Mental Health & Mental Retardation v. Pearce*, 16 S.W.3d 456, *Tex. State Employees Union/CWA Local 6184 v. Tex. Workforce Comm'n*, 16 S.W.3d 61, *DalMac Constr. Co. v. Tex. A & M Univ.*, 35 S.W.3d 654, *Univ. of Houston v. Elthon*, 9 S.W.3d 351, *Curbo v. State, Office of the Governor*, 998 S.W.2d 337, *City of Saginaw v. Carter*, 996 S.W.2d 1, and *Bland Indep. Sch. Dist. v. Blue*, 989 S.W.2d 441..

**[4] States 360** ☞191.4(1)

360 States
    360VI Actions
        360k191 Liability and Consent of State to Be Sued in General
            360k191.4 Necessity of Consent
                360k191.4(1) k. In general. Most Cited Cases

Sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the State or certain governmental units have been sued, unless the State consents to suit.

**[5] States 360** ☞191.1

360 States
    360VI Actions
        360k191 Liability and Consent of State to Be Sued in General
            360k191.1 k. In general. Most Cited Cases

**States 360** ☞208

360 States
    360VI Actions
        360k208 k. Pleading. Most Cited Cases

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

The State's immunity from liability is an affirmative defense, while immunity from suit deprives a court of subject matter jurisdiction.

**[6] Municipal Corporations 268 ⟜851**

268 Municipal Corporations
   268XII Torts
      268XII(E) Condition or Use of Public Buildings and Other Property
        268k851 k. Parks and public squares and places. Most Cited Cases

The recreational use statute limits a governmental unit's duty for premises defects, for which sovereign immunity under the Texas Tort Claims Act is waived, to that which is owed a trespasser, i.e., not to injure that person willfully, wantonly, or through gross negligence. V.T.C.A., Civil Practice & Remedies Code §§ 75.002(c, d), 101.021, 101.025, 101.058.

**[7] Negligence 272 ⟜273**

272 Negligence
   272V Heightened Degrees of Negligence
      272k273 k. Gross negligence. Most Cited Cases

Gross negligence involves two components: (1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others.

**[8] Pleading 302 ⟜104(1)**

302 Pleading
   302III Responses or Responsive Pleadings in General
      302III(B) Dilatory Pleas and Matter in Abatement
        302k104 Plea to the Jurisdiction
          302k104(1) k. In general. Most Cited Cases

Sovereign immunity from suit defeats a trial court's subject matter jurisdiction, and thus is properly asserted in a plea to the jurisdiction.

**[9] Courts 106 ⟜39**

106 Courts
   106I Nature, Extent, and Exercise of Jurisdiction in General
      106I(A) In General
        106k39 k. Determination of questions of jurisdiction in general. Most Cited Cases

The trial court must determine at its earliest opportunity whether it has the constitutional or statutory authority to decide the case, before allowing the litigation to proceed.

**[10] Courts 106 ⟜39**

106 Courts
   106I Nature, Extent, and Exercise of Jurisdiction in General
      106I(A) In General
        106k39 k. Determination of questions of jurisdiction in general. Most Cited Cases

Whether a court has subject matter jurisdiction is a question of law.

**[11] Appeal and Error 30 ⟜893(1)**

30 Appeal and Error
   30XVI Review

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

30XVI(F) Trial De Novo

30k892 Trial De Novo

30k893 Cases Triable in Appellate Court

30k893(1) k. In general. Most Cited Cases

Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law reviewed de novo.

**[12] Courts 106 ⚷39**

106 Courts

106I Nature, Extent, and Exercise of Jurisdiction in General

106I(A) In General

106k39 k. Determination of questions of jurisdiction in general. Most Cited Cases

Whether undisputed evidence of jurisdictional facts establishes a trial court's subject matter jurisdiction is a question of law; however, in some cases, disputed evidence of jurisdictional facts that also implicate the merits of the case may require resolution by the finder of fact.

**[13] Pleading 302 ⚷104(1)**

302 Pleading

302III Responses or Responsive Pleadings in General

302III(B) Dilatory Pleas and Matter in Abatement

302k104 Plea to the Jurisdiction

302k104(1) k. In general. Most Cited Cases

**Pleading 302 ⚷111.38**

302 Pleading

302III Responses or Responsive Pleadings in General

302III(B) Dilatory Pleas and Matter in Abatement

302k111 Decision of Issue, and Proceedings Thereon

302k111.38 k. Petition, complaint, declaration or other pleadings. Most Cited Cases

When a plea to the jurisdiction challenges the pleadings, the court determines if the pleader has alleged facts that affirmatively demonstrate the court's subject matter jurisdiction to hear the cause, construing the pleadings liberally in favor of the pleader and looking to the pleader's intent.

**[14] Pleading 302 ⚷111.48**

302 Pleading

302III Responses or Responsive Pleadings in General

302III(B) Dilatory Pleas and Matter in Abatement

302k111 Decision of Issue, and Proceedings Thereon

302k111.48 k. Amendments following sustaining of pleas. Most Cited Cases

If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's subject matter jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiffs should be afforded the opportunity to amend following sustaining of plea to the jurisdiction.

**[15] Pleading 302 ⚷111.48**

302 Pleading

302III Responses or Responsive Pleadings in General

302III(B) Dilatory Pleas and Matter in Ab-

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

atement

302k111 Decision of Issue, and Proceedings Thereon

302k111.48 k. Amendments following sustaining of pleas. Most Cited Cases

If the pleadings affirmatively negate the existence of subject matter jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend.

**[16] Appeal and Error 30 ☞863**

30 Appeal and Error
  30XVI Review
    30XVI(A) Scope, Standards, and Extent, in General
      30k862 Extent of Review Dependent on Nature of Decision Appealed from
        30k863 k. In general. Most Cited Cases

If a plea to the jurisdiction challenges the existence of jurisdictional facts, the appellate court considers relevant evidence, beyond the allegations in the pleadings, submitted by the parties when necessary to resolve the subject matter jurisdiction issues raised, as the trial court is required to do.

**[17] Courts 106 ☞39**

106 Courts
  106I Nature, Extent, and Exercise of Jurisdiction in General
    106I(A) In General
      106k39 k. Determination of questions of jurisdiction in general. Most Cited Cases

When the consideration of a trial court's subject matter jurisdiction requires the examination of evidence beyond the allegations in the pleadings, the trial court exercises its discretion in deciding whether the jurisdictional determination should be made at a pre-

liminary hearing or await a fuller development of the case, mindful that the determination of whether subject matter jurisdiction exists must be made as soon as practicable.

**[18] Pleading 302 ☞111.36**

302 Pleading
  302III Responses or Responsive Pleadings in General
    302III(B) Dilatory Pleas and Matter in Abatement
      302k111 Decision of Issue, and Proceedings Thereon
        302k111.36 k. Scope of inquiry and matters considered in general. Most Cited Cases

In a case in which the jurisdictional challenge, relating to subject matter jurisdiction, implicates the merits of the plaintiffs' cause of action and the plea to the jurisdiction includes evidence beyond the allegations in the pleadings, the trial court reviews the relevant evidence to determine if a fact issue exists.

**[19] Judgment 228 ☞178**

228 Judgment
  228V On Motion or Summary Proceeding
    228k178 k. Nature of summary judgment. Most Cited Cases

Purpose of summary judgments is to eliminate patently unmeritorious claims and untenable defenses. Vernon's Ann.Texas Rules Civ.Proc., Rule 166a.

**[20] Pleading 302 ☞111.39(.5)**

302 Pleading
  302III Responses or Responsive Pleadings in General
    302III(B) Dilatory Pleas and Matter in Ab-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

atement

302k111 Decision of Issue, and Proceedings Thereon

302k111.39 Presumptions and Burden of Proof

302k111.39(.5) k. In general. Most Cited Cases

After the State asserts and supports with evidence that the trial court lacks subject matter jurisdiction, based on the State's sovereign immunity, the plaintiff is required, if the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue.

**[21] Appeal and Error 30 ☞893(1)**

30 Appeal and Error
 30XVI Review
  30XVI(F) Trial De Novo
   30k892 Trial De Novo
    30k893 Cases Triable in Appellate Court
     30k893(1) k. In general. Most Cited Cases

Appellate courts reviewing a challenge to a trial court's subject matter jurisdiction review the trial court's ruling de novo.

**[22] Appeal and Error 30 ☞916(1)**

30 Appeal and Error
 30XVI Review
  30XVI(G) Presumptions
   30k915 Pleading
    30k916 In General
     30k916(1) k. In general. Most Cited Cases

When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, the appellate court takes as true all evidence favorable to the nonmovant and indulges every reasonable inference and resolve any doubts in the nonmovant's favor.

**[23] Pleading 302 ☞111.34**

302 Pleading
 302III Responses or Responsive Pleadings in General
  302III(B) Dilatory Pleas and Matter in Abatement
   302k111 Decision of Issue, and Proceedings Thereon
    302k111.34 k. Time for trial. Most Cited Cases

The scheduling of a hearing on a plea to the jurisdiction is left to the discretion of the trial court, which is in the best position to evaluate the appropriate time frame for hearing such a plea in any particular case.

**[24] States 360 ☞112.2(6)**

360 States
 360III Property, Contracts, and Liabilities
  360k112 Torts
   360k112.2 Nature of Act or Claim
    360k112.2(6) k. State parks, injuries in. Most Cited Cases

Visitor to state park alleged sufficient facts regarding Parks and Wildlife Department's gross negligence to survive a plea to the jurisdiction by the Department based solely on the pleadings, with the Department alleging sovereign immunity under the Texas Tort Claims Act and recreational use statute, as to park visitor's premises defect claim alleging she was seriously injured by falling tree limb at camp site;

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

visitor alleged that she specifically asked Department's employee for recommendation of safe camping location, that Department was aware of unpruned, uninspected tree branches creating dangerous defective condition at camp site but failed to alleviate the danger, and that Department consciously and deliberately failed to warn visitor of the extremely dangerous condition, though visitor did not cite specific evidence that Department had actual knowledge that tree limb would fall. (Per Wainwright, J., for a plurality of the court.) V.T.C.A., Civil Practice & Remedies Code §§ 75.002(c, d), 101.021, 101.025, 101.058.

**[25] States 360 🔑112.2(6)**

360 States
    360III Property, Contracts, and Liabilities
        360k112 Torts
           360k112.2 Nature of Act or Claim
               360k112.2(6) k. State parks, injuries in.
Most Cited Cases

Parks and Wildlife Department did not act with gross negligence, and thus, Department had sovereign immunity under Texas Tort Claims Act and recreational use statute, as to state park visitor's premises defect claim alleging she was seriously injured by falling tree limb at camp site; operations and maintenance specialist for state park provided affidavit opining that tree limb fell because of unpredictable and unforeseeable phenomenon known as "sudden branch drop syndrome," and there was no evidence that such syndrome created extreme risk of danger or that Department had actual subjective knowledge of that risk but nevertheless proceeded in conscious disregard for safety of others. V.T.C.A., Civil Practice & Remedies Code §§ 75.002(c, d), 101.021, 101.025, 101.058.

**[26] Municipal Corporations 268 🔑847**

268 Municipal Corporations
    268XII Torts
        268XII(E) Condition or Use of Public Buildings and Other Property
           268k847 k. Nature and grounds of liability of municipality as proprietor. Most Cited Cases

Tort Claims Act's scheme of a limited waiver of immunity from suit does not allow plaintiffs to circumvent the heightened standards of a premises defect claim by re-casting the same acts as a claim relating to the negligent condition or use of tangible property. V.T.C.A., Civil Practice & Remedies Code § 101.022.

**\*220** Howard G. Baldwin, First Asst. Atty. Gen., Jeffrey S. Boyd, Thompson & Knight, Harry W. Deckard, Office of Attorney General, Nelly R. Herrera, Office of Attorney General, Julie Caruthers Parsley, Public Utility Com'n, and Lisa Royce Eskow, Attorney General's Office, Austin, for Petitioner.

Emmett R. Harris, Law Office of R. Emmett Harris, Jerry Don Evans, Uvalde, TX, for Respondent.

Justice WAINWRIGHT delivered the opinion of the Court with respect to parts I., II., III.A., III.B., III.C.2., III.C.3., III.D., and IV., in which Chief Justice PHILLIPS, Justice HECHT, Justice OWEN, and Justice SMITH joined, and a plurality opinion with respect to Part III.C.1., in which Chief Justice PHILLIPS, Justice HECHT, and Justice SMITH joined.

Maria Miranda sustained injuries after a tree limb fell on her at Garner State Park in Uvalde County. Maria and her husband Ray sued the Texas Parks and Wildlife Department,[FN1] alleging negligence and **\*221** gross negligence. The Department filed a plea to the jurisdiction, to which it attached supporting evidence, and argued that sovereign immunity barred the Mirandas' claims. The trial court denied the plea to the jurisdiction and a unanimous court of appeals affirmed, holding that the trial court could not consider evidence in support of the plea because the Depart-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

ment did not allege that the Mirandas' pleadings were a sham for the purpose of wrongfully obtaining jurisdiction. 55 S.W.3d 648, 652.

> FN1. The Mirandas originally named the "Texas Department of Parks and Wildlife" as defendant but corrected the name to the "Texas Parks and Wildlife Department" in their third amended petition. Because the parties and lower courts retained the original style of the case, we retain that style but in our opinion refer to the Department by its correct name.

In accord with our decision in *Bland Independent School District v. Blue,* 34 S.W.3d 547 (Tex.2000), we hold that the trial court in this case was required to examine the evidence on which the parties relied to determine if a fact issue existed regarding the alleged gross negligence of the Department. Due to the unusual confluence of standards erected by the Legislature for waiver of sovereign immunity in the Texas Tort Claims Act and the recreational use statute, plaintiffs must plead gross negligence to establish subject matter jurisdiction. Further, if the plaintiffs' factual allegations are challenged with supporting evidence necessary to consideration of the plea to the jurisdiction, to avoid dismissal plaintiffs must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction. Because the Mirandas failed to raise a genuine issue of material fact regarding the alleged gross negligence of the Department, we conclude that the trial court lacked subject matter jurisdiction over this lawsuit. Therefore, we reverse the judgment of the court of appeals and render judgment dismissing the case.

### I. Factual and Procedural Background

The Mirandas' third amended petition contains the following allegations: In April 1998, the Mirandas and their family were camping and picnicking as paying guests at Garner State Park, owned and oper-

ated by the Texas Parks and Wildlife Department. The Mirandas asked a park ranger to recommend a campsite that would be safe for children. While standing next to a picnic table at the recommended campsite, a falling tree branch approximately twelve inches in diameter and fifteen feet long struck Maria on the head. As a result of the incident, Maria suffered extensive injuries to her head, neck, and spine. Ray suffered mental anguish and other damages related to his wife's injuries.

On May 7, 1999, the Mirandas filed suit against the Department, alleging negligence and later amended their suit to add gross negligence claims. With respect to the gross negligence claims, the Mirandas alleged that the Department "knew of the dangers of its falling tree branches, failed to inspect, failed to prune, failed to alleviate or remove the danger, and consciously and deliberately failed to warn Plaintiffs of the extremely dangerous condition," "knew that its property contained hidden, dangerous defect [sic] in that its tree branches which have not been inspected or pruned regularly fall," failed "to make safe the dangerous condition of its campsite trees," and "failed to warn or make reasonably safe the dangerous condition of which it was aware." In addition, the Mirandas alleged that the Department's conduct was "willful, wanton, or grossly negligent."

Over a year after the Mirandas filed suit and after the parties conducted discovery, the Department filed a plea to the jurisdiction**\*222** and motion to dismiss, arguing that the Mirandas' allegations were insufficient to invoke a waiver of the Department's sovereign immunity under the standard established in the Tort Claims Act and the recreational use statute.[FN2] TEX. CIV. PRAC. & REM. Code §§ 101.001–.109; *id.* §§ 75.001–.004. The Department attached evidence in support of its plea. The Mirandas filed a response to the Department's plea and their third amended original petition. In their response, the Mirandas stated that they relied on evidence attached to the Department's plea, including written discovery responses from the

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

Department and the deposition the Mirandas took of assistant park manager Craig VanBaarle. At the trial court's hearing on the Department's plea, the parties addressed the allegations in the Mirandas' third amended original petition. The next day, the trial court denied the plea. The Department filed this interlocutory appeal claiming that the trial court erroneously denied its plea to the jurisdiction and motion to dismiss. *Id.* § 51.014(a)(8). The court of appeals affirmed the trial court's denial of the plea, stating that the Mirandas pled a premises defect cause of action based on gross negligence under the recreational use statute. 55 S.W.3d at 652. The court of appeals rejected the Department's argument that there was no evidence to support gross negligence, holding that "the trial court was not authorized to inquire into the substance of the claims because the Department did not specifically allege that the Mirandas' allegations were pled merely as a sham for the purpose of wrongfully obtaining jurisdiction." *Id.* (citing Bland, 34 S.W.3d at 554 and *Rylander v. Caldwell,* 23 S.W.3d 132, 135 (Tex.App.-BAustin 2000, no pet.)).

> FN2. The Department also moved for summary judgment under Texas Rule of Civil Procedure 166a(b)-(c)and 166a(I). The trial court denied both motions, but the Department does not appeal the trial court's denial of either motion.

The Department contends that the court of appeals erred in relying solely upon the conclusory allegations found in the Mirandas' petition to affirm the trial courts denial of the Department's plea to the jurisdiction and in disregarding the Department's evidence submitted with its plea. Specifically, the Department contends that gross negligence is a jurisdictional prerequisite to the Mirandas' claims and that its evidence affirmatively negates gross negligence. The Department further argues that because the Mirandas failed to plead specific facts alleging gross negligence in their petition or introduce evidence to controvert the evidence in the Department's plea, they failed to es-

tablish subject matter jurisdiction to proceed with the litigation.

After originally dismissing the petition for want of jurisdiction, we granted the Department's petition on motion for rehearing. Before we consider the substantive issues presented, we first determine whether we have jurisdiction over this interlocutory appeal.

### II. Conflicts Jurisdiction

[1] When there is no dissent in the court of appeals, this Court has jurisdiction over interlocutory appeals only if the court of appeals' decision "holds differently" or conflicts with "a prior decision of another court of appeals or of the supreme court on a question of law material to a decision of the case." TEX. GOV'T CODE 22.001(a)(2); [FN3] **\*223***Schein v. Stromboe,* 102 S.W.3d 675, 687 (Tex.2002); *Tex. Natural Res. Conservation Comm'n v. White,* 46 S.W.3d 864, 867 (Tex.2001). Two decisions conflict for purposes of establishing our jurisdiction under section 22.001(a)(2) when the two cases are so similar that the decision in one case is necessarily conclusive of the decision in the other. *Schein,* 102 S.W.3d at 687–88; *White,* 46 S.W.3d at 867. "The conflict must be on the very question of law actually involved and determined, in respect of an issue in both cases, the test being whether one would operate to overrule the other in case they were both rendered by the same court." *Christy v. Williams,* 156 Tex. 555, 298 S.W.2d 565, 568–69 (1957) (citation omitted).

> FN3. The Legislature amended section 22.001 of the Government Code, effective September 1, 2003. Act of June 11, 2003, 78th Leg., R.S., Ch. 204 (codified as section 22.001(e) of the Texas Government Code). The amendment, which applies to actions filed on or after September 1, 2003 and does not govern our jurisdiction in this case, provides that "one court holds differently from another when there is inconsistency in their

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

respective decisions that should be clarified to remove unnecessary uncertainty in the law and unfairness to litigants."

The Department contends that this Court has jurisdiction over its interlocutory appeal because the court of appeals' decision here conflicts with our opinion in *Bland.* In *Bland,* we held that a trial court "may consider evidence *and must do so when necessary to resolve the jurisdictional issues raised.*" 34 S.W.3d at 555 (emphasis added). While recognizing that "a dilatory plea does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction," we explained that "because a court must not act without determining that it has subject-matter jurisdiction to do so, it should hear evidence as necessary to determine the issue before proceeding with the case." *Id.* at 554. "The court should, of course, confine itself to the evidence relevant to the jurisdictional issue." *Id.* at 555.

In *Bland,* we included examples of when relevant evidence may be considered in determining whether jurisdiction has been established. *See id.* at 554. We also observed that when the defendant contends that the amount in controversy falls below the trial court's jurisdictional limit, the trial court should limit its inquiry to the pleadings. *Id.* In that situation, we concluded, "the plaintiff's pleadings are determinative unless the defendant specifically alleges that the amount was pleaded merely as a sham for the purpose of wrongfully obtaining jurisdiction." *Id.*

[2][3] In this case, the court of appeals inaccurately stated and then misapplied *Bland's* holding. 55 S.W.3d at 650–52. The court of appeals held that an inquiry behind the factual allegations pled in support of subject matter jurisdiction was improper unless the Department specifically alleged that the Mirandas' allegations were pled merely as a sham to wrongfully obtain jurisdiction. *Id.* at 652. This conflicts with our holding in *Bland* that a court must consider evidence

when necessary to resolve the jurisdictional issues raised. 34 S.W.3d at 555; *see also County of Cameron v. Brown,* 80 S.W.3d 549, 556–57 (Tex.2002) (considering pleadings and limited jurisdictional evidence in evaluating forseeability element of premises defect claim under the Tort Claims Act); *Tex. Dep't of Criminal Justice v. Miller,* 51 S.W.3d 583, 587 (Tex.2001) (examining pleadings and limited jurisdictional evidence to determine whether plaintiff affirmatively demonstrated waiver of sovereign immunity); *White,* 46 S.W.3d at 868 (analyzing the facts alleged by the plaintiff and to the extent relevant, evidence submitted by the parties, in considering whether plaintiff stated a claim for injuries caused by "motor-driven equipment" under the Tort Claims Act). **\*224** In *Bland,* our preclusion of a trial court's inquiry behind the facts pled in determining subject matter jurisdiction was limited to the jurisdictional amount. 34 S.W.3d at 554. Even this bar could be lifted, and evidence of the jurisdictional amount considered, in circumstances in which an adverse party asserts that the amount in controversy was pled as a sham to obtain jurisdiction.[FN4] *Id.* That circumstance is not at issue here. Thus, the court of appeals' holding conflicts with the same question of law that we decided in Bland, and the opinions cannot stand together. *Schein,* 102 S.W.3d at 689. This conflict provides the basis for our jurisdiction to consider the merits of the plea. See Tex. Gov't Code § 22.001(a)(2).

> FN4. The plaintiff's allegations in the petition of the amount in controversy control for jurisdictional purposes unless the party challenging jurisdiction pleads and proves that the plaintiff's allegations of the amount in controversy were made fraudulently for the purpose of obtaining jurisdiction. See *Bland,* 34 S.W.3d at 554; *Cont'l Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 449 (Tex.1996); *Tidball v. Eichoff,* 66 Tex. 58, 17 S.W. 263, 263 (1886). We disapprove of courts of appeals' holdings that require a party to allege that pleadings, other than the jurisdictional

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

amount, are fraudulent in order for the trial court to consider evidence, when otherwise necessary, of whether it has jurisdiction over a case. *See, e.g., Sullivan v. Wilmer Hutchins Indep. Sch. Dist.,* 47 S.W.3d 529, 531 (Tex.App.-Dallas 2000), rev'd on other grounds, 51 S.W.3d 293 (Tex.2001); *Denton County v. Howard,* 22 S.W.3d 113, 117–18 (Tex.App.-Fort Worth 2000, no pet.); *Tex. Dep't of Mental Health & Mental Retardation v. Pearce,* 16 S.W.3d 456, 460 (Tex.App.-Waco 2000, pet. dism'd w.o.j.); *Tex. State Employees Union/CWA Local 6184 v. Tex. Workforce Comm'n,* 16 S.W.3d 61, 65, 66 (Tex.App.-Austin 2000, no pet.); *DalMac Constr. Co. v. Tex. A & M Univ.,* 35 S.W.3d 654, 655 n. 1 (Tex.App.-Austin 1999), rev'd on other grounds, sub nom. *Gen. Servs. Comm'n v. Little–Tex Insulation Co., Inc.,* 39 S.W.3d 591 (Tex.2001); *Univ. of Houston v. Elthon,* 9 S.W.3d 351, 356 (Tex.App.-Houston [14th Dist.] 1999, pet. dism'd w.o.j.); *Curbo v. State, Office of the Governor,* 998 S.W.2d 337, 341–42 (Tex.App.-Austin 1999, no pet.); *City of Saginaw v. Carter,* 996 S.W.2d 1, 3 (Tex.App.-Fort Worth 1999, pet. dism-d w.o.j.); *Bland Indep. Sch. Dist. v. Blue,* 989 S.W.2d 441, 447 (Tex.App.-Dallas 1999), rev'd, 34 S.W.3d 547 (Tex.2000).

**III. The Department's Plea to the Jurisdiction**
**A. Sovereign Immunity**

[4][5] In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit. *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999); *Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 405 (Tex.1997), *superseded by statute on other grounds as stated in Little–Tex Insulation Co.,* 39 S.W.3d at 593; *Duhart v. State,* 610 S.W.2d 740, 741 (Tex.1980); *Hosner v. DeYoung,* 1 Tex. 764, 769 (1847). The

Texas Tort Claims Act provides a limited waiver of sovereign immunity. TEX. CIV. PRAC. & REM.CODE §§ 101.001–.109. Sovereign immunity includes two distinct principles, immunity from suit and immunity from liability. *Jones,* 8 S.W.3d at 638; *Fed. Sign,* 951 S.W.2d at 405. Immunity from liability is an affirmative defense, while immunity from suit deprives a court of subject matter jurisdiction. *Jones,* 8 S.W.3d at 638; *Fed. Sign,* 951 S.W.2d at 405. The Tort Claims Act creates a unique statutory scheme in which the two immunities are co-extensive: "Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter." TEX. CIV. PRAC. & REM.CODE § 101.025(a); *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez,* 82 S.W.3d 322, 326 (Tex.2002); *Miller,* 51 S.W.3d at 587. Thus, the Department is immune from suit unless the Tort Claims **\*225** Act expressly waives immunity. *See* TEX. CIV. PRAC. & REM.CODE §§ 101.001(3)(A) (defining a governmental unit to include "all departments" of the state), 101.021, 101.025; *White,* 46 S.W.3d at 868.

The Tort Claims Act expressly waives sovereign immunity in three areas: " 'use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property.' " *Brown,* 80 S.W.3d at 554 (quoting *Tex. Dep't of Transp. v. Able,* 35 S.W.3d 608, 611 (Tex.2000)); *see* TEX. CIV. PRAC. & REM CODE § 101.021. Section 101.058 of the Tort Claims Act further modifies a governmental unit's waiver of immunity from suit by imposing the limitations of liability articulated in the recreational use statute. TEX. CIV. PRAC. & REM.CODE § 101.058 ("To the extent that Chapter 75 limits the liability of a governmental unit under circumstances in which the governmental unit would be liable under [the Tort Claims Act], Chapter 75 controls.").

The recreational use statute provides:

If an owner, lessee, or occupant of real property other than agricultural land gives permission to

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

another to enter the premises for recreation, the owner, lessee, or occupant, by giving the permission, does not:

(1) assure that the premises are safe for that purpose;

(2) owe to the person to whom permission is granted a greater degree of care than is owed to a trespasser on the premises; or

(3) assume responsibility or incur liability for any injury to any individual or property caused by any act of the person to whom permission is granted.

*Id.* § 75.002(c)(1)-(3). Recreational use includes camping and picnicking, the activities in which the Mirandas were engaged at the state park when Maria was injured. *Id.* § 75.001(3). As applied to a governmental unit, the recreational use statute limits liability even if the person pays to enter the premises. *Id.* § 75.003(c) (excepting governmental units from the chapter's exclusion of landowners who charge a fee for recreational use of land).

[6][7] The recreational use statute limits the Department's duty for premises defects to that which is owed a trespasser.[FN5] *Id.* The limited duty owed a trespasser is not to injure that person willfully, wantonly, or through gross negligence. *Tex. Utils. Elec. Co. v. Timmons,* 947 S.W.2d 191, 193 (Tex.1997). Therefore, a governmental unit waives sovereign immunity under the recreational use statute and the Tort Claims Act only if it is grossly negligent. TEX. CIV. PRAC. & REM.CODE § 75.002(c)-(d); *City of Bellmead v. Torres,* 89 S.W.3d 611, 613 (Tex.2002); *Timmons,* 947 S.W.2d at 193. "[G]ross negligence involves two components: (1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have

actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others." *Louisiana–Pacific Corp. v. Andrade,* 19 S.W.3d 245, 246 (Tex.1999) (citing *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 23 (Tex.1994)).

FN5. The recreational use statute does not limit the liability of an owner, lessee, or occupant "who has been grossly negligent or has acted with malicious intent or in bad faith." TEX. CIV. PRAC. & REM.CODE 75.002(d).

**B. Standard of Review**

[8][9] Sovereign immunity from suit defeats a trial court's subject matter jurisdiction**226** and thus is properly asserted in a plea to the jurisdiction. *Jones,* 8 S.W.3d at 637; *see also Hosner,* 1 Tex. at 769 (recognizing as appropriate procedure the challenge of a courts subject matter jurisdiction through a plea to the jurisdiction). The trial court must determine at its earliest opportunity whether it has the constitutional or statutory authority to decide the case before allowing the litigation to proceed. *Austin & N.W.R. Co. v. Cluck,* 97 Tex. 172, 77 S.W. 403, 405 (1903) ("[T]here can be no doubt that the courts of Texas must look to the Constitution of this state, the enactments of the Legislature, and the common law for their authority to proceed ....);" *see also State Bar of Tex. v. Gomez,* 891 S.W.2d 243, 245 (Tex.1994) ("As a general proposition, before a court may address the merits of any case, the court must have jurisdiction over the party or the property subject to the suit, jurisdiction over the subject matter, jurisdiction to enter the particular judgment, and capacity to act as a court.)"; *Gentry v. Bowser,* 2 Tex.Civ.App. 388, 21 S.W. 569, 570 (Fort Worth 1893, no writ) ("Certainly the court has the right to hear the necessary evidence to enable it to decide as to whether or not it has power to try the case it is sought to have it adjudicate, whether the allegations disclosing such want of jurisdiction appear in the petition of the plaintiff, or in the

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

plea to the jurisdiction by the defendant.").

[10][11][12] Whether a court has subject matter jurisdiction is a question of law. *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002). Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law reviewed *de novo.* Likewise, whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law. However, in some cases, disputed evidence of jurisdictional facts that also implicate the merits of the case may require resolution by the finder of fact. *See Gates v. Pitts,* 291 S.W. 948, 949 (Tex.Civ.App.-Amarillo 1927, no writ); *Gentry,* 21 S.W. at 570; *see also Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 363 n. 3 (1st Cir.2001) (observing that in certain situations, the predicate facts can be so inextricably linked to the merits of the controversy that the district court may "defer resolution of the jurisdictional issue until the time of trial"); *Cameron v. Children's Hosp. Med. Ctr.,* 131 F.3d 1167, 1170 (6th Cir.1997) ("[W]hether a district court has subject matter jurisdiction is a question for the court, not a jury, to decide, even if the determination requires making factual findings, unless the jurisdictional issue is inextricably bound to the merits of the case."); *Williamson v. Tucker,* 645 F.2d 404, 413 n. 6, 416 n. 10 (5th Cir.1981) (suggesting that a federal district court's role in determining jurisdictional facts may be more limited in cases in which the jurisdictional attack implicates the merits of plaintiff's cause of action). In this case, we address a plea to the jurisdiction in which undisputed evidence implicates both the subject matter jurisdiction of the court and the merits of the case.

[13][14][15] When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent.

*Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial courts jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs**\*227** should be afforded the opportunity to amend. *Brown,* 80 S.W.3d at 555. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.*

[16][17][18] However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *See Bland,* 34 S.W.3d at 555 (confining the evidentiary review to evidence that is relevant to the jurisdictional issue). When the consideration of a trial court's subject matter jurisdiction requires the examination of evidence, the trial court exercises its discretion in deciding whether the jurisdictional determination should be made at a preliminary hearing or await a fuller development of the case, mindful that this determination must be made as soon as practicable. *Id.* at 554. Then, in a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. The United States Supreme Court and all of the federal circuits have authorized federal district courts to consider evidence in deciding motions to dismiss for lack of subject matter jurisdiction. *See* FED.R.CIV.P. 12(b)(1); *Land v. Dollar,* 330 U.S. 731, 735 & n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209, (1947), *overruled by implication on other grounds by Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949) (observing that as a general rule, district courts have authority to inquire "into the facts as they exist" "by affidavits or otherwise" as well as the pleadings when determining whether the court has subject matter jurisdiction).[FN6] If the evidence**\*228** creates a fact question regarding the

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.

> FN6. *See, e.g., Harris v. P.A.M. Transp., Inc.,* 339 F.3d 635, 637 n. 4 (8th Cir.2003) (acknowledging district court's authority to consider matters outside the pleadings when subject matter jurisdiction is challenged under Rule 12(b)(1)); *Johnson v. Apna Ghar, Inc.,* 330 F.3d 999, 1001 (7th Cir.2003) (observing that when considering a motion for dismissal for lack of subject matter jurisdiction, " '[t]he district court may properly ... view whatever evidence has been submitted on the issue' " (quoting *Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 554 (7th Cir.1999))); *Sizova v. Nat'l Inst. of Standards & Tech.,* 282 F.3d 1320, 1324 (10th Cir.2002) (noting district court's " 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)' " (quoting *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir.1995))); *Valentin,* 254 F.3d at 363 (district court has "broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction"); *Ass'n of Am. Med. Colls. v. United States,* 217 F.3d 770, 778 (9th Cir.2000) (" 'district court obviously does not abuse its discretion by looking to ... extra-pleading material' " in deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction (quoting *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir.1989))); *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000) (allowing district court to "refer to evidence outside the pleadings" to resolve a

Rule 12(b)(1) motion); *Williams v. United States,* 50 F.3d 299, 304 (4th Cir.1995) ("In ruling on a Rule 12(b)(1) motion, the court may consider exhibits outside the pleadings."); *Moran v. Kingdom of Saudi Arabia,* 27 F.3d 169, 172 (5th Cir.1994) (acknowledging a trial court's "authority to consider evidence presented beyond the pleadings ... which may include considering affidavits, allowing further discovery, hearing oral testimony, conducting an evidentiary hearing"); *Herbert v. Nat'l Acad. of Sci.,* 974 F.2d 192, 197 (D.C.Cir.1992) ( "[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."); *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990) (noting that "substantial authority" acknowledges the trial court's freedom to consider disputed evidence when deciding a Rule 12(b)(1) motion) (citations omitted); *Gould, Inc. v. Pechiney Ugine Kuhlmann,* 853 F.2d 445, 451 (6th Cir.1988) ("[T]he district court may consider affidavits, allow discovery, hear oral testimony, order an evidentiary hearing, or even postpone its determination if the question of jurisdiction is intertwined with the merits."); *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977) (acknowledging that "substantial authority" allows trial courts to weigh the evidence of disputed facts when considering a Rule 12(b)(1) motion); see also 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1364, at 468–469 (2d ed.1990).

[19][20] We acknowledge that this standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c). We adhere to the fundamental precept that a court must not proceed

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

on the merits of a case until legitimate challenges to its jurisdiction have been decided. This standard accomplishes this goal and more. It also protects the interests of the state and the injured claimants in cases like this one, in which the determination of the subject matter jurisdiction of the court implicates the merits of the parties' cause of action. The standard allows the state in a timely manner to extricate itself from litigation if it is truly immune. However, by reserving for the fact finder the resolution of disputed jurisdictional facts that implicate the merits of the claim or defense, we preserve the parties' right to present the merits of their case at trial. Similar to the purpose of a plea to the jurisdiction, which is to defeat a cause of action for which the state has not waived sovereign immunity (usually before the state has incurred the full costs of litigation), the purpose of summary judgments in Texas is " 'to eliminate patently unmeritorious claims and untenable defenses.' " *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989) (quoting *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 n. 5 (Tex.1979)). By requiring the state to meet the summary judgment standard of proof in cases like this one, we protect the plaintiffs from having to "put on their case simply to establish jurisdiction." *Bland,* 34 S.W.3d at 554. Instead, after the state asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiffs, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue. *See Huckabee v. Time Warner Entm't Co. L.P.,* 19 S.W.3d 413, 420 (Tex.2000); *Phan Son Van v. Pena,* 990 S.W.2d 751, 753 (Tex.1999).

[21][22] Appellate courts reviewing a challenge to a trial court's subject matter jurisdiction review the trial court's ruling *de novo. IT–Davy,* 74 S.W.3d at 855. When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant. *See Sci. Spec-*

*trum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

[23] In his dissent JUSTICE JEFFERSON criticizes this standard of review as depriving plaintiffs responding to a plea of the procedural protections of a motion for summary judgment, including a twenty-**\*229** one day notice period or an adequate time to conduct discovery. TEX.R. CIV. P. 166a(c), 166a(i). However, the scheduling of a hearing of a plea to the jurisdiction is left to the discretion of the trial court, which is in the best position to evaluate the appropriate time frame for hearing a plea in any particular case. This procedure does not dramatically differ from that outlined in Texas Rule of Civil Procedure 120a governing special appearances. Although Rule 120a requires any affidavits to be used at a hearing on a special appearance to be served at least seven days before the hearing, it does not specify the length of a notice period and is therefore presumably subject to the three-day notice period of Rule 21. TEX.R. CIV. P. 21. Rule 120a allows the trial court to order a continuance and allow time for discovery if the development of the case requires it. Nothing prevents a trial court from doing the same with a plea to the jurisdiction where evidence is necessary.

Many other procedures in Texas practice ranging from a trial court's rulings on motions to strike intervention to the timing of a class certification decision to even the alteration of the summary judgment notice periods—also "depend[ ] ... upon the wise exercise of discretion by the trial court." *Union Carbide Corp. v. B.D. Moye,* 798 S.W.2d 792, 794 (Tex.1990) (Hecht, J., concurring); *see, e.g.,* TEX.R. CIV. P. 42(c)(1)(A) (directing a trial court to determine whether a suit may be maintained as a class action "at an early practicable time"); TEX.R. CIV. P. 166a(c) ("*Except on leave of court,* with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing.") (emphasis added); *Guaranty Fed. Sav.*

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

*Bank v. Horseshoe Operating Co.,* 793 S.W.2d 652, 657 (Tex.1990) (observing that the trial court has broad discretion in ruling on a motion to strike intervention, even though Rule 60 does not provide explicit guidelines for the scheduling of a hearing or the evaluation of evidence). Thus, the Texas civil procedural scheme entrusts many scheduling and procedural issues to the sound discretion of the trial court, subject to appellate review. Of course, Texas practice and rules also allow the parties to request additional time to prepare for certain hearings or to conduct discovery upon a showing of sufficient cause, and the court's ruling on such a motion is reviewed for an abuse of discretion. *See, e.g.,* TEX.R. CIV. P. 166a(g), 247, 251, 252. We note, also, that federal practice does not prescribe a procedure for the consideration of jurisdictional evidence but instead allows the district courts to tailor a method to suit the requirements of the cases before them. *Land,* 330 U.S. at 735 n. 4, 67 S.Ct. 1009; *Moran,* 27 F.3d at 172. In any event, the Mirandas do not complain that they had an inadequate opportunity to conduct sufficient discovery, nor did they request a continuance to do so.

**C. Waiver of Immunity Based on Premises Defects**
**1. The Mirandas' Pleadings**

[24] The Mirandas contend that their pleadings fall within the Tort Claims Act's waiver of immunity for both premises defects and injuries arising out of conditions or use of property. The Act provides that a state agency is liable for injury and death caused by "a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM.CODE § 101.021(2). The Mirandas' pleadings allege injuries caused by a falling tree limb, which falls under the definition of real property *i.e.,* " 'land, and generally whatever is erected or growing upon or affixed **\*230** to land.' " *San Antonio Area Found. v. Lang,* 35 S.W.3d 636, 640 (Tex.2000) (quoting *Chastain v. Koonce,* 700 S.W.2d 579, 584 (Tex.1985) (Gonzalez, J., concurring)). The Mirandas' allegation of an injury caused by a tree limb

falling on Maria Miranda constitutes an allegation of a condition or use of real property and is an allegation of a premises defect.

To state a claim under the recreational use statute, the Mirandas must allege sufficient facts to establish that the Department was grossly negligent. *See* TEX. CIV. PRAC. & REM.CODE §§ 75.002(c)-(d), 101.021, 101.025, 101.058. The Mirandas contend that both their allegations and the evidence presented on the plea establish claims of gross negligence. Looking first to the relevant factual allegations in the third amended petition, the Mirandas claim that (1) they specifically asked the Department's employee for a recommendation of a safe camping location; (2) at the campsite, Maria was struck by a falling tree branch that severely injured her; (3) the unpruned, uninspected tree branches created a dangerous, defective condition on the premises of which the Department was aware; (4) the Department knew of the dangers of its falling tree branches but failed to inspect, prune, alleviate the dangers, or otherwise make safe the dangerous conditions of its trees; (5) the Department consciously and deliberately failed to warn the Mirandas of the extremely dangerous condition; and (6) the Department's conduct was willful, wanton, or grossly negligent. A liberal construction of these allegations, as required, demonstrates that the Mirandas stated a claim against the Department for gross negligence. This conclusion should not be read as a suggestion that the Department has a duty to inspect every tree in each of the many parks that the Department manages. Instead, in this case, the Mirandas alleged sufficient facts to survive a plea to the jurisdiction based solely on the pleadings.

JUSTICE JEFFERSON'S dissent contends that the Mirandas' third amended petition does not state a claim for gross negligence because the allegations are conclusory and do not assert enough specific facts alleging that the Department had "actual subjective awareness of the risk involved and proceeded, nevertheless, with conscious indifference. He suggests that

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

to state a claim the Mirandas should have pled that the Department had actual knowledge that the branch would fall yet nevertheless instructed Maria to camp beneath it." 133 S.W.3d at 242. The pleading hurdle he seeks to erect would be groundbreaking, indeed, extending beyond current requirements under our rules of civil procedure and case law. Rules 45 and 47 require that the original pleadings give a short statement of the cause of action sufficient to give the opposing party fair notice of the claim involved. TEX.R. CIV. P. 45, 47; *Paramount Pipe & Supply Co., Inc. v. Muhr,* 749 S.W.2d 491, 494 (Tex.1988); *Castleberry v. Goolsby Bldg. Corp.,* 617 S.W.2d 665, 666 (Tex.1981). Rule 45 does not require that the plaintiff set out in his pleadings the evidence upon which he relies to establish his asserted cause of action. *Muhr,* 749 S.W.2d at 494–95. While it is clear that "[t]he party suing the governmental entity must establish the state's consent, which may be alleged either by reference to a statute or to express legislative permission," *Jones,* 8 S.W.3d at 638, and that "[m]ere reference to the Tort Claims Act does not establish the state's consent to be sued and thus is not enough to confer jurisdiction on the trial court," *Miller,* 51 S.W.3d at 587, the Mirandas' pleadings allege sufficient facts to bring their claims under the recreational use statute and the Tort Claims Act.

**\*231** Although facts alleged in a petition should not be improperly stretched to state a claim for gross negligence, JUSTICE JEFFERSON'S pleading standard for gross negligence would be virtually impossible to meet, even when grossly negligent conduct occurred, absent an admission of liability. His standard requires specific factual allegations in an original petition of what the defendant knew and thought *i.e.,* its state of mind. His pleading hurdle would require discovery into the very extrinsic facts which he bemoans consideration of in the plea to the jurisdiction. The Mirandas' third amended petition provided sufficient notice to ascertain the nature and basic issues of the controversy and the evidence that probably would be relevant.

JUSTICE JEFFERSON also contends that the Mirandas are entitled to replead. As a practical matter, the Mirandas have already repled to try to cure the "defects" that JUSTICE JEFFERSON raises. The Mirandas no doubt filed their third amended petition, in which allegations of gross negligence were raised for the first time in this lawsuit, in response to the Department's plea to the jurisdiction. However, because the Mirandas' third amended petition satisfies the notice pleading requirements of our procedural rules, the Mirandas do not need, nor are they entitled to, an opportunity to replead. *See* TEX.R. CIV. P. 47.

### 2. The Department's Evidence

[25] The Department challenged the Mirandas' pleadings and also submitted evidence to controvert the factual allegations supporting jurisdiction. We consider the relevant evidence submitted to decide this jurisdictional challenge. *See Bland,* 34 S.W.3d at 555. The Department attached the deposition testimony of Craig VanBaarle, the assistant park manager for Garner State Park, to its plea to the jurisdiction. VanBaarle testified that while the park normally inspects and maintains its trees, tree limbs are only pruned or trimmed if they appear to be dead. According to VanBaarle, the tree limb that fell on Maria was living. He testified that both dead and living tree limbs have fallen at various locations in the park. He testified that the park knows that tree limbs can fall and have fallen on approximately twenty occasions. However, no one had ever been injured by falling tree limbs. He also testified that the tree limb that injured Maria Miranda fell from fifty feet above the campsite and that the park employees would not have been able to see the limb clearly without climbing the tree even if the limb had been dead.

In addition, the Department attached the affidavit of Roy B. Inks, operations and maintenance specialist at Garner State Park. Inks' responsibilities included supervision of park maintenance including preservation and maintenance of trees at campsites. According

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

to his affidavit, Inks inspected the campsite after the accident. His examination of the tree and the fallen branch failed to reveal any indication that the branch was dead, decaying, or in need of pruning. Inks opined that there was no reason to conclude that the tree presented a dangerous or hazardous condition. Inks further opined that the branch that struck Maria "broke away from the tree as a result of an unpredictable and unforseeable phenomenon known as 'sudden branch drop syndrome.'" Inks explained that "[i]t would be rare for anyone to be able to predict which branches will fall and which ones will not" as a result of this phenomenon. The Mirandas cite the Department's evidence as proof that the Department knew about sudden branch drop syndrome and did nothing about it, thus establishing gross negligence. The Mirandas did not cite any controverting evidence in their response to the Department's plea.

**\*232** We first examine this evidence to determine whether it establishes that the Department was grossly negligent. We have observed that with regard to the subjective component of gross negligence, it is the defendant's state of mind whether the defendant knew about a peril but nevertheless acted in a way that demonstrated that he did not care about the consequences that separates ordinary negligence from gross negligence. *Louisiana–Pacific,* 19 S.W.3d at 246–47. We search the record for evidence that the Department's acts or omissions demonstrate that it did not care about the consequences to the Mirandas of a known extreme risk of danger. The Mirandas fail to point to any evidence, and the record contains no evidence, that shows that sudden branch drop syndrome constitutes an extreme risk of danger or that the Department had actual, subjective knowledge of that risk but nevertheless proceeded in conscious disregard for the safety of others. Nor is there any evidence that the Department could have taken any reasonable steps to minimize the dangers of an "unforseeable" and "unpredictable" phenomenon. We conclude that the evidence in the record establishes that the Department was not grossly negligent and that the Mirandas have

failed to raise a fact question regarding the Department's alleged gross negligence. The Mirandas fall short of satisfying the requirements for the Legislature's limited grant of a waiver of sovereign immunity from suit under the applicable statutes. Therefore, the trial court lacked subject matter jurisdiction.

### 3. Dissent

In his dissent, JUSTICE BRISTER takes the view that all pleas to jurisdiction based on immunity must take the form of two "standard" or "established" motions—either special exceptions or motions for summary judgment. 133 S.W.3d at 239–40. This approach might be appropriate, if we were starting from scratch. Given that we are not writing on a blank slate, that pleas have been a useful procedural vehicle in Texas for over 150 years, and that use of its counterpart (Federal Rule of Civil Procedure 12(b)(1)) to challenge subject matter jurisdiction in the federal judicial system when evidence is involved has been authorized by every federal circuit court, the Court declines to abolish by written opinion such pleas to the jurisdiction.

The plea to the jurisdiction was included in procedural rules promulgated by this Court in 1877 and has been used as a procedural vehicle to challenge subject matter jurisdiction in trial courts for over a century and a half. *See* TEX.R. CIV. P. 85; TEX. DIST. CT. R. 7, 47 Tex. 597, 617 (1877); *Hosner,* 1 Tex. at 769. In fact, as early as 1893, Texas courts indicated that evidentiary challenges to subject matter jurisdiction raised in pleas to the jurisdiction should be considered by trial courts. *See, e.g., Gates,* 291 S.W. at 949; *Gentry,* 21 S.W. at 570. With such a long lineage, one wonders why a plea to jurisdiction does not qualify as a "standard" or "established" motion. Perhaps a second mention in the Texas Rules of Civil Procedure would suffice.

We decide that refining the rules for considering a plea supported by evidence is a better approach than eliminating the motion. This approach is consistent

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

with precedent, is not disruptive to civil practice going back more than a century, and furthers the legislative purpose of timely adjudicating subject matter jurisdiction when the immunity and liability facts are the same.

There is a suggestion in the dissents that confirming in this opinion the authority of trial courts to consider evidence in a plea to the jurisdiction is unfair to the **\*233** parties in this case. The facts undercut this assertion. At the trial court, both parties relied on extrinsic evidence in briefing the plea, and both parties had extrinsic evidence on file with the court. Furthermore, plaintiffs expressly stated in their response to the plea that they were relying on "Defendants' responses to discovery requests, and upon the deposition of Craig VanBaarle [the Department's assistant park manager]." In fact, the Mirandas deposed VanBaarle months before the Department filed its plea. There is good reason why Plaintiffs have not argued unfair surprise. Given Texas precedents and the actions of the parties, there was none.

### D. Waiver of Immunity Based on Condition or Use of Tangible Property

[26] The Mirandas assert that their pleadings also state a cause of action for injuries resulting from a condition or use of tangible property. The allegations' in the Mirandas third amended petition concern only the Department's failure to act to reduce risks of falling tree limbs and failure to warn the Mirandas of the risk of falling tree limbs. These allegations comprise the elements of their premises defect claim. The Tort Claims Act's scheme of a limited waiver of immunity from suit does not allow plaintiffs to circumvent the heightened standards of a premises defect claim contained in section 101.022 by re-casting the same acts as a claim relating to the negligent condition or use of tangible property. *See State v. Tennison,* 509 S.W.2d 560, 562 (Tex.1974) (rejecting the argument that the Tort Claims Act "creates two entirely separate grounds of liability" for negligent use or condition of real property and premise defect, but instead inter-

preting the premises defect provision to further limit the waiver of immunity for negligent use or condition of real property). Other Texas courts have recognized that to allow plaintiffs to characterize premises defect claims as claims caused by the negligent condition or use of personal or real property would render the Legislature's heightened requirements for premises defect claims meaningless. *See, e.g., State v. Estate of Horton,* 4 S.W.3d 53, 54 (Tex.App.-Tyler 1999, no pet.) (stating that once a claim is determined to be a premises defect, the claimant is limited to the provisions delineated by the section on premises defects and may not assert a general negligence theory); *accord Laman v. Big Spring State Hosp.,* 970 S.W.2d 670, 671–72 (Tex.App.-Eastland 1998, pet. denied); *Univ. of Texas Pan Am. v. Valdez,* 869 S.W.2d 446, 450 (Tex.App.-Corpus Christi 1993, writ denied); *Hawley v. State Dep't of Highways and Pub. Transp.,* 830 S.W.2d 278, 281 (Tex.App.-Amarillo 1992, no writ). Accordingly, we conclude that the Mirandas have not established a cause of action under the Tort Claims Act for condition or use of tangible property separate from their premises defect claim.

### IV. Conclusion

Trial courts should decide dilatory pleas early at the pleading stage of litigation if possible. Here, the Legislature's mandate is not so simple. By statute, waiver of sovereign immunity for recreational use of the Department's premises can only be effected by a showing that it acted with gross negligence. Due to the standard erected (gross negligence), the determination of whether immunity was waived may require consideration of extrinsic facts after reasonable opportunity for targeted discovery. To preclude consideration of extrinsic facts when necessary to decide a plea to the jurisdiction would require a trial on the merits for many cases that do not need it, waste the resources of the courts and the parties in the case, and **\*234** involve state courts in rulings on the merits in cases over which they have no jurisdiction.

For the reasons explained, we conclude that the

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

Department established that it was not grossly negligent and that the Mirandas failed to raise a fact issue on that point. Thus, the trial court lacked subject matter jurisdiction over the action. The judgment of the court of appeals is reversed and the Mirandas' action dismissed for lack of subject matter jurisdiction.

Justice JEFFERSON filed a dissenting opinion.
Justice BRISTER filed a dissenting opinion, in which Justice O'NEILL and Justice SCHNEIDER joined.

Justice JEFFERSON, dissenting.

I dissent on two grounds. First, I do not agree that our precedent requires the Mirandas to produce evidence on all essential elements of their cause of action to establish the trial court's jurisdiction. The Court's holding is inconsistent with the distinction *Bland* draws between requiring the plaintiff to prove preliminary facts as a predicate to the trial court's power to entertain the merits, and requiring her to present the merits themselves on pain of dismissal. *Bland Indep. School Dist. v. Blue,* 34 S.W.3d 547 (Tex.2000).[FN1]

> FN1. I agree that the court of appeals' holding conflicts with *Bland* to the extent it holds that the trial court was prohibited from inquiring into the merits *because* "... the Department did not specifically allege that the Mirandas allegations were pled merely as a sham for the purpose of wrongfully obtaining jurisdiction." 55 S.W.3d 648, 652. *Bland* does not require that form of defensive pleading as the sole gateway through which the trial court may consider evidence. If that were so, we could not have held that there are limited circumstances in which, even in the absence of a defendant's pleading that the plaintiff's pleadings were a sham, the trial court is required to consider evidence. I depart from the Courts holding, however, that this is such a case.

Second, I cannot agree that the Mirandas' pleading has alleged sufficient facts to confer jurisdiction on the trial court. The Mirandas assert that the Department was aware that branches fall from trees, but consciously chose not to post warnings. Is that gross negligence? *No. Texas law does not impose on landowners a duty to warn trespassers about all conceivable dangers inherent in nature.* What if you add the allegation that the Department did not inspect or prune trees in Garner State Park? *The Court today makes clear that the Department has no duty to inspect trees in state parks.* 133 S.W.3d 242. *If there is no duty, a complaint about the failure to inspect or prune cannot possibly constitute a gross negligence pleading sufficient to invoke the courts jurisdiction.* But the Mirandas used the words "gross negligence." *Not enough. The Mirandas pleaded no facts even remotely suggesting the Department was aware the limb was about to fall, much less that it would injure Maria.*

## I
### *Bland,* in Proper Context

In deciding a plea to the jurisdiction, the trial court must consider evidence "when necessary to resolve the jurisdictional issues raised." *Bland,* 34 S.W.3d at 555. That quote must be read in context. We noted that when a defendant challenges an organization's standing to sue, the organization must present evidence of its nature and purpose before it can pursue its claims—a burden that "does not involve a significant inquiry into the substance of the claims." *Id.* at 554. Similarly, we **\*235** observed that a challenge to personal jurisdiction may "touch on the merits of the case," but is not aimed at "whether the defendant may be liable as alleged." *Id.* at 555. That theme—that a plaintiff is not required to litigate the merits to establish jurisdiction—was emphasized throughout our opinion. *Id.* at 554. We cautioned that "the proper function of a dilatory plea does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

to establish jurisdiction." *Id.*

I interpret *Bland* to mean that if a plea to the jurisdiction requires the trial court to wade deeply into the lawsuit's merits, it is not a valid plea. Yet today the Court immerses itself in the merits by reaching and deciding the ultimate issue in the case: "... *the evidence in the record establishes that the Department was not grossly negligent and that the Mirandas have failed to raise a fact question regarding the Department's alleged gross negligence.*" 133 S.W.3d at 221 (emphasis added). This holding misapplies *Bland* because it permits a defendant, on painfully short notice and before evidence has been developed, to force the plaintiff either to present evidence on the ultimate issue in the lawsuit, or lose the right to a jury trial on the merits.

The Court asserts that its standard "mirrors that of a summary judgment...." 133 S.W.3d 228. It is a poor reflection. Our summary judgment rule, unlike the Court's standard, contains procedural safeguards to ensure that the merits are not determined before the nonmovant has had an adequate time for discovery and an opportunity to respond. TEX.R. CIV. P. 166a(c) ("Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing. Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response."); 166a(i) ("After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense...."). As a uniform rule of procedure, the summary judgment rule leaves little to the imagination. A party whose claim is subject to adjudication on the merits is entitled to advance notice that it must present evidence and has an adequate opportunity to respond.[FN2] The procedure the Court adopts today, in contrast, will vary from county to county and from judge to judge.

FN2. The prevailing view appears to be that the timeline is strictly enforced. *See Luna v. Estate of Rodriguez,* 906 S.W.2d 576, 582 (Tex.App.-Austin 1995, no writ) ("Because summary judgment is a harsh remedy, we strictly construe the twenty-one day time limit."). *Accord Burns Motors, Inc. v. Gulf Ins. Co.,* 975 S.W.2d 810, 812 (Tex.App.-Corpus Christi 1998) *rev'd on other grounds,* 22 S.W.3d 417 (Tex.2000); *Martin v. Martin, Martin & Richards, Inc.,* 991 S.W.2d 1, 11 (Tex.App.-Fort Worth 1997) *rev'd on other grounds,* 989 S.W.2d 357 (Tex.1998); *Bell v. Showa Denko K.K.,* 899 S.W.2d 749, 759 (Tex.App.-Amarillo 1995, writ denied); *Stephens v. Turtle Creek Apartments, Ltd.,* 875 S.W.2d 25, 27 (Tex.App.-Houston [14th Dist.] 1994, no writ); *Wavell v. Caller–Times Pub. Co.,* 809 S.W.2d 633, 637 (Tex.App.-Corpus Christi 1991, writ denied); *Williams v. City of Angleton,* 724 S.W.2d 414, 417 (Tex.App.-Houston [1st Dist.] 1987, writ refd n.r.e.) *disapproved of on other grounds,* 876 S.W.2d 314 (Tex.1994).

The Court cites a number of federal decisions holding that when jurisdictional facts are intertwined with the merits, the trial court, in considering evidence, should either employ the standard applicable to a summary judgment or leave the jurisdictional**\*236** determination to trial. 133 S.W.3d 228; *see also* 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.30[3], at 12–37 to 12–38 (3d ed.2003). I do not disagree with that proposition, but it does not answer a fundamental question. This Court must decide what procedure governs *in Texas* when a plea to the jurisdiction is treated like a motion for summary judgment.

As JUSTICE BRISTER observes, no procedural

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

rule currently requires a trial court to advise the plaintiff that evidence may or must be presented in opposition to a plea to the jurisdiction, and no rule requires an adequate time for discovery before the court dismisses a case on the merits. 133 S.W.3d at 237. By default, then, trial courts will turn to Rule 21. TEX.R. CIV. P. 21. Presumably, if a trial court's ruling comports with Rule 21's minimum procedural requirements, a dismissal on the merits will survive any challenge based on an abuse of discretion standard. We should ask ourselves, then, whether the Rule's minimum requirements are adequate when the stakes are no less than a party's ability to present its case on the merits.

Under Rule 21, a plea to the jurisdiction may be served "three days before the time specified for the hearing unless otherwise provided by these rules or shortened by the court." *Id.* The rule does not mention an adverse party's right to present opposing evidence, which may explain why the Mirandas did not controvert the Department's plea with their own evidence. Compiling evidence of simple negligence on three days' notice—evidence that typically requires months of discovery—would be daunting in itself; but where, as here, a plaintiff must prove *gross negligence,* her ability to contest the Department's jurisdictional plea could be essentially non-existent.

The Mirandas had no reason to suspect that a summary judgment standard applied, requiring them to controvert the Department's evidence, because the Department's plea to the jurisdiction was subject to *Bland.* 34 S.W.3d at 554–55 (trial court not authorized to inquire so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction). At a minimum, I would hold that if a summary judgment standard applies, the trial court must so advise the parties and employ Rule 166a procedures.

## II
## Pleading Requirements Under Recreational Use

**Statute**

Rather than dismiss the case on the merits under a summary judgment standard, I would examine the pleadings to determine whether the Mirandas alleged facts sufficient to invoke the trial court's jurisdiction. *See Tex. Ass'n Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993) (plaintiff has burden to allege facts affirmatively demonstrating that the trial court has subject matter jurisdiction). In my view, the Mirandas' pleading falls short. Just as the Department owes no duty to warn trespassers that rattlesnakes may strike, it owes no duty to advise statutory trespassers that tree limbs fall in state parks. The Mirandas did not allege that the Department had so much as an inkling that the branch in question would fall. *See* TEX. CIV. PRAC. & REM CODE § 41.001(7); *see also Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 21–22 (Tex.1994) (explaining that gross negligence requires at a minimum that the defendant subjectively "have actual awareness of the extreme risk created by his or her conduct"). Rather, she alleges that the Department is generally aware that tree limbs fall, just as it must know of countless other natural **\*237** perils in state parks. Because the Department owes no duty to warn trespassers that forces of nature may cause random harm, I would hold, contrary to the Courts conclusion, that the Mirandas pleading does not invoke the trial courts jurisdiction.

The Mirandas did not allege that the Department was subjectively aware of any specific risk of injury. *See id.* Instead, they alleged:

Defendant knew of the dangers of its falling tree branches, failed to inspect, failed to prune, failed to alleviate or remove the danger, and consciously and deliberately failed to warn Plaintiffs of the extremely dangerous condition. Plaintiffs paid a campsite rental fee and specifically asked defendant to assign them a safe campsite. Defendant knew that its property contained hidden, dangerous defect (sic) in that its tree branches which have not been inspected or pruned regularly fall. Defendant did

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

not warn Plaintiffs of the hidden danger.

* * *

Plaintiffs would show the court that the occurrence made the basis of this suit and the resulting damages set out below were a direct and proximate result of Defendants negligence and its agents, servants, and officers, both of commission or omission, or both separately and collectively, in failing to properly maintain and inspect the campsite where Plaintiffs were injured, in failing to properly maintain the campsite in a safe condition and/or in failing to exercise ordinary care to protect Plaintiffs from the danger.

The Mirandas' gross negligence allegations stated:

Plaintiffs would show the court that the occurrences made the basis of this suit and the resulting injuries and damages set out below were a direct and proximate result of Defendants negligence in failing to make safe the dangerous condition of its campsite trees. Defendant's conduct was willful, wanton, or grossly negligent. Defendant failed to warn or make reasonably safe the dangerous condition of which it was aware and which Plaintiffs were unaware.

We can accept as true the Mirandas' allegation that the Department knew "its tree branches which have not been inspected or pruned regularly fall" and did not warn them about that contingency. That pleading, however, is of neutral value in a suit against the Department, which would owe no duty to warn unless it had actual knowledge that the branch would fall yet nevertheless instructed Maria to camp beneath it. *See id.; see also Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 785 (Tex.2001) (reiterating that gross negligence requires that "the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others."). Indeed, nowhere

in their pleadings do the Mirandas assert that the Department was aware of any risk associated with either the tree or the campsite below. Instead, they simply recast allegations of simple negligence into a claim for gross negligence.

We are bound, however, to analyze their claims in light of the policies underlying the recreational use statute. The statute exists to encourage landowners to allow the public to enjoy outdoor recreation on their property by limiting their liability for personal injury. *City of Bellmead v. Torres,* 89 S.W.3d 611, 617 (Tex.2002) (Hankinson, J. dissenting). To accomplish that objective, the Legislature has placed stringent parameters around the duty landowners owe "trespassers." *See* TEX. CIV. PRAC. & REM CODE § 75.002. The duty implicit in the Mirandas pleading, however, would require**\*238** the Department to warn all visitors of all perils commonly confronted by human interaction with nature. The scope of that proposed duty—obligating the Department to post warnings about all naturally occurring dangers—would create such an insurmountable practical and economic burden as to frustrate the legislatures intent to encourage landowners to make property available for recreational use.

Without allegations that the Department was aware that the limb would fall and nevertheless instructed Maria to camp below it, the Mirandas have not pleaded facts sufficient to proceed on their claim under the recreational use statute. I do not mean to suggest that merely because the injury is alleged to have resulted from a natural condition, the trial court is *thereby* deprived of jurisdiction. For example, the trial courts jurisdiction would be properly invoked by a pleading that the Department told the plaintiff it was safe to dive into waters the Department knew were so shallow that the dive posed a likelihood of serious injury, and that the plaintiff was severely injured diving in reliance on that assurance. Here, by contrast, the Mirandas did not plead that the Department directed Maria to a campsite knowing that an over-

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

hanging tree branch would likely fall on her and cause serious injury.

I understand fully the Courts holding that the Mirandas gave "fair notice" that they were pursuing a gross negligence claim. Fair-notice pleadings, however, must be viewed in this case through the prism of sovereign immunity, which deprives a court of jurisdiction unless the State has expressly waived immunity. *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999). The plaintiffs' pleadings against the State must affirmatively establish jurisdiction to overcome the contrary presumption. *Tex. Dep't of Crim. Justice v. Miller,* 51 S.W.3d 583, 587 (Tex.2001)(quoting *Tex. Assn. Bus.,* 852 S.W.2d at 446). The plaintiff must plead facts that, if true, would establish that the claims come within an express waiver of sovereign immunity before the trial court has jurisdiction to proceed. Just as mere reference to the Texas Tort Claims Act is insufficient to confer jurisdiction, *Miller,* 51 S.W.3d at 587, the trial court's jurisdiction is not satisfied by mere notice that the plaintiff is pursuing a gross negligence claim. The Mirandas have failed to affirmatively establish the court's jurisdiction because, even if all of the facts alleged in their pleading were true, those facts would not amount to gross negligence and therefore would not establish a waiver of sovereign immunity under the recreational use statute.

When a plaintiff fails to plead facts establishing jurisdiction, the issue is ordinarily one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex.2002). A court may grant a plea to the jurisdiction without affording an opportunity to amend only when the pleadings "affirmatively negate" the existence of jurisdiction, a circumstance not presented here. *Id.* In this case, however, the trial court overruled the Departments plea to the jurisdiction, concluding implicitly that the Mirandas pleadings were sufficient to confer jurisdiction, and the court of appeals affirmed. Consequently, the Mirandas

have never been placed on notice that they must cure the jurisdictional defect. It may well be that the facts will not lend themselves to a pleading that would confer jurisdiction, but we are not equipped to make that determination at this stage of the proceedings.

### III
### Conclusion

We need not and should not inquire into the ultimate merits of this case. I would **\*239** remand the cause to the trial court to give the Mirandas an opportunity to amend their petition to plead facts establishing jurisdiction.

Justice BRISTER, joined by Justice O'NEILL and Justice SCHNEIDER, dissenting.

The Legislature has provided that state park visitors are owed the same duty of care as trespassers;[FN1] thus, the plaintiffs in this case had to prove the Parks and Wildlife Department caused deliberate, wilful, or malicious injury.[FN2] All members of the Court agree that either their petition or their summary judgment evidence fails to do so, though we disagree which.

> FN1. TEX. CIV. PRAC. & REM.CODE §§ 75.002(c)(2), 75.003(g).

> FN2. *Id.* §§ 75.002(a)(2), 75.003, 101.022, 101.058.

The Mirandas alleged Maria suffered severe injuries caused by the Department's gross negligence; specifically, they alleged the Department knew tree limbs could fall, and failed to warn them of that fact or assign them a campsite where none would. I have grave doubts whether such facts could possibly constitute gross negligence—natural conditions usually cannot be unreasonably dangerous (much less wanton),[FN3] and trespassers do not have to be warned of what everyone should know.[FN4] Nor does the Parks Department appear to have a duty to provide campsites safely away from trees;[FN5] indeed, one has to ask

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

whether anyone would want to use such "parks" if it did.[FN6]

FN3. *See Johnson County Sheriff's Posse, Inc. v. Endsley,* 926 S.W.2d 284, 287 (Tex.1996) (holding rock in dirt arena did not create unreasonably dangerous condition).

FN4. *Cf. County of Cameron v. Brown,* 80 S.W.3d 549, 558 (Tex.2002) (holding darkness caused by failed streetlights was not open and obvious hazard precluding recovery by licensee because it could not be seen from entrance to causeway).

FN5. *See* TEX. CIV. PRAC. & REM.CODE § 75.002(c)(1) (providing landowners who grant permission for recreational use do not assure that the premises are safe for that purpose).

FN6. *See Tex. Home Mgmt., Inc. v. Peavy,* 89 S.W.3d 30, 33 (Tex.2002) (holding question of legal duty is question of law requiring balance of factors such as risk, utility, consequences of the duty, and other relevant individual and social interests).

Faced with what appears to be an insupportable allegation like the gross-negligence pleading here, litigants normally have two options: (1) demand more specific facts by special exception, or (2) demand more specific facts by motion for summary judgment. Instead, the Department filed three motions, including a "plea to the jurisdiction"—the white elephant [FN7] of current Texas motion practice. By use of this plea, the Department was able to force the trial judge (and ultimately this Court) to make an ad hoc decision whether our jurisdiction should be determined by reference to pleadings or evidence. Because it should be litigants rather than judges making that choice, I respectfully dissent.

FN7. The OXFORD ENGLISH DICTIONARY (1989) defines "white elephant" as:

a. A rare albino variety of elephant which is highly venerated in some Asian countries. b. *fig.* A burdensome or costly possession (from the story that the kings of Siam were accustomed to make a present of one of these animals to courtiers who had rendered themselves obnoxious, in order to ruin the recipient by the cost of its maintenance). Also, an object, scheme, etc., considered to be without use or value.

Pleas to the jurisdiction are nothing new. In his *Commentaries on the Laws of England,* Blackstone lists them as a category of dilatory pleas that (along with pleas of disability and abatement) deny the **\*240** propriety of the remedy rather than the injury.[FN8] One hundred years ago, this Court addressed a variety of matters as pleas to the jurisdiction, including objections based on personal jurisdiction,[FN9] subject-matter jurisdiction,[FN10] dominant jurisdiction,[FN11] venue,[FN12] capacity,[FN13] and conflict of laws.[FN14]

FN8. 3 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 301–03 (1768).

FN9. *See, e.g., Rice v. Peteet,* 66 Tex. 568, 1 S.W. 657, 657 (1886).

FN10. *See, e.g., McIlhenny Co. v. Todd,* 71 Tex. 400, 9 S.W. 445, 446 (1888) (objecting that amount at issue fell below court's jurisdictional limits); *Juneman v. Franklin,* 67 Tex. 411, 3 S.W. 562, 562 (1887) (objecting that forcible entry and detainer action was not filed in justice court).

FN11. *See, e.g., Cleveland v. Ward,* 116 Tex.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

1, 285 S.W. 1063, 1072 (1926), *disapproved on other grounds, Walker v. Packer,* 827 S.W.2d 833, 842 (Tex.1992); *Grathaus v. Witte,* 72 Tex. 124, 11 S.W. 1032, 1032 (1888).

FN12. *See, e.g., Pecos & N.T. Ry. Co. v. Thompson,* 106 Tex. 456, 167 S.W. 801, 801 (1914); *Baines v. Jemison,* 86 Tex. 118, 23 S.W. 639, 640 (1893); *Watson v. Baker,* 67 Tex. 48, 2 S.W. 375, 375–76 (1886).

FN13. *See, e.g., Brown v. Gay,* 76 Tex. 444, 13 S.W. 472, 472–73 (1890).

FN14. *See, e.g., Tex. & P. Ry. Co. v. Richards,* 68 Tex. 375, 4 S.W. 627, 629 (1887).

Since then, there has been a steady shift away from the common-law forms of pleading to the more specific motion practice set out in the rules of civil procedure. For example, a defendant objecting to venue today must file a motion to transfer that complies with the form requirements of Rule 86 and the deadlines of Rule 87.[FN15] Similarly, a nonresident objecting to personal jurisdiction must file a special appearance that meets the requirements of Rule 120a.[FN16] In substance, these motions could still be categorized as "pleas to the jurisdiction;" but in form, they must comply with the current rules of civil procedure.

FN15. TEX.R. CIV. PROC. 86 (requiring unverified motion that is filed first and states counties of improper, proper, or mandatory venue); TEX.R. CIV. PROC. 87 (requiring 45–days' notice of hearing, 30–days' notice of respondents affidavits, and 7–days' notice of movants affidavits).

FN16. TEX.R. CIV. PROC. 120a (requiring sworn motion that is filed and heard before any other matter, with affidavits served seven days before the hearing).

Case law as well as rule amendments have contributed to the trend away from the common-law plea to the jurisdiction. For example, we have held that a complaint based on dominant jurisdiction in another court must be raised by plea in abatement in the second court, or it is waived.[FN17] Again, though this complaint could be characterized as a plea to the jurisdiction, a more specific motion and procedure has rendered the common-law term obsolete.

FN17. *Mower v. Boyer,* 811 S.W.2d 560, 563 n. 2 (Tex.1991); *Wyatt v. Shaw Plumbing Co.,* 760 S.W.2d 245, 247 (Tex.1988).

But pleas to the jurisdiction have enjoyed a recent resurgence in the field of governmental immunity. For many years, governmental units were not very particular about the vehicle for asserting immunity, raising it sometimes by—

• general demurrer; [FN18]

FN18. *See, e.g., State v. Hale,* 136 Tex. 29, 146 S.W.2d 731, 735 (1941); *Herring v. Houston Nat'l Exch. Bank,* 113 Tex. 264, 253 S.W. 813, 814 (1923); *Stephens v. Tex. & P. Ry. Co.,* 100 Tex. 177, 97 S.W. 309, 310 (1906); *Thomson v. Baker,* 90 Tex. 163, 38 S.W. 21, 22 (1896).

• special demurrer; [FN19]

FN19. *See, e.g., Thomson,* 38 S.W. at 22.

**\*241** • special exception; [FN20]

FN20. *See, e.g., Duhart v. State,* 610 S.W.2d 740, 741 (Tex.1980); *Dir. of Dep't of Agric.*

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

*& Env't v. Printing Indus. Ass'n of Tex.,* 600 S.W.2d 264, 265 (Tex.1980); *Stephens,* 97 S.W. at 310.

• plea to the jurisdiction; [FN21]

FN21. *See, e.g., Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 403 (Tex.1997), *superseded by statute on other grounds as stated in Gen. Servs. Comm'n v. Little–Tex Insulation Co., Inc.,* 39 S.W.3d 591, 593 (Tex.2001); *Lowe v. Tex. Tech Univ.,* 540 S.W.2d 297, 298 (Tex.1976); *State v. Lain,* 162 Tex. 549, 349 S.W.2d 579, 580 (1961); *Griffin v. Hawn,* 161 Tex. 422, 341 S.W.2d 151, 152 (1960); *Short v. W.T. Carter & Bro.,* 133 Tex. 202, 126 S.W.2d 953, 955 (1938).

• plea in abatement; [FN22] or

FN22. *See, e.g., Duhart v. State,* 610 S.W.2d 740, 741 (Tex.1980); *Lowe,* 540 S.W.2d at 298; *Griffin v. Hawn,* 161 Tex. 422, 341 S.W.2d 151, 152 (1960); *W.D. Haden Co. v. Dodgen,* 158 Tex. 74, 308 S.W.2d 838, 838 (1958); *Cobb v. Harrington,* 144 Tex. 360, 190 S.W.2d 709, 710 (1945); *Short v. W.T. Carter & Bro.,* 133 Tex. 202, 126 S.W.2d 953, 955 (1938).

• summary judgment.[FN23]

FN23. *See, e.g., Overton Mem'l Hosp. v. McGuire,* 518 S.W.2d 528, 528 (Tex.1975) (per curiam); *Tex. Dept. of Corr. v. Herring,* 513 S.W.2d 6, 7 (Tex.1974).

In 1997, the Legislature amended the Civil Practices and Remedies Code to allow interlocutory appeals "from an interlocutory order ... [that] grants or denies a plea to the jurisdiction by a governmental unit." [FN24] We have held this section must be strictly

construed, as it is an exception to the general rule that interlocutory orders are not appealable.[FN25]

FN24. TEX. CIV. PRAC. & REM.CODE § 51.014(a)(8).

FN25. *Bally Total Fitness Corp. v. Jackson,* 53 S.W.3d 352, 355 (Tex.2001).

As a result, almost overnight a "plea to the jurisdiction" became the motion of choice for asserting immunity; [FN26] indeed, some appellate courts have refused to consider any other.[FN27] This development exalts form over substance. For example, before the Legislature's amendment, one governmental entity unsuccessfully asserted immunity by means of a summary judgment and special exceptions; immediately after the effective date, the entity filed the same objection as a "plea to jurisdiction"—and prevailed. [FN28]

FN26. *See, e.g., Texas Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 852 (Tex.2002); *Little–Tex Insulation Co., Inc.,* 39 S.W.3d at 594; *McClain v. Univ. of Tex. Health Ctr. at Tyler,* 119 S.W.3d 4, 5 (Tex.App.-Tyler 2000, pet. denied); *Dallas County Cmty. Coll. Dist. v. Bolton,* 990 S.W.2d 465, 466 (Tex.App.-Dallas 1999, no pet.); *Alamo Cmty. Coll. Dist. v. Obayashi Corp.,* 980 S.W.2d 745, 746 (Tex.App.-San Antonio 1998, pet. denied); *Tex. Parks & Wildlife Dept. v. Garrett Place, Inc.,* 972 S.W.2d 140, 142 (Tex.App.-Dallas 1998, no pet.); *Tex. Parks & Wildlife Dep't v. Callaway,* 971 S.W.2d 145, 147 (Tex.App.-Austin 1998, no pet.).

FN27. *See, e.g., Thomas v. Long,* 97 S.W.3d 300, 302–03 (Tex. App.-Houston [14th Dist.] 2003, pet. granted) (refusing interlocutory appeal of denial of summary judgment based

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

on lack of subject matter jurisdiction as no order granted or denied a plea to the jurisdiction); *Baylor Coll. of Med. v. Tate,* 77 S.W.3d 467, 472 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (refusing interlocutory appeal because trial court's order was summary judgment based on immunity from liability rather than plea to the jurisdiction based on immunity from suit).

> FN28. *Lamar Univ. v. Doe,* 971 S.W.2d 191, 193 (Tex.App.-Beaumont 1998, no pet.).

For several reasons, we should put a stop to this resurgence of common-law pleadings in immunity cases. First, it is fraught with uncertainty. Despite hundreds of haphazardly-numbered rules, only once do the Texas Rules of Civil Procedure mention pleas to the jurisdiction, and then only in a rule regarding permissible parts of an *answer* rather than permissible motions.**242** [FN29] There is *no* rule—no case and no code—that specifies the form, deadlines, or evidentiary requirements for pleas to the jurisdiction generally.

> FN29. TEX.R. CIV. PROC. 85:
>
> > The original answer may consist of motions to transfer venue, *pleas to the jurisdiction,* in abatement, or any other dilatory pleas; of special exceptions, of general denial, and any defense by way of avoidance or estoppel, and it may present a cross-action, which to that extent will place defendant in the attitude of a plaintiff. Matters in avoidance and estoppel may be stated together, or in several special pleas, each presenting a distinct defense, and numbered so as to admit of separate issues to be formed on them.
>
> > (Emphasis added).

In *Bland Independent School District v. Blue,*[FN30] we attempted to bring some order to this resurgence by setting guidelines for handling such pleas. But due to the broad range of issues a plea to the jurisdiction might address, that was not easy to do. As we pointed out in several examples, consideration of some pleas should not go beyond the pleadings, but consideration of others must.[FN31] When necessary, trial courts must consider evidence relating to the jurisdictional facts, but should not consider evidence relating to the merits,[FN32] even though the two are sometimes the same. Nor could we be specific about when pleas should be decided, leaving it to the trial court's discretion whether to address the issue at a preliminary hearing or after fuller development of the merits.[FN33]

> FN30. 34 S.W.3d 547 (Tex.2000).
>
> FN31. *Id.* at 555.
>
> FN32. *Id.*
>
> FN33. *Id.* at 554.

The examples given in *Bland* certainly provided more procedural guidance than existed before. But without considering all possible pleas to the jurisdiction, we could not prescribe more definitive rules; until all those disputes come before us, we should probably not try. In the meantime, it will often be unclear *what* the trial court should consider, or *when* it should do so, until the plea is decided (or perhaps even later on appeal). To some observers, this may appear to be drawing up the rules after the game has been played.[FN34]

> FN34. *See id.* at 555 (rejecting plaintiffs' demand for remand for full evidentiary hearing because they did not contest evidence at original plea to the jurisdiction hearing).

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

From almost any vantage point, the resurgence of pleas to the jurisdiction creates problems in immunity cases. For governmental entities, it results in unnecessary repetition. In this case, the Parks and Wildlife Department could not be sure whether the trial court would consider evidence necessary, so it filed three motions—a no-evidence motion for summary judgment, a traditional motion for summary judgment, and a plea to the jurisdiction. But as counsel for the Department admitted at the hearing, "all three relate to the same set of issues."

Such repetition is unnecessary for interlocutory review. Nothing in the Civil Practice and Remedies Code suggests the Legislature intended to specify a *form* motions had to take for that purpose, rather than their *substance.* Indeed, the opposite is suggested by the Legislature's selection of a common-law term applicable to a broad category of motions, rather than a term pointing to any particular motion in the current rules of civil procedure. It has long been our practice to consider the substance of motions rather than their form; [FN35] nothing in the legislative history **\*243** suggests the interlocutory appeal statute was intended to be an exception to that rule.

> FN35. *See, e.g., Speer v. Stover,* 685 S.W.2d 22, 23 (Tex.1985) (per curiam) (considering plea to jurisdiction even though misnamed plea in abatement); *see also* TEX.R. CIV. PROC. 71 (stating "[w]hen a party has mistakenly designated any plea or pleading, the court, if justice so requires, shall treat the plea or pleading as if it had been properly designated"). Some courts themselves appear to use the possible terms for immunity motions interchangeably. *See, e.g., State v. Executive Condos., Inc.,* 673 S.W.2d 330, 331–32 (Tex.App.-Corpus Christi 1984, writ refused n.r.e.) (referring to immunity motion as "plea to the jurisdiction" when it was filed, "plea in abatement" when it was denied, and

"motion to dismiss" when it was reversed).

For plaintiffs, the problems created by the resurgence of pleas to the jurisdiction are even more acute. Defendants uncertain about how to present an immunity defense can simply try a little of everything; plaintiffs, by contrast, may lose their case if they guess wrong. In this case, for example, the Mirandas did not attach any evidence to their responses to the various motions. The lower courts agreed they did not need to, but if we hold otherwise, then the Mirandas will learn three years too late that they should have presented evidence at the jurisdictional hearing.

From a trial judge's vantage point, pleas to the jurisdiction create uncertainty, not just about the rules to be applied but about the role of the judge. This case is one of many in which immunity from suit under the Texas Tort Claims Act is coextensive with immunity from liability.[FN36] As a result, deciding the jurisdictional question bears a strong resemblance to deciding the merits.

> FN36. *See* TEX. CIV. PRAC. & REM.CODE § 101.025(a) (waiving immunity to suit to the extent of liability under chapter 101), § 101.021 (creating governmental liability for specified acts resulting from negligence, premises conditions, and use of property to the extent private persons would be liable).

In these circumstances, it is difficult for Texas judges to detect the line between jurisdictional questions they *must* decide before going further and liability questions they *cannot* decide without usurping the function of the jury. Here, the Mirandas convinced the lower courts that whether their pleadings were supported by any evidence was a question solely for the jury. But that is not true if they raised no material facts that could establish a waiver of immunity.[FN37]

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

FN37. *See* TEX.R. CIV. PROC. 166a(c).

By contrast, returning to standard motions as the vehicles for asserting governmental immunity would clarify what the jurisdictional hearing will be like and simplify many procedural questions. For decades, governmental units have asserted immunity by special exceptions [FN38] or motions for summary judgment.[FN39] In many cases (including this one), they still do so today.[FN40] Relying on standard procedural **\*244** motions would eliminate many questions about deadlines, forms, and evidence. It would make government entities rather than trial judges decide whether the jurisdictional challenge is directed to the plaintiff's pleadings or the underlying facts. If a governmental unit chooses wrong,[FN41] it may always try again. But the plaintiff is not required to guess what rules or procedures the trial judge might apply.

FN38. *See, e.g., John G. & Marie Stella Kenedy Mem'l Found. v. Mauro,* 921 S.W.2d 278, 281 (Tex.App.-Corpus Christi 1995, writ denied); *Tex. Dep't of Corr. v. Winters,* 765 S.W.2d 531, 532 (Tex.App.-Beaumont 1989, writ denied); *Martine v. Bd. of Regents, State Senior Colleges of Tex.,* 578 S.W.2d 465, 469 (Tex.Civ.App.-Tyler 1979, no writ); *Harrison v. Bunnell,* 420 S.W.2d 777, 778 (Tex.Civ.App.-Austin 1967, no writ); *State v. McDonald,* 220 S.W.2d 732, 732 (Tex.Civ.App.-Texarkana 1949, writ refused); *Porter v. Langley,* 155 S.W. 1042, 1043 (Tex.Civ.App.-Dallas 1913, writ refused).

FN39. *See, e.g., Ho v. Univ. of Tex. at Arlington,* 984 S.W.2d 672, 681–83 (Tex.App.-Amarillo 1998, pet. denied); *Russell v. Tex. Dep't of Human Res.,* 746 S.W.2d 510, 513 (Tex.App.-Texarkana 1988, writ denied); *Gay v. State,* 730 S.W.2d 154, 159 (Tex.App.-Amarillo 1987, no writ).

FN40. *See, e.g., Dallas Area Rapid Transit v. Whitley,* 104 S.W.3d 540, 542 (Tex.2003) (sovereign immunity asserted by plea to the jurisdiction and motion for summary judgment); *County of Cameron v. Brown,* 80 S.W.3d 549, 553 (Tex.2002) (sovereign immunity asserted by plea to the jurisdiction and special exceptions).

FN41. *See, e.g., Tex. Dep't of Corr. v. Herring,* 513 S.W.2d 6, 9–10 (Tex.1974) (reversing summary judgment based on immunity as plaintiff was not allowed opportunity to replead).

Returning to pre-resurgence practice would not change the incidence of governmental immunity. As we recently held, if a plea to the jurisdiction is directed only to the plaintiff's pleadings, we construe them in the plaintiff's favor and allow an opportunity to amend unless they affirmatively negate jurisdiction.[FN42] This is, of course, identical to the rules governing special exceptions.[FN43] And when governmental entities wish to rely on evidence, any questions of fact that affect jurisdictional issues must be settled by the jury,[FN44] the same standard that applies to summary judgments.

FN42. *Cameron,* 80 S.W.3d at 555; *Tex. Dep't of Transp. v. Ramirez,* 74 S.W.3d 864, 867 (Tex.2002).

FN43. *See Brown,* 80 S.W.3d at 559; *Herring,* 513 S.W.2d at 9–10.

FN44. *See, e.g., Brown,* 80 S.W.3d at 556 (holding foreseeability issue raised by plea to the jurisdiction presented fact question for jury).

Nor can it be argued that courts exceed their jurisdiction by requiring immunity pleas to be brought

133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386
**(Cite as: 133 S.W.3d 217)**

in standard motions according to settled rules of procedure. As we stated shortly after the rules of civil procedure were enacted:

> Since [the trial court] had the power to sustain the demurrers and grant the motions, it had the power to overrule them. The jurisdiction of a court must be determined, not upon the court's action in deciding the questions presented in a case, but upon the character of the case itself. Jurisdiction is the power to decide, and not merely the power to decide correctly.[FN45]

> FN45. *Martin v. Sheppard,* 145 Tex. 639, 201 S.W.2d 810, 812–13 (1947).

Of course, returning to established procedural motions will not remove all difficulties with issues of governmental immunity. Judges of goodwill and intellect will still disagree about whether a particular pleading is sufficiently specific, as JUSTICES JEFFERSON and WAINWRIGHT do here. Governmental units may incur unnecessary discovery costs and delays unless judges agree to hear summary judgment motions on jurisdictional matters as early in the case as they might hear a plea to the jurisdiction. And appellate courts must still distinguish between immunity from suit (as to which an interlocutory appeal will lie) and immunity from liability (as to which it will not).[FN46] But simplification of our procedures should not be rejected because we cannot simplify everything.

> FN46. *See Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638–39 (Tex.1999).

If the Texas Legislature mandated interlocutory review of "pleas in bar asserting limitations" (a development devoutly to be wished against), few would suggest such review was available only for motions entitled "Plea in Bar" instead of the summary judgment or special exception forms that have long been used to raise such issues.[FN47] We should stop making the assumption**\*245** that the Legislature intended something different for pleas of governmental immunity.

> FN47. *See Baker v. Monsanto Co.,* 111 S.W.3d 158, 159 (Tex.2003) (per curiam) (asserting limitations by summary judgment); *City of Port Arthur v. Tillman,* 398 S.W.2d 750, 751 (Tex.1965) (asserting limitations by special exception).

Accordingly, I would reverse and remand for (1) the Parks and Wildlife Department to specify whether its plea to the jurisdiction is a challenge to the pleadings (by special exception) or the evidence (by summary judgment), (2) the Mirandas to respond in compliance with the rules of civil procedure, and (3) the lower courts to address the governmental immunity issue in accordance with the usual rules governing disposition and review of those motions.

Tex.,2004.
Texas Dept. of Parks and Wildlife v. Miranda
133 S.W.3d 217, 47 Tex. Sup. Ct. J. 386

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

685 S.W.2d 682
**(Cite as: 685 S.W.2d 682)**

▷

Court of Appeals of Texas,
San Antonio.

CITY OF SAN ANTONIO, Appellant,
v.
Joyce Perez HIGLE, Appellee.

No. 04–82–00228–CV.
Feb. 29, 1984.
Rehearing Denied Jan. 31, 1985.
Second Rehearing Denied Feb. 25, 1985.

Suit was brought against city in which damages were sought for injuries sustained by plaintiff when she was shot in the hand by a city police officer. The 73rd District Court, Bexar County, James C. Onion, J., entered judgment in favor of plaintiff, and city appealed. The Court of Appeals, Cadena, C.J., held that: (1) admission of plaintiff's testimony that a police officer had told her that "they" would take care of her medical expenses did not constitute reversible error; (2) city could not rely upon defense of governmental immunity; (3) evidence amply supported an award for loss-of-earning capacity; and (4) trial court committed error in disregarding jury finding that plaintiff was guilty of 25% causative negligence and awarding her the full amount of damages found by jury.

Reformed and affirmed.

West Headnotes

**[1] Appeal and Error 30 ☞1170.1**

30 Appeal and Error

30XVII Determination and Disposition of Cause
30XVII(D) Reversal
30k1170 Technical, Formal, or Trivial Defects or Errors
30k1170.1 k. In general. Most Cited Cases

Court of Appeals is not permitted to reverse a judgment because of error committed in course of trial unless it is of the opinion that error complained of amounted to such a denial of rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Vernon's Ann.Texas Rules Civ.Proc., Rule 434.

**[2] Appeal and Error 30 ☞1170.1**

30 Appeal and Error
30XVII Determination and Disposition of Cause
30XVII(D) Reversal
30k1170 Technical, Formal, or Trivial Defects or Errors
30k1170.1 k. In general. Most Cited Cases

To determine whether an error was reasonably calculated to cause and probably did cause rendition of improper judgment, reviewing court must consider the entire record. Vernon's Ann.Texas Rules Civ.Proc., Rule 434.

**[3] Appeal and Error 30 ☞1053(1)**

30 Appeal and Error
30XVI Review
30XVI(J) Harmless Error
30XVI(J)10 Admission of Evidence
30k1053 Error Cured by Withdrawal, Striking Out, or Instructions to Jury

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

685 S.W.2d 682
**(Cite as: 685 S.W.2d 682)**

30k1053(1) k. By withdrawal or striking out. Most Cited Cases

**Appeal and Error 30 ☞1053(3)**

30 Appeal and Error
    30XVI Review
        30XVI(J) Harmless Error
            30XVI(J)10 Admission of Evidence
                30k1053 Error Cured by Withdrawal, Striking Out, or Instructions to Jury
                    30k1053(3) k. By instructions in general. Most Cited Cases

Whatever harmful inferences might have been drawn from instances in which statements were made regarding payment by defendants of plaintiff's medical bills were of the curable type and were removed by court's instructions in the first two instances and by withdrawal of the question in the third instance.

**[4] Evidence 157 ☞245**

157 Evidence
    157VII Admissions
        157VII(D) By Agents or Other Representatives
            157k245 k. Public officers or agents. Most Cited Cases

Admission in personal injury action against city of plaintiff's testimony that police officer told her that "they" would take care of her medical expenses was error, in that evidence concerning such offer was completely irrelevant unless fact that offer was made was intended to form basis for an inference of admission of liability and there was no evidence which even suggested that officer was authorized to make such an offer and admission on behalf of city.

**[5] Witnesses 410 ☞389**

410 Witnesses
    410IV Credibility and Impeachment
        410IV(D) Inconsistent Statements by Witness
            410k389 k. Admission or denial by witness of making of inconsistent statements. Most Cited Cases

Plaintiff's testimony in personal injury action against city that police officer told her that "they" would take care of her medical expenses was not admissible on theory that it was evidence of a prior inconsistent statement offered for the purpose of impeaching officer, where officer never denied making such a statement.

**[6] Appeal and Error 30 ☞1052(8)**

30 Appeal and Error
    30XVI Review
        30XVI(J) Harmless Error
            30XVI(J)10 Admission of Evidence
                30k1052 Defect Supplied or Objection Removed Subsequently
                    30k1052(8) k. Appellant not entitled to favorable decision in any event. Most Cited Cases

In view of ample evidence of negligence on part of officer who fired shotgun blast which injured plaintiff, admission of her testimony that another police officer had told her that "they" would take care of her medical expenses did not constitute reversible error.

**[7] Municipal Corporations 268 ☞742(5)**

268 Municipal Corporations
    268XII Torts
        268XII(A) Exercise of Governmental and Corporate Powers in General
            268k742 Actions
                268k742(5) k. Evidence. Most Cited Cases

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

685 S.W.2d 682
**(Cite as: 685 S.W.2d 682)**

Evidence that, at time plaintiff was injured, there had been no gun fire or other threat to safety of officers for 20 to 30 minutes, there was no evidence of any activity originating in plaintiff's apartment which might be considered a threat to officers, and that officer fired when he had seen only a movement of the drapes, making no effort to learn identity of person at the window, particularly when viewed with fact that jury found that plaintiff had been guilty of 25% causative negligence, made it clear that defendant city had not met its burden of showing that plaintiff's evidence probably resulted in rendition of an improper verdict in suit brought to recover for injuries sustained by plaintiff when she was shot in hand by a city police officer.

**[8] Municipal Corporations 268 ⬅747(3)**

268 Municipal Corporations
    268XII Torts
        268XII(B) Acts or Omissions of Officers or Agents
            268k747 Particular Officers and Official Acts
                268k747(3) k. Police and fire. Most Cited Cases

City could not rely upon defense of governmental immunity in action brought to recover damages for injuries sustained by plaintiff when she was shot in the hand by a city police officer, where officer acted in violation of prescribed departmental procedures. Vernon's Ann.Texas Civ.St. art. 6252–19, § 14(8).

**[9] Negligence 272 ⬅1698**

272 Negligence
    272XVIII Actions
        272XVIII(D) Questions for Jury and Directed Verdicts
            272k1698 k. Rescues and emergencies.

Most Cited Cases
    (Formerly 272k136(14))

Where issue of emergency is raised by evidence, issue is one to be decided by the jury under proper instructions.

**[10] Municipal Corporations 268 ⬅742(6)**

268 Municipal Corporations
    268XII Torts
        268XII(A) Exercise of Governmental and Corporate Powers in General
            268k742 Actions
                268k742(6) k. Trial, judgment, and review. Most Cited Cases

Evidence in action brought against city seeking damages for injuries sustained by plaintiff when she was shot in the hand by a city police officer did not establish existence of an emergency as a matter of law, and thus question of fact was properly submitted to the jury.

**[11] Trial 388 ⬅350.3(5)**

388 Trial
    388IX Verdict
        388IX(B) Special Interrogatories and Findings
            388k350 Questions to Be Submitted
                388k350.3 Nature of Action or Issue in General
                388k350.3(5) k. Personal injuries. Most Cited Cases

City was not entitled to an issue on justification in suit in which damages were sought for injuries sustained by plaintiff when she was shot in the hand by a city police officer, in that, in view of the containment order, it could not be said that officer discharged firearm in an effort to make or assist in the making of an arrest or search and there was no evidence which

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

685 S.W.2d 682
**(Cite as: 685 S.W.2d 682)**

furnished a basis for a finding that officer had reason to believe that any person in plaintiff's apartment was attempting to escape or attempting to prevent his search of apartment from which shots were fired.

**[12] Damages 115 ⊕187**

115 Damages
    115IX Evidence
        115k183 Weight and Sufficiency
            115k187 k. Impairment of earning capacity. Most Cited Cases

Evidence reflecting serious injury to plaintiff's hand, resulting in permanent impairment and disfigurement, that she suffered a 75% physical impairment of ring finger, 7% permanent impairment of left hand and 6% permanent impairment of upper extremity, and that she was unable to make fist of her left hand, had difficulty in lifting objects, and continued experiencing weakness in her fingers supported award for loss-of-earning capacity in suit against city arising from incident in which plaintiff was shot in the hand by a city police officer.

**[13] Damages 115 ⊕221(5.1)**

115 Damages
    115X Proceedings for Assessment
        115k219 Verdict and Findings
            115k221 Special Interrogatories and Findings by Jury
                115k221(5) Preparation and Form of Interrogatories or Findings
                    115k221(5.1) k. In general. Most Cited Cases
    (Formerly 115k221(5))

Trial court in suit in which damages were sought against city for injuries sustained by plaintiff when she was shot in the hand by a city police officer properly submitted damages issues for mental pain and anguish separate from damages for disfigurement.

**[14] Judgment 228 ⊕199(3.10)**

228 Judgment
    228VI On Trial of Issues
        228VI(A) Rendition, Form, and Requisites in General
            228k199 Notwithstanding Verdict
                228k199(3.10) k. Where there is no evidence to sustain verdict. Most Cited Cases

A trial court may disregard a jury finding only if there is no evidence to support such a finding.

**[15] Judgment 228 ⊕199(3.15)**

228 Judgment
    228VI On Trial of Issues
        228VI(A) Rendition, Form, and Requisites in General
            228k199 Notwithstanding Verdict
                228k199(3.15) k. Tort actions in general. Most Cited Cases

Trial court in suit against city seeking damages for injuries sustained by plaintiff when she was shot in the hand by a city police officer committed error in disregarding jury finding that plaintiff was guilty of 25% causative negligence and awarding her the full amount of damages found by jury.

**[16] Municipal Corporations 268 ⊕742(5)**

268 Municipal Corporations
    268XII Torts
        268XII(A) Exercise of Governmental and Corporate Powers in General
            268k742 Actions
                268k742(5) k. Evidence. Most Cited Cases

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

685 S.W.2d 682
(Cite as: 685 S.W.2d 682)

Evidence establishing that plaintiff was aware of situation and the firing, existence of a dangerous situation and that plaintiff was told by several persons to stay away from window constituted some evidence that plaintiff was aware of danger and that her disregard of advice of police and her relatives constituted negligence in connection with incident in which she was shot in the hand by a city police officer.

[17] Trial 388 🔑261

388 Trial
    388VII Instructions to Jury
        388VII(E) Requests or Prayers
            388k261 k. Duty to give requested instruction; erroneous requests. Most Cited Cases

Insofar as instruction requested by city authorized jury to find that use of deadly force by police officer was authorized or necessary to make or assist in making a search, it was clearly erroneous and was properly refused. V.T.C.A., Penal Code § 9.51.

*684 Nelson Clare, Asst. City Atty., San Antonio, for appellant.

Dennis P. Bujnoch, Tinsman & Houser, Inc., San Antonio, for appellee.

Before CADENA, C.J., and CANTU and DIAL, JJ.

## OPINION

CADENA, Chief Justice.

Defendant, City of San Antonio, appeals from a judgment, based partially on a jury verdict, awarding defendant, Joyce Perez Higle, $59,000.00 for injuries sustained by her when she was shot in the hand by Detective Tackett, a San Antonio police officer.

The jury attributed 75% of the causative negligence to defendant and 25% to plaintiff, and fixed the total amount of plaintiff's damage at $59,000.00. The trial court, on plaintiff's motion, disregarded the finding concerning plaintiff's negligence and awarded plaintiff the full amount of the damages found by the jury.

On February 28, 1980, Tackett and five other officers attempted to execute a search warrant authorizing the search of apartment 413 at the Habitat Apartments in San Antonio. They were met by gunfire from the occupants of the apartment and one officer was wounded. One police officer went to apartment 411, adjacent to 413, which was occupied by plaintiff. The officer asked plaintiff to call an ambulance and to furnish a chair for the wounded officer. He explained the situation to plaintiff and warned her to stay in the apartment and to stay away from the window. Plaintiff *685 called her mother and her uncle and they told her to hide in the closet and stay there.

When the officer spoke to plaintiff the gunfire continued. After a short time the gunfire stopped. One of the men in apartment 413 telephoned police headquarters and said that the men in the apartment would surrender as soon as their attorney arrived on the scene. The police dispatcher relayed this information to the officers on the scene and gave them instructions to "contain" the situation.

Some 20 or 30 minutes after the cessation of the gunfire, plaintiff became curious and decided to look out the window to determine if the police were still there. As she approached the window she began to move the curtain so that she could see what was happening. Detective Tackett, who was stationed about 15 feet from the window, saw the movement of the curtain and immediately fired his shotgun, striking plaintiff in the hand. At no time had any shots been fired from plaintiff's apartment, nor is there any evidence indicating that the officers had any reason to fear that a threat to their safety could possibly emanate from plaintiff's apartment.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

685 S.W.2d 682
(Cite as: 685 S.W.2d 682)

Defendant urges that the judgment must be reversed because of four instances in which it was suggested to the jury, or stated to the jury, that Lt. Smith, a San Antonio police officer, told plaintiff that she would not have to pay her hospital and medical expenses. These incidents were:

1. During voir dire examination of the prospective jurors, plaintiff's attorney stated that the evidence would show "that a couple of the officers wanted to pay [plaintiff's] medical bills...." The trial judge sustained defendant's objection and instructed the prospective jurors not to consider the remark, but defendant's motion for mistrial was overruled.

2. While Lt. Smith was being examined by appellee, he was asked whether, during one of the lieutenant's visits to the hospital, there was "some mention of the fact that the city would take care of" plaintiff's medical expenses. Defendant's objection was sustained and the jury was properly instructed, but defendant's motion for mistrial was overruled.

3. Counsel for plaintiff, while still examining Lt. Smith, asked, "What did you say, if anything, to Mrs. Higle about her medical expenses while she was in the hospital?" Defendant objected and, before the court ruled on the objection the question was withdrawn. Defendant again moved unsuccessfully for a mistrial. Lt. Smith did not answer either question concerning payment of plaintiff's medical expenses.

4. Plaintiff was allowed to testify, over defendant's objection, that Lt. Smith told her that she did not have to worry about anything, that "they would take care of" her bills and that if she wanted anything she had only to ask for it.

[1][2] We are not permitted to reverse a judgment because of error committed in the course of the trial unless we are of the opinion that the error complained of amounted to such a denial of the rights of the appellant "as was reasonably calculated to cause and probably did cause the rendition of an improper judgment...." TEX.R.CIV.P. 434. To determine whether an error was reasonably calculated to cause and probably did cause rendition of improper judgment, the reviewing court must consider the entire record. *Gomez Leon v. State,* 426 S.W.2d 562, 565 (Tex.1968).

[3] The statement by plaintiff's counsel to the prospective jurors that the evidence would show that a "couple of" unidentified police officers wanted to pay plaintiff's medical bills was promptly ruled improper by the trial court and the jury was instructed to disregard it. The same is true of the question inquiring of Lt. Smith if there had been some mention of the fact that defendant would pay such bills. The second question to Lt. Smith as to whether he had said anything to plaintiff concerning her medical bills was withdrawn following defendant's objection. Whatever harmful inferences might have been drawn from the instances was of the curable type and was removed by the court's instructions in the *686 first two instances and by the withdrawal of the question in the third instance. *Liberty Mutual Insurance Company of Texas v. Rawls,* 358 S.W.2d 920, 931 (Tex.Civ.App.—Fort Worth 1962, no writ).

[4] We agree that the admission of plaintiff's testimony that Lt. Smith told her that "they" would take care of her medical expenses was error. Evidence concerning such offer is completely irrelevant unless the fact that the offer was made is intended to form the basis for an inference of admission of liability. Without extended discussion, it is sufficient to point out that there is not evidence which even suggests that Lt. Smith was authorized to make such an offer and admission on behalf of the city. Statements or declarations of an agent or employee are admissible against the principal only when they are made within the scope of his authority. There is no evidence of express authority, and the record does not disclose any evi-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

685 S.W.2d 682
(Cite as: 685 S.W.2d 682)

dence that Lt. Smith's statement accompanied an authorized act or that it was closely enough connected with his performance of an authorized act to come within the meaning of that nebulous and much abused term, "res gestae." 2C McCORMICK & R. RAY, TEXAS LAW OF EVIDENCE § 1164 (1956).

[5] Plaintiff's testimony was not admissible on the theory that it was evidence of a prior inconsistent statement offered for the purpose of impeaching Lt. Smith. Lt. Smith never denied making such a statement. In the absence of such a denial, plaintiff's statement concerning the alleged offer does not contradict any portion of Smith's testimony. 1 C. McCORMICK & R. RAY, *op. cit.* § 692.

[6] However, in view of the ample evidence of negligence on the part of Detective Tackett, the officer who fired the shotgun blast which injured plaintiff, we cannot say that the admission of plaintiff's testimony constitutes reversible error. The evidence establishes:

1. At the time plaintiff was injured, there had been no gunfire or other threat to the safety of the officers for 20–30 minutes.

2. There is no evidence of any activity originating in plaintiff's apartment which might be considered a threat to the officers. No shots had been fired from such apartment.

3. Tackett fired when he had seen only a movement of the drapes, making no effort to learn the identity of the person at the window.

4. According to San Antonio Police Department policy, the instructions to "contain" the situation meant that the officers were not to fire their weapons unless they were fired at or otherwise attacked or the "suspects" were attempting to escape. The evidence shows that apartment 413, from which the shots at the officers had been fired, was being closely observed by the officers present and that all means of exit from such apartment were being observed. There is no evidence that any person had left apartment 413 or that any person had entered apartment 411, plaintiff's apartment. The movement of the drapes in plaintiff's apartment which prompted Tackett to fire is no evidence of an attack on the officers or of an attempt of any person in 413 to escape. It is clear from the evidence that the officer had no idea of the identity of the person at whom he fired.

[7] Such evidence, particularly when viewed with the fact that the jury found that plaintiff had been guilty of 25% causative negligence, makes it clear that defendant has not met its burden of showing that plaintiff's evidence probably resulted in the rendition of an improper verdict.

[8] Defendant's claim that it was entitled to an instructed verdict, based on the defense of governmental immunity, is grounded on the provisions of TEX.REV.CIV.STAT.ANN. art. 6252–19, § 14(8), the Texas Tort Claims Act (Vernon 1970 and Vernon Supp.1982–1983), which provides that the waiver of immunity contained in the statute does not apply "to any claim arising out of the action of an officer ... *687 while responding to an emergency call or reaction to emergency situations when such action is in compliance with the laws and ordinances applicable to emergency action." Defendant does not call our attention to any "laws" or "ordinances" with which Tackett's actions in this case complied. Instead, the evidence shows that Tackett acted in violation of prescribed departmental procedures. Defendant has not brought itself within the provisions of § 14(8).

[9][10] Defendant, contending that the question of the existence or non-existence of an emergency is a matter of law for the court to determine, argues that the trial court erred in submitting the question of emergency to the jury. Where the issue of emergency is raised by the evidence, the issue is one to be decided by the jury under proper instructions. *Abalos v. Oil*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

685 S.W.2d 682
**(Cite as: 685 S.W.2d 682)**

*Development Company of Texas,* 544 S.W.2d 627, 634 (Pope, J., Concurring) (Tex.1976); *Yarborough v. Berner,* 467 S.W.2d 188, 193 (Tex.1971). The evidence already detailed does not establish the existence of an emergency as a matter of law. Therefore, the court did not err in submitting the question of fact to the jury.

[11] Defendant asserts that it was entitled to an issue on justification under TEX.PENAL CODE ANN. § 9.51 (Vernon 1974). This section justifies the use of force by an officer when he believes the use of such force is immediately necessary to make or assist in the making of an arrest or search, or to prevent or assist in preventing an escape after arrest. In view of the "containment order," it cannot be said that Tackett discharged the firearm in an effort to make or assist in the making of an arrest or search. There is no evidence which furnishes a basis for a finding that Tackett had reason to believe that any person in plaintiff's apartment was attempting to escape or attempting to prevent a search of apartment 413. Further, § 9.05 of the Penal Code provides that even if the use of force is justified, the actor is not entitled to the defense of justification if in using such force he recklessly injures or kills an innocent third person.

According to § 6.03(c) of the Penal Code, a person acts recklessly with respect to circumstances surrounding his conduct or the result of his conduct "when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." The risk "must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint."

Prior to the time the court prepared its charge, some discussion took place concerning the charge. Counsel for defendant at that time conceded that no issue should be submitted inquiring whether Tackett was aware that he was firing into plaintiff's apartment because all of the evidence established that he had such knowledge at the time he fired. Defendant also pointed out that no issue should be submitted inquiring whether Tackett knew that plaintiff was in such apartment because the evidence conclusively established his knowledge of that fact. When these concessions are considered with the fact that Tackett had no reason to believe that firing into plaintiff's apartment was necessary in order to execute the search warrant calling for the search of another apartment and no reason to believe that the movement of the drapes in apartment 411 indicated the need for the use of force against the occupant of that apartment in order to prevent the escape of the persons in another apartment, the refusal of a charge on justification was justified.

In any event, the question of justification is clearly in the nature of an affirmative defense, and the burden was on defendant to request its submission in writing in substantially correct wording. The record does not reflect such written request by defendant, and the court's failure to submit an issue on justification cannot be ground for reversal. TEX.R.CIV.P. 279. While the exchange between defendant's counsel *688 and the court contains reference to submission of an issue which had been tendered, the tendered issue is not in the record.

[12] Defendant's complaint that there was no evidence to support an award to plaintiff for loss of earning capacity is without merit. The evidence reflects a serious injury to plaintiff's hand, resulting in permanent impairment and disfigurement. She suffered a 75% physical impairment of the ring finger, 7% permanent impairment of the left hand, an 6% permanent impairment of the upper extremity. She is unable to make a fist of her left hand; has difficulty in lifting objects; and continues experiencing weakness in her fingers. The evidence amply supports an award for loss of earning capacity.

[13] The trial court did not err in submission of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

685 S.W.2d 682
**(Cite as: 685 S.W.2d 682)**

damage issues for mental pain and anguish separate from damages for disfigurement. *Sax v. Votteler,* 648 S.W.2d 661, 667 (Tex.1983).

[14][15] We agree that the trial court erred in disregarding the jury finding that plaintiff was guilty of 25% causative negligence and awarding her the full amount of damages found by the jury. A trial court may disregard a jury finding only if there is no evidence to support such finding. *Sanders v. Harder,* 148 Tex. 593, 596, 227 S.W.2d 206, 209 (1950); *Escamilla v. Garcia,* 653 S.W.2d 58, 61 (Tex.App.—San Antonio 1983, no writ).

[16] The evidence establishes that plaintiff was aware of the situation and the firing. The evidence establishes the existence of a dangerous situation, and plaintiff was told by several persons to stay away from the window. Such testimony clearly constitutes some evidence that plaintiff was aware of the danger and that her disregard of the advice of the police and her relatives constituted negligence.

The judgment of the trial court is reformed to provide that plaintiff, Joyce Perez Higle, recover from defendant, City of San Antonio, the sum of $44,250.00. As so reformed, the judgment is affirmed.

Costs are taxed 80% against defendant, City of San Antonio, and 20% against plaintiff, Joyce Perez Higle.

### ON MOTIONS FOR REHEARING

In this opinion we address only the continued insistence by appellant, City of San Antonio, that the trial court erred in refusing to submit an issue inquiring whether the police officer, Detective Tackett, was justified in using force under section 9.51 of the Penal Code. The portion of the opinion discussing this contention is subject to being interpreted as asserting that City failed to request an issue submitting this affirmative defense. As so interpreted, the opinion does not

correctly reflect that which is shown by the record. The intention was to point out that the City had failed to request an issue in substantially correct form. While an issue was requested, it was not in substantially correct form.

The issue requested inquired whether the officer "believed that deadly force was immediately necessary to make or assist in making an arrest or search...". The provisions of section 9.51 authorizing the use of deadly force provide that an officer is justified in using deadly force if he reasonably believes the "deadly force is immediately necessary to make an arrest or to prevent escape after arrest" if the officer reasonably believes that the conduct for which arrest is authorized included the use or attempted use of deadly force, or reasonably believes that there is a substantial risk that the person to be arrested will cause death or serious bodily injury to others if the arrest is delayed.

[17] There is no provision in section 9.51 authorizing the use of deadly force in order to assist in the making of a search. Under section 9.51, an officer is permitted to use force to the extent that he believes the use of force is necessary to make an arrest or search. The issue requested by City would leave the jury to believe that the use of deadly force was justified if the officer believed that deadly force was necessary "to make or assist in the making of an arrest or search." Insofar as the requested*689 instruction authorized the jury to find that the use of deadly force was authorized when necessary to make or assist in making a search it was clearly erroneous and was properly refused.

The motions for rehearing are overruled.

Tex.App. 4 Dist.,1984.
City of San Antonio v. Higle
685 S.W.2d 682

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

685 S.W.2d 682
**(Cite as: 685 S.W.2d 682)**

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Westlaw Delivery Summary Report for DEVERA,GEORGE**

| | |
|---|---|
| Date/Time of Request: | Tuesday, February 25, 2014 13:56 Central |
| Client Identifier: | 12-0594 LINDA ESTRADA |
| Database: | KEYCITE-HIST |
| Citation Text: | 685 S.W.2d 682 |
| Service: | KeyCite |
| Lines: | 16 |
| Documents: | 1 |
| Images: | 0 |
| Recipient(s): | gadevera@tjhlaw.com |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Date of Printing: Feb 25, 2014

**KEYCITE**

▷ **City of San Antonio v. Higle, 685 S.W.2d 682 (Tex.App.-San Antonio, Feb 29, 1984) (NO. 04-82-00228-CV)**

**History**

**Direct History**

=>    1 **City of San Antonio v. Higle,** 685 S.W.2d 682 (Tex.App.-San Antonio Feb 29, 1984) (NO. 04-82-00228-CV), writ refused n.r.e. (May 15, 1985)

**Negative Citing References (U.S.A.)**

*Distinguished by*

▷    2 Weiss v. Commission for Lawyer Discipline, 981 S.W.2d 8 (Tex.App.-San Antonio May 20, 1998) (NO. 04-96-00549-CV), rehearing overruled (Jul 31, 1998), review denied (Dec 03, 1998) ★ ★ **HN: 5 (S.W.2d)**

▷    3 Guillen v. City of San Antonio, 13 S.W.3d 428 (Tex.App.-San Antonio Jan 26, 2000) (NO. 04-99-00077-CV), rehearing overruled (Feb 10, 2000), review denied (May 11, 2000) ★ ★ ★ **HN: 8 (S.W.2d)**

© 2014 Thomson Reuters. All rights reserved.

2014 WL 2451176
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN
RELEASED FOR PUBLICATION IN THE
PERMANENT LAW REPORTS. UNTIL RELEASED,
IT IS SUBJECT TO REVISION OR WITHDRAWAL.

Court of Appeals of Texas,
El Paso.

TEXAS DEPARTMENT OF PUBLIC SAFETY,
Appellant,
v.
Merardo BONILLA, Appellee.

No. 08–13–00117–CV. | May 30, 2014.

Synopsis
**Background:** Plaintiff filed suit for damages against
Department of Public Safety (DPS) arising out of traffic
collision that occurred during trooper's pursuit of a
speeding truck through an intersection. The 41st District
Court, El Paso County, Anna Perez, J., denied DPS's
immunity-based plea to the jurisdiction and summary
judgment motions. DPS appealed.

**Holdings:** The Court of Appeals, Ann Crawford
McClure, C.J., held that:

[1] DPS's reconstruction team's report was properly
admitted under hearsay exception for admission by party
opponent;

[2] plaintiff's pleading was not a judicial admission barring
his ability to assert reckless disregard or conscious
indifference; and

[3] fact issue precluded summary judgment based on
sovereign immunity derived from official immunity of
trooper.

Affirmed.

West Headnotes (23)

[1] **Evidence**
⟳Public officers or agents

Members of reconstruction team who assembled
accident report for Department of Public Safety
(DPS) were agents of DPS and were authorized
by DPS to make statements like those contained
in their report, as required to support admission
of report under hearsay exception for admission
by party opponent, in suit against DPS arising
from actions of trooper in running a red light
and striking plaintiff's vehicle; DPS's counsel
conceded that members of team were DPS
employees, and that the report was created by an
internal investigative arm of DPS to explain to
itself what happened to trooper in a state
vehicle. Rules of Evid., Rule 801(e)(2).

Cases that cite this headnote

[2] **Appeal and Error**
⟳Rulings on admissibility of evidence in
general

Appellate review of the exclusion or admission
of summary judgment evidence is for abuse of
discretion.

Cases that cite this headnote

[3] **Judgment**
⟳Documentary evidence or official record
**Judgment**
⟳Affidavits, Form, Requisites and Execution of
**Judgment**
⟳Personal knowledge or belief of affiant

Rule requiring that supporting and opposing
affidavits in summary judgment proceedings be
made on personal knowledge and set forth such
facts as would be admissible in evidence, and
that sworn or certified copies of documents
referenced within the affidavit be attached
thereto or served therewith, stem from
evidentiary prohibition of hearsay and, as such,

affidavits are subject to hearsay exceptions. Vernon's Ann.Texas Rules Civ.Proc., Rule 166a(f).

Cases that cite this headnote

[4] **Evidence**
⟨⟩Parties of Record

Any statement by a party-opponent is admissible against that party under admission by party-opponent exception to hearsay rule. Rules of Evid., Rule 801(e)(2).

Cases that cite this headnote

[5] **Evidence**
⟨⟩Public officers or agents

Findings and conclusions in report generated by members of Department of Public Safety (DPS) team that reconstructed state trooper's actions, just before his vehicle struck plaintiff's vehicle, were adopted by DPS and, thus, were admissible under hearsay exception for admission by party-opponent for purposes of plaintiff's damages suit against DPS; although DPS refused to stipulate to its team's expertise for litigation purposes, it clearly and obviously accepted team's credentials in routine, day-to-day operations, and DPS's counsel did not directly attack team's qualifications. Rules of Evid., Rule 801(e)(2)(D).

Cases that cite this headnote

[6] **Evidence**
⟨⟩Pleadings

Plaintiff's assertion in pleadings that state trooper disregarded the red light when his vehicle collided with plaintiff's vehicle was not a judicial admission barring plaintiff's ability to assert reckless disregard or conscious

indifference, as required to establish sovereign immunity for trooper's governmental employer under the emergency exception to waiver of governmental immunity under Texas Tort Claims Act (TTCA), despite employer's claim that the pleadings suggested allegation of negligence. V.T.C.A., Civil Practice & Remedies Code § 101.021(1); V.T.C.A., Transportation Code § 546.001(2).

Cases that cite this headnote

[7] **Municipal Corporations**
⟨⟩Nature and grounds of liability

A governmental unit is immune from suit and liability unless the immunity has been waived.

Cases that cite this headnote

[8] **Municipal Corporations**
⟨⟩Nature and grounds of liability

Texas Tort Claims Act (TTCA) does not waive governmental immunity for ordinary negligence arising from an emergency situation. V.T.C.A., Civil Practice & Remedies Code § 101.021(1).

Cases that cite this headnote

[9] **Automobiles**
⟨⟩Vehicles Used in Saving Life or Property, or Enforcing Law
**Automobiles**
⟨⟩Government; Immunity and Waiver Thereof

To recover damages from a governmental unit for accident resulting from the emergency operation of an emergency vehicle, a plaintiff must show that the operator has committed an act that the operator knew or should have known posed a high degree of risk of serious injury. V.T.C.A., Civil Practice & Remedies Code §

101.021(1).

Cases that cite this headnote

[10] **Appeal and Error**
⟐Cases Triable in Appellate Court

Appellate review of a trial court's ruling on a plea to the jurisdiction is de novo.

Cases that cite this headnote

[11] **Appeal and Error**
⟐Extent of Review Dependent on Nature of Decision Appealed from
**Appeal and Error**
⟐Pleading

When a plea to the jurisdiction challenges the pleadings, the appellate court determines if the pleader has alleged facts that affirmatively demonstrate jurisdiction, and will construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent.

Cases that cite this headnote

[12] **Pleading**
⟐Amendments following sustaining of pleas

If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, the issue on plea to the jurisdiction is one of pleading sufficiency and the plaintiff is entitled to amend.

Cases that cite this headnote

[13] **Evidence**
⟐Judicial Admissions

A judicial admission must be a clear, deliberate, and unequivocal statement, and an unequivocal statement must concern an unequivocal matter.

Cases that cite this headnote

[14] **Municipal Corporations**
⟐Nature and grounds of liability

When the governmental unit raises the emergency exception to waiver of sovereign immunity under the Texas Tort Claims Act (TTCA), the plaintiff has the burden to raise disputed fact issues as to whether the actions were taken in response to an emergency, or were reckless. V.T.C.A., Civil Practice & Remedies Code § 101.021(1).

Cases that cite this headnote

[15] **Automobiles**
⟐States

Trooper's actions in pursuing a speeding driver who was making multiple lane changes and disobeying traffic control devices constituted an "emergency" for purposes of the emergency exception to waiver of sovereign immunity under the Texas Tort Claims Act (TTCA). V.T.C.A., Civil Practice & Remedies Code § 101.021(1).

Cases that cite this headnote

[16] **Municipal Corporations**
⟐Evidence

Defendant governmental unit, not plaintiff, has the burden of showing the urgency of the circumstances in support of official immunity for purposes of the emergency exception to waiver of sovereign immunity under the Texas Tort Claims Act (TTCA). V.T.C.A.,

Transportation Code § 546.001(2).

Cases that cite this headnote

**[17]** **Judgment**
⟲Public officers and employees, cases involving

In suit for damages against Department of Public Safety (DPS) arising out of traffic collision that occurred during trooper's pursuit of a speeding truck, genuine issue of material fact, as to whether trooper acted in good faith in assessing need to stop speeder against risks associated with his chosen course of action, precluded summary judgment based on sovereign immunity derived from the official immunity of trooper.

Cases that cite this headnote

**[18]** **Municipal Corporations**
⟲Application of principle of agency to municipalities

A governmental entity can rely on the official immunity of its employee regardless of whether the employee is a party to the suit.

Cases that cite this headnote

**[19]** **Municipal Corporations**
⟲Application of principle of agency to municipalities

Derivative immunity is an affirmative defense; it requires the governmental defendant to establish that its employee performed a discretionary act in good faith and within the scope of his or her authority.

Cases that cite this headnote

**[20]** **Officers and Public Employees**
⟲Liabilities for official acts

Element of good faith must be assessed upon objective legal reasonableness, not the employee's subjective state of mind for purposes of determining whether government employee is entitled to official immunity.

Cases that cite this headnote

**[21]** **Municipal Corporations**
⟲Police and fire

Whether police officer acted in good faith, and thus is entitled to official immunity, depends on how reasonably prudent officer could have assessed both need to which officer responded and risks of officer's course of action; need refers to urgency of circumstances requiring police intervention, while risk refers to countervailing public safety concerns.

Cases that cite this headnote

**[22]** **Automobiles**
⟲Personal liability of employees; official immunity

Good faith in a police pursuit case, for purposes of official immunity, requires that the officer assess both the risk that the suspect will injure a third party and the risk that the officer himself will injure a third party.

Cases that cite this headnote

**[23]** **Automobiles**
⟲Personal liability of employees; official immunity

To establish good faith in a police pursuit case, for purposes of official immunity, the party urging official immunity is required to show that the officer assessed the availability of alternatives to pursuit as part of balancing the need to pursue and the pursuit's risk to the public.

Cases that cite this headnote

**Attorneys and Law Firms**

Elsa Nava, Office of the Attorney General, Austin, for Appellant.

Nataliya Kharmats Tipton, Young & Husain, P.L.L.C., Houston, for Appellee.

Before McCLURE, C.J., RIVERA, and RODRIGUEZ, JJ.

*OPINION*

ANN CRAWFORD McCLURE, Chief Justice.

*1 The Texas Department of Public Safety (DPS) challenges the trial court's denial of its immunity-based plea to the jurisdiction and summary judgment motions. For the reasons that follow, we affirm.

**FACTUAL SUMMARY**

This case concerns a traffic accident that occurred in El Paso on February 19, 2010, when Trooper Cesar Cruz ran a red light while pursuing a speeder and struck a vehicle driven by Merardo Bonilla. Trooper Cruz was driving his DPS-issued patrol vehicle westbound on Montana Avenue, about a quarter of a mile from the intersection of Montana and Magruder Streets, when the speeding vehicle, a pickup truck also traveling west on Montana, passed him in the next lane. The speed limit on Montana Avenue is 35 m.p.h. Cruz was driving approximately 35 to 40 m.p.h., and he estimated that the speeding truck was traveling around 55 m.p.h. Trooper Cruz then observed the pickup change lanes several times and run the red traffic signal light at the intersection of Montana and Magruder. At this point, Cruz activated his patrol vehicle's emergency lights, but not its siren. Cruz claimed that he yielded at the intersection and scanned for traffic. As he entered the intersection, he turned on the vehicle's camera and his vehicle struck Bonilla's. Bonilla was injured as a result of the accident.

DPS brings three issues for review: (1) whether the trial court improperly denied its plea to the jurisdiction based on sovereign immunity under Section 101.055(2) of the Texas Tort Claims Act (TTCA), the "emergency exception;" (2) whether the trial court erred in denying its plea and/or motions for summary judgment based on the official immunity of Trooper Cruz, and (3) whether the court erred by overruling DPS's objections to the evidence Bonilla submitted in response to the plea and the motions. Because the admissibility of Bonilla's evidence factors into our analysis of the trial court's other rulings, we consider it first.

**OBJECTIONS TO BONILLA'S EVIDENCE**

[1] DPS District 4B Reconstruction Team investigated and reconstructed the accident between Trooper Cruz and Bonilla, and drafted a report detailing its findings and conclusions. DPS produced the team's report and materials to Bonilla during discovery, thus authenticating them. TEX.R.CIV.P. 193.7. The conclusions were based, in part, upon data collected from the involved vehicles' Event Data Recorders ("EDRs"), or "black boxes." Specifically, the report states:

Trooper Cruz approached the intersection and at a minimum distance of 164.95 feet prior to impact and was at 100% throttle. This was achieved by using the accelerate from any velocity formula in conjunction with the EDR data from [Cruz's patrol vehicle.] Measurements from the scale diagram indicate that the area of impact was 65 feet from the stop line that Trooper Cruz was approaching. Subtracting the measurement of 65 feet from the minimum distance of 164.95 feet, which puts Trooper Cruz at 100% throttle 99.9 feet prior to the stop line. This information obtained

conflicts with the statement from Trooper Cruz that he yielded at the stop line before proceeding through the intersection. Data from Unit # 1's EDR confirms that once Trooper Cruz accelerated to 100% throttle, he did not remove his foot from the accelerator pedal until .5 seconds before impact. He also states he was distracted by turning on the power to his in-car video camera.

*2 DPS objected to the trial court's consideration of the reconstruction team's report because Bonilla had not attached the raw EDR data and because he failed to establish the reconstruction team's expert qualifications. Bonilla counters that the report is an admission by a party-opponent. See TEX.R.EVID. 801(e)(2).

[2] [3] The objection concerning the raw EDR data is based upon Rule 166a(f) of the Texas Rules of Civil Procedure. See TEX.R.CIV.P. 166a(f). We review the exclusion or admission of summary judgment evidence for an abuse of discretion. *Blake v. Dorado*, 211 S.W.3d 429, 431–32 (Tex.App.-El Paso 2006, no pet.). In relevant part, Rule 166a(f) requires that affidavits be made on personal knowledge, set forth such facts as would be admissible in evidence, and that sworn or certified copies of documents referenced within the affidavit be attached thereto or served therewith. *Id.* These requirements stem from the evidentiary prohibition of hearsay. *Priest v. Texas Animal Health Comm'n*, 780 S.W.2d 874, 879 (Tex.App.-Dallas 1989, no pet.). As such, they are subject to hearsay exceptions. *Martinez v. Midland Credit Management, Inc.*, 250 S.W.3d 481, 484–85 (Tex.App.-El Paso 2008, no pet.); *McAlister v. Medina Elec. Co-op., Inc.*, 830 S.W.2d 659, 664 (Tex.App.-San Antonio 1992, writ denied).

[4] An admission by a party-opponent is not hearsay. TEX.R.EVID. 801(e)(2); *McAlister*, 830 S.W.2d at 664 (applying the party-opponent exception to Rule 166a(f)). *"[A]ny* statement by a party-opponent is admissible against that party."[Emphasis in original].*Reid Road Municipal Utility Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 858 (Tex.2011), *quoting Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex.2007). Admissions by party-opponents include:

(A) the party's own statement in either an individual or representative capacity;

(B) a statement of which the party has manifested an

adoption or belief in its truth;

(C) a statement by a person authorized by the party to make a statement concerning the subject;

(D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship; or

(E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

TEX.R.EVID. 801(e)(2).

DPS responds to the Rule 802(e)(2) arguments by asserting—somewhat incredibly—that no agency relationship between it and the reconstruction team has been established. The team's report begins with a header reading: "Texas Department of Public Safety District 4B Crash Team Reconstruction Investigation."The report's participants are identified as Trooper Derek Pearson, Sergeant Michael Hodgson, Sergeant Lee Snead, and Corporal Roberto C. Reyna. At the hearing on the plea and the motions, DPS's counsel conceded that these individuals were DPS employees. Counsel also conceded that the report was "created by an internal investigative arm of [DPS] to explain to itself what happened [to Trooper Cruz] in a state vehicle."We conclude that the members of the reconstruction team are clearly agents of DPS and that they were authorized by DPS to make statements like those contained in their report. The trial court did not abuse its discretion by overruling DPS's Rule 166a(f) objection.[2]

*3 [5] DPS next argues that Bonilla failed to establish the expert qualifications of its reconstruction team. Whether a witness is qualified to offer expert testimony is a matter committed to the trial court's discretion.*Broders v. Heise*, 924 S.W.2d 148 (Tex.1996). While the proponent of expert testimony has the burden of establishing the expert's qualifications, it is not unusual or improper for the other party to stipulate to the expert's credentials. *See, e.g., Guerrero v. Smith*, 864 S.W.2d 797, 801–02 (Tex.App.-Houston [14th Dist.] 1993, no writ). This would certainly be true here, where DPS is the regular employer of the reconstruction team, and the team's normal job function is to draw expert conclusions on DPS's behalf. Nonetheless, DPS will not stipulate to its team's qualification *for purposes of this litigation.*But as its counsel made clear to the trial court, DPS does not directly challenge its team's expert credentials.[3]As such, the question becomes whether DPS has otherwise adopted the opinions and findings of its reconstruction team.

In *Reid Road v. Speedy Stop,* the Texas Supreme Court considered whether a party could rely on the statement of another party's expert over that party's objection. *Speedy Stop Food Stores, Ltd.,* 337 S.W.3d at 849.That case arose from an administrative condemnation proceeding by a utility district against a convenience store. At the administrative stage of the case, the district offered the testimony of third-party appraiser regarding the value of the utility easement it sought to obtain. *Id.* at 847.When the matter became a civil suit, the utility district decided that it disagreed with the appraiser's opinion and did not further rely upon it. But the convenience store did. *Id.* at 849.The district objected that the appraiser's statement was hearsay and that the convenience store had not identified the appraiser in its expert designations. *Id.* Although the appraiser was not the district's regular employee, the Supreme Court held that the district had nonetheless "manifested its belief in and approval of" the expert's opinion by relying on it prior to litigation, and thus that it was admissible as an admission by adoption. *Id.* at 857,*citing*TEX.R.EVID. 801(e)(2)(B). The party-opponent exception thus trumped not only the hearsay objection, but the disclosure objection. *Id.* The court further noted that if an agency relationship been had established between the expert and the district, the expert's opinion would "of course" have been admissible under Rule of Evidence 801(e)(2)(D).*Id.* at 856, n. 5

In *Yarbrough's Dirt Pit, Inc. v. Turner,* the Beaumont Court of Appeals also relied on the admission by party-opponent rule to overrule a party's objection to its own expert's opinion. *Yarbrough's,* 65 S.W.3d at 215.There, a plaintiff relied on a defendant's expert's deposition testimony as summary judgment proof against the affirmative defense of contributory negligence.*Id.* at 214–15.Specifically, the expert testified that he could place no responsibility on the plaintiff for the automobile accident. *Id.* The defendant objected that its expert had not sufficiently explained the basis for this opinion, and thus it was conclusory. *Id.* The court of appeals held that the "conclusion of an expert witness hired by an opposing party to speak on the subject matter on behalf of the party opponent is admissible against the party opponent, and the conclusion may be relied on in a motion for summary judgment even if the opposing expert witness does not disclose the bases for the conclusion adverse to the expert's client."*Id.* at 214.

*4 In another case cited in *Speedy Stop,* the *Collins v. Wayne Corp* case, the Fifth Circuit Court of Appeals held that the report of an expert hired by a bus manufacturer to reconstruct a serious bus accident was admissible as an admission by the manufacturer over its objections that the expert was only a consultant and that his report was

incomplete. *Collins v. Wayne Corp.,* 621 F.2d 777, 782 (5th Cir.1980), *superseded on other grounds by rule as stated inMathis v. Exxon Corp.,* 302 F.3d 448 (5th Cir.2002)."[The manufacturer] hired [the expert] to investigate the bus accident and to report his conclusions. In giving his deposition he was performing the function that [the manufacturer] had employed him to perform. His deposition, therefore, was an admission of [the manufacturer]."*Id.*Similar reasoning is applicable here. *See also State v. Buckner Const. Co.,* 704 S.W.2d 837, 846 (Tex.App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.) (allowing the statement of an auditor employed by the State of Texas to be used as an admission by the state).

DPS employs reconstruction teams for the specific purpose of investigating automobile accidents and reporting their conclusions. Trooper Cruz testified that it is DPS's practice to have a reconstruction team investigate any accident involving a DPS trooper. Although DPS refuses to stipulate to its team's expertise for litigation purposes, it clearly and obviously accepts the team's credentials in routine, day-to-day operations. Along those lines, it is noteworthy that DPS's counsel did not directly attack the team's qualifications. The District 4B Reconstruction Team's report is an admission by the DPS, and it is admissible pursuant to TEX.R.EVID. 801(e)(2)(D). The trial court did not abuse its discretion in overruling DPS's objections to the report. We overrule DPS's third issue.[4]

## SOVEREIGN IMMUNITY VIA THE EMERGENCY EXCEPTION

[6] [7] [8] [9] [10] DPS contends that the trial court erred by not sustaining its plea to the jurisdiction based on sovereign immunity under the emergency exception, Section 101.055(2) of the TTCA. A governmental unit is immune from suit and liability unless the immunity has been waived. *Texas Department of Transportation v. Garza,* 70 S.W.3d 802, 806 (Tex.2002). With certain exceptions, the TTCA waives immunity for claims arising from the use of a motor-driven vehicle by a governmental entity's employee. TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(1) (West 2011). One exception applies for emergency situations, so long as the government employee's action (1) is in compliance with any laws and ordinances applicable to emergency action, or (2) if there are no applicable laws or ordinances, is free from conscious indifference or reckless disregard for the safety of others. *Id.* § 101.055(2). As a result, the TTCA does not waive governmental immunity for ordinary

negligence arising from an emergency situation. *City of Amarillo v. Martin,* 971 S.W.2d 426, 431 (Tex.1998)."To recover damages resulting from the emergency operation of an emergency vehicle, a plaintiff must show that the operator has committed an act that the operator knew or should have known posed a high degree of risk of serious injury."*Id.* at 430.We review a trial court's ruling on a plea to the jurisdiction *de novo. Texas Department of Parks and Wildlife v. Miranda,* 133 S.W.3d 217, 228 (Tex.2004).

*5 [11] [12] Although its arguments primarily focus on the latter, DPS challenges both Bonilla's pleadings and his ability to factually defeat immunity. When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate jurisdiction. *Texas Association of Business v. Texas Air Control Board,* 852 S.W.2d 440, 446 (Tex.1993). We must construe the pleadings liberally "in favor of the plaintiff and look to the pleader's intent."*Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, the issue is one of pleading sufficiency and the plaintiff is entitled to amend. *Texas Department of Parks and Wildlife v. Miranda,* 133 S.W.3d 217, 227 (Tex.2004). Any other rule "would essentially allow governmental entities the unjust advantage of being not only a litigant, but also the judge of the plaintiff's pleadings."*Texas A & M University System v. Koseoglu,* 233 S.W.3d 835, 839 (Tex.2007).

[13] Bonilla's pleadings are sufficient to establish jurisdiction. They set out the basic facts of the accident, including that Trooper Cruz disregarded the red light, and affirmatively assert that governmental immunity is waived under the TTCA. DPS suggests that because Bonilla alleged that Cruz was negligent, this constitutes a judicial admission barring his ability to assert reckless disregard or conscious indifference. But a judicial admission must be a "clear, deliberate, and *unequivocal* statement." [Emphasis added].*Regency Advantage Limited Partnership v. Bingo Idea–Watauga, Inc.,* 936 S.W.2d 275, 278 (Tex.1996). Obviously, an unequivocal statement must concern an unequivocal matter. For instance, in *City of El Paso v. Segura,* this Court held a specifically-pled assertion that police officers were responding to an emergency to be a judicial admission. *City of El Paso v. Segura,* No. 08–02–00240–CV, 2003 WL 1090661, at *3 (Tex.App.-El Paso Mar. 13, 2003, pet. denied). Whether or not there is an emergency is a definitive, categorical matter that is completely unlike the often hazy and nebulous border between the various standards of civil conduct. Bonilla's allegation of negligence is not a judicial admission. We now turn to D

PS's fact-based arguments.

[14] [15] When the governmental unit raises the emergency exception, the plaintiff has the burden to raise disputed fact issues as to whether the actions were taken in response to an emergency, or were reckless. *City of San Antonio v. Hartman,* 201 S.W.3d 667, 672 (Tex.2006). Bonilla advances both of these arguments. Bonilla cites *Texas Dept. of Public Safety v. Rodriguez,* 344 S.W.3d 483 (Tex.App.-Houston [ 1st Dist.] 2011, no pet.) in support of his argument that Trooper Cruz was not engaged in an emergency. But *Rodriguez* does not hold that a traffic stop is not an emergency for purposes of Section 101.055(2).*See id.* at 496.Instead, it considers whether a mobile police surveillance team was officially immune from an auto accident suit after running a red light in order to avoid losing a suspect it was following "for the purpose of 'documenting the [suspect's] activities.' "*Id.* In the present matter, Trooper Cruz was pursuing a speeding driver who was making multiple lane changes and disobeying traffic control devices. These facts constitute an emergency for purposes of the emergency exception.

*6 The laws applicable to Trooper Cruz's driving actions are Sections 546.001 and 546.005 of the Texas Transportation Code. TEX.TRANSP.CODE ANN. §§ 546.001, 546.005 (West 2011).Section 546.005 sets out the general standard of care required of the operator of an authorized emergency vehicle, and Section 546.001 specifies the driving actions that are permissible by the operator while engaged in an emergency. *Id.*[5] In relevant part, Section 546.001 provides that a police officer engaged in an emergency may "proceed past a red or stop signal or stop sign, *after* slowing as necessary for safe operation."[Emphasis added].TEX.TRANSP.CODE ANN. § 546.001(2)

DPS argues that Trooper Cruz's affidavit and deposition testimony establish that he yielded at the intersection's stop line before proceeding through the red light he was facing, slowed, looked right and left, and determined that it was safe to proceed. DPS also asserts that Trooper Cruz's testimony establishes that his view was not obstructed at the intersection. But Bonilla has raised genuine issues of material fact concerning each of these matters.

DPS's reconstruction team concluded that: (1) the evidence gathered in the investigation conflicted with Cruz's report of having yielded at the stop line; (2) Cruz did not remove his foot from his vehicle's accelerator pedal until .5 seconds before impact; (3) Cruz was distracted by turning on his in-car camera as he entered

the intersection and thus was not "fully aware of his surroundings;" and (4) there was a building to Cruz's right (which was the direction from which Bonilla was traveling) that "created a sight restriction [interfering with Cruz's ability] to fully observe all vehicles at the intersection he was approaching."Additionally, Bonilla produced a DPS Interoffice Memorandum written by Corporal Santos Carrasco to Sergeant David Ramos concerning the subject accident. DPS did not object to this document. Corporal Carrasco concluded:

> It is my opinion that Trooper Cesar Cruz was traveling at an unsafe speed approaching a red light at an intersection. Trooper Cruz did not use the emergency vehicle's siren to warn persons approaching the intersection. Due to sight restriction and the high volume of traffic in that intersection, Trooper Cruz was traveling to [sic] fast to have avoided the crash. [Bonilla] had the right of way at the intersection.

Bonilla's evidence creates a fact issue regarding whether Trooper Cruz complied with Section 546.001 by slowing "as necessary" before proceeding through the intersection. SeeTEX.TRANSP.CODE ANN. § 546.001(2). This evidence, combined with the visual obstruction and Cruz's distraction, creates a fact issue regarding whether Cruz acted with conscious indifference or reckless disregard to the risk of driving through the intersection against the red light. Accordingly, the trial court did not err by denying DPS's plea to the jurisdiction based on sovereign immunity. We overrule DPS's first point of error.

## SOVEREIGN IMMUNITY VIA CRUZ'S OFFICIAL IMMUNITY

*7 [16] [17] [18] [19] Lastly, DPS contends that the trial court erred by denying its jurisdictional plea and summary judgment motions based on sovereign immunity derived from the official immunity of Trooper Cruz.[6]Bonilla counters that he has not sued Trooper Cruz and that official immunity is therefore unavailable to the DPS. This is incorrect. A governmental entity can rely on the official immunity of its employee regardless of whether the employee is a party to the suit. City of Beverly Hills v. Guevara, 904 S.W.2d 655, 656 (Tex.1995). Derivative immunity is an affirmative defense; it requires the governmental defendant to establish that its employee

performed a discretionary act in good faith and within the scope of his or her authority.Wadewitz v. Montgomery, 951 S.W.2d 464, 466 (Tex.1997); City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex.1994). The only one of these elements at issue here is good faith.[7]

[20] [21] The element of good faith must be assessed upon objective legal reasonableness, not the employee's subjective state of mind. Wadewitz, 951 S.W.2d at 466.The determination depends here on how a reasonably prudent police officer could, based upon the facts as they appeared to Cruz at the time, assess the need to stop the speeding truck against the risks associated with Cruz's chosen course of action. Id. at 467.The "need" aspect of the test refers to the urgency of the circumstances requiring official intervention. Id. Need is determined by factors such as the seriousness of the crime or accident to which the officer responds, whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and what alternative courses of action, if any, are available to achieve a comparable result. Id. The "risk" aspect considers countervailing public safety concerns, such as potential injury to bystanders, the possibility that an accident will prevent the officer from reaching the scene of the emergency, the likelihood that harm will occur, and whether such risks, if any, would be clear to a reasonably prudent police officer. Id.

[22] The same fact issues that defeat sovereign immunity under the emergency exception likewise defeat derivative immunity. Under the facts adduced by Bonilla, which we must accept as true for summary judgment purposes, a reasonably prudent police officer could determine that the need to stop the speeding truck in order to prevent an accident was outweighed by a more immediate risk of causing an accident himself by proceeding through the intersection against a red light without yielding at the stop line, particularly in light of Cruz's distraction and sight restriction caused by the building to his right. "[A]n officer in a police pursuit must assess both the risk that the suspect will injure a third party and the risk that the officer himself will injure a third party."[Emphasis in original].Univ. of Houston v. Clark, 38 S.W.3d 578, 583 (Tex.2000).

*8 [23] Further, DPS did not adduce evidence establishing that Trooper Cruz considered whether any alternative course of action was available to stop the speeding truck. "To establish good faith under Wadewitz, [the party urging official immunity is] required to show that [the officer] assessed the availability of alternatives to pursuit as part of balancing the need to pursue and the pursuit's risk to the public."Clark, 38 S.W.3d at 588–89 (declining

to find good faith, in a police pursuit accident case, because the officer's affidavit did not discuss alternative courses of action); *see also City of Pasadena v. Belle,* 297 S.W.3d 525, 534 (Tex.App.-Houston [14th Dist.] 2009, no pet.)(same). We accordingly overrule DPS's second point of error.

Because we conclude that the trial court did not err by denying the plea to the jurisdiction and summary judgment motions based on sovereign and official immunity, we affirm the judgment of the trial court.

Footnotes

1    DPS's counsel also admitted during the hearing that she has proffered and relied upon DPS reconstruction reports on DPS's behalf in other cases.

2    DPS also argues that Bonilla's failure to include the raw EDR data to the report renders the report conclusory. *See Brown v. Brown,* 145 S.W.3d 745, 751 (Tex.App.-Dallas 2004, pet. denied) (holding affidavit was conclusory for failure to include referenced documents). But the admission by party-opponent exception makes the report admissible "even if the opposing expert witness does not disclose the bases for the conclusion adverse to the expert's client."*Yarbrough's Dirt Pit, Inc. v. Turner,* 65 S.W.3d 210, 214 (Tex.App.-Beaumont 2001, no pet.).

3    In response to the trial court's inquiry as to whether DPS was directly challenging the credentials of its own employees, DPS's attorney stated: "I'm not challenging my own guys ... I'm putting [Bonilla's attorney] to the burden that she has."

4    DPS also challenges the trial court's refusal to exclude as hearsay several unverified statements made by witnesses to the accident, as well as notes taken by DPS investigators during interviews of such witnesses. Bonilla did not respond to this argument. We agree that the trial court abused its discretion by not excluding these materials, and we do not consider them in addressing DPS's remaining issues.

5    *See also*TEX.TRANSP.CODE ANN. § 546.002 (making § 546.001 applicable when the operator is "pursuing an actual or suspected violator of the law").

6    DPS asserted both traditional and no-evidence summary judgment motions. Its no-evidence motion presented only one challenge: that Bonilla lacked evidence showing Trooper Cruz was not engaged in an emergency situation. Official immunity is an affirmative defense, however.*Chambers,* 883 S.W.2d at 653.As such, DPS, not Bonilla, had the burden of showing the urgency of the circumstances in support of official immunity. The trial court did not err in denying DPS's no-evidence motion based on official immunity.

7    DPS argues that Bonilla's assertion that Trooper Cruz was within the course and scope of his DPS employment at the time of the accident is a judicial admission in favor of the "scope of authority" prong of official immunity. We agree. This is precisely the sort of clear, deliberate, and unequivocal statement that properly constitutes a judicial admission.*Regency Advantage Limited Partnership,* 936 S.W.2d at 278.

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.